# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

JAMES E. PIETRANGELO, II )
4455 Connecticut Ave., NW, Ste. 1110 )
Washington, D.C. 20008 )
(802) 338-0501 )
)
     *Plaintiff,* )
)
    v. )
)
REFRESH CLUB, INC. (dba THE WING )
including in NYC and DC) )
45 East 20th St., 12th Fl. )
New York, NY 10003 )
)
    and )
)
THE WING DC, LLC (dba THE WING aka )
THE WING DC at 1056 Thomas Jefferson St., )
NW, Washington, DC 20007) )
45 East 20th St., 12th Fl. )
New York, NY 10003 )
)
     *Defendants.* )
)

Case: 1:18–cv–01943   Jury Demand
Assigned To : Friedrich, Dabney L.
Assign. Date : 8/20/2018
Description: Pro Se Gen. Civil   (F Deck)

### COMPLAINT

Jury Trial Demanded

Pursuant to the D.C. Human Rights Act of 1977, D.C. Code § 2-1403.16 et seq., Plaintiff

states for his Complaint against Defendants as follows:

### INTRODUCTION

1.    This is a civil action against Defendant Refresh Club, Inc. dba The Wing and its

business entity Defendant The Wing DC, LLC dba The Wing aka The Wing DC for declaratory,

injunctive, and monetary relief for injuries Plaintiff James E. Pietrangelo, II sustained as a result

1

RECEIVED

AUG 2 0 2018

Clerk, U.S. District and
Bankruptcy Courts

of sex-discrimination and/or gender-identity-discrimination by Defendants in violation of the

D.C. Human Rights Act of 1977, D.C. Code § 2-1401.01 et seq.

## JURISDICTION & VENUE

2.      This Court has subject-matter jurisdiction over the case pursuant to 28 U.S.C. §

1332(a)(1), because the matter in controversy exceeds the sum or value of $75,000, exclusive of

interest and costs, and is between citizens of different states.  Plaintiff is a citizen of the State of

Ohio, while Defendants are citizens of the State of Delaware, with their principal place of busi-

ness in New York, New York, and a business address in Washington, D.C.

3.      This Court has personal jurisdiction over Defendants because Defendants are reg-

istered/licensed to conduct business in Washington, D.C., do continuously conduct business here,

and have a business address/location here.

4.      Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(2), because all or

a substantial part of the events giving rise to Plaintiff's claims occurred here.

## PARTIES

5.      Plaintiff is an adult natural person and citizen of the State of Ohio, who has been

living in Washington, D.C. since January 2018 to the present.  Plaintiff is a man and at all times

material hereto identified as a man.

6.      Defendants Refresh Club, Inc. dba The Wing and The Wing DC, LLC dba The

Wing aka The Wing DC are a for-profit private corporation and limited liability company, re-

spectively, incorporated in and thus citizens of Delaware, with their principal place of business at

their above-captioned address in New York, New York, and a business address, The Wing DC, at

1056 Thomas Jefferson St., NW, Washington, D.C. 20007, at which they conduct business.  De-

fendant The Wing DC, LLC dba The Wing aka The Wing DC is an alter ego or mere instrumentality or shell corporation or business entity of Defendant Refresh Club, Inc. dba The Wing, with the latter controlling, owning, operating, managing, supervising, and/or engendering the former. For example, the two business entities have common ownership, names, capital, officers, managers, employees, business functions, offices, phone numbers, addresses/locations/operations, and/or websites, etc.  At all material times hereto, the two business entities operated/operate as a single or common business enterprise, including (as/at) The Wing DC, while engaging in the acts, actions, conduct, policies, and practices alleged below, and therefore they are jointly and severally liable for said acts, actions conduct, policies, and practices.  Herein, both entities (including any of their officers, employees, and agents) will be referred to variously as "The Wing." At all material times hereto, The Wing was/is a place of public accommodations and an employer, respectively, as defined under the D.C. Human Rights Act of 1977, and exercised control and authority over their employees, officers, and agents.

GENERAL ALLEGATIONS

*The Wing*

7.      The Wing is an upscale co-working-space business chain, similar to the way that Starbucks is an upscale coffee-shop business chain, though obviously nowhere as large as Starbucks (at least not yet).  Both provide or are public accommodations or places of public accommodations for profit.

8.      The Wing currently has 4 operational locations or spaces—3 in New York City, and 1 in Washington, D.C. (The Wing DC)—and at least 7 formally planned locations or spaces, including one in San Francisco set to open in October 2018.

9.     The Wing's own intended business niche or advantage in the burgeoning but competitive co-working-space industry is that The Wing serves, and promotes itself as serving, only women (or those who identify as women).   That is, The Wing, both as a matter of policy and practice, excludes men.

10.     Since The Wing operates (at) locations/spaces in several jurisdictions (including D.C.) with human-rights laws that prohibit sex-discrimination and gender-identity-discrimination by/in places of public accommodations, The Wing, in an attempt to circumvent the law while maintaining its business advantage, designates or purports itself as being, in addition to a co-working space, a private social club.

*The Wing Is a Place of Public Accommodation(s)*

11.     However, The Wing, including the Wing DC, in fact is a place of public accommodation(s), or provides a place of public accommodation(s) as defined under applicable human-rights law, including the D.C. Human Rights Act of 1977.   That is, The Wing, including the Wing DC, is not a private social club or distinctly private as defined under applicable human-rights law, including the D.C. Human Rights Act of 1977.   The following indicia, among others, indicate this public-accommodations status of The Wing:

a.     The Wing and/or The Wing DC are dba's of, and operated by, a Delaware-incorporated, New York-based, for-profit corporation and company, respectively;

b.     Neither dba (The Wing, The Wing DC) includes the word "club";

c.     The Wing has had investors from the beginning, recently raising some $42 million in Series B funding including from venture capitalist firm New Enterprise Associates (NEA) and WeWork, an expressly public co-working business chain;

d.      The Wing has a corporate structure typical for or consistent with a chain in the business of public accommodation(s) today, including having a board, a CEO, a COO, a CFO, a community director, a brand director, a design director, a director of member experience, a director of talent, a director of retail and e-commerce, a director of partnerships and experiences, a senior director for civic engagement, a social media coordinator, a community analyst, managers, associates, and other similarly-titled employees;

e.      The Wing has 4 operational locations/spaces—Flatiron (NYC), Soho (NYC), Dumbo (NYC), and DC—and 7 formally planned locations/spaces—San Francisco, West Hollywood, Williamsburg, London, Seattle, Toronto, and Chicago—and each location/space is or will be associated with a limited liability company like The Wing DC is;

f.      One of The Wing's founders on at least one occasion told media that there may be other branches of The Wing DC, or other locations/spaces of The Wing in DC, in the future;

g.      One of The Wing's founders on several occasions told media that The Wing's goal is to have locations/spaces all over the country and all over the world;

h.      The Wing's current locations/spaces are each set up inside basically as a co-working space, and each look inside basically like the inside of any expressly public co-working space, although the decor may be more upscale and there are more upscale amenities including a library, a meditation room, a gym, showers, lockers, wifi, movie screenings, and/or events (including events involving public figures like U.S. Senator Kirsten Gillibrand and former U.S. Senator and Secretary of State Hillary Clinton discussing public issues, including while being streamed live on The Wing's public Facebook page);

i.     The outside of The Wing DC and of other of The Wing's current locations/spaces is public-facing, having a street-front and large windows through which much of the inside and in some cases members are visible to passersby;

j.     The Wing DC and other of The Wing's current locations/spaces are open 7 days a week and during hours comparable to those of expressly public co-working spaces (8am-9pm weekdays, 10am-6pm weekend days);

k.     The Wing's membership rates, which are publicly viewable on its website, are comparable to (and in some instances less than) those of expressly public co-working spaces, and are paid monthly (for access to The Wing DC by itself, $215 per month; for access to all Wing locations, $250 per month) with an annual commitment. The Wing does not refer to the payments or amounts of money it receives from individuals for membership as "dues," but instead refers to them as "fees", "rates", and/or "payments";

l.     The Wing's website publicly describes The Wing primarily as a co-working space: "Co-Working" space, a "network of co-working . . . spaces", an "open-plan and private workspace";

m.     The Wing's website's online membership application asks in one line, "Do you have an office?", and in the following line allows the applicant to state as one purpose for applying for membership, "The Wing is My New Office";

n.     During at least one media interview, the founders of The Wing explicitly described The Wing, including The Wing DC, primarily as a co-working space;

o.     One of The Wing's founders variously admitted to media that The Wing is a business, a company, and a product;

p.      The Wing has semi-private rooms to rent in one or more of its locations/spaces;

q.      The Wing DC has lockers to rent for a day or longer;

r.      The Wing DC, if not all of The Wing's other locations/spaces, has a café/restaurant/delicatessen, swag store, and/or beauty salon through which food, products, and services are offered and/or sold;

s.      The café/restaurant/delicatessen, called The Perch, on a regular/daily basis serves, offers, and/or sells meals and beverages—including such dishes as eggs, toasts, salads, sandwiches, bagels, cheese or hummus plates, bowls, jerk-roasted chicken, steak, wild rice, garlicky spinach, and roasted sweet potato, as well as snacks, hot and cold drinks, and cocktails;

t.      The Wing's originating purpose, as declared by one of its founders on several occasions to media, was as a place at which to be able to refresh oneself (hence the corporate name, Refresh Club, Inc.) during the work day: to come and shower and change outfits and rest between work meetings elsewhere, like a transient motel;

u.      The Wing DC has a some 2,000-book lending library;

v.      The Wing offers and/or sells products and services, including clothing, personal items, and camping trips, publicly online on its website, and uses payment options Square and Shopify, which are publicly available payment vendors;

w.      Tickets to at least one event at The Wing DC, "Friday Night Feminism," designed for "Women in their 20s and 30s," and held on June 22, 2018, were sold publicly online via Ticketfly, a publicly available ticket vendor;

x.      The Wing's print magazine, *No Man's Land*, is sold publicly at newsstands and at Barnes & Noble and other bookstores nationwide;

y.      The Wing has produced at least one publicly available or purchasable podcast, also called "No Man's Land";

z.      The Wing has both a web portal and a mobile app;

aa.     The Wing has public social media accounts on Instagram, Facebook, and Twitter, on each of which it continuously advertises or promotes itself, its locations/spaces, its products and services, and its accommodations to the general public;

bb.     On Twitter especially, The Wing continually publishes posts with, among other things, photos/videos of the inside of The Wing's locations/spaces (including The Wing DC), of members themselves (often along with their name and a favorable post from them), and of events at The Wing's locations/spaces;

cc.     Consumer brands, including Chanel, Nike, Red Bull, and American Express, pay The Wing for marketing access to its members;

dd.     Through paid/profitable partnerships with companies, including 21st Century Fox and Hulu, The Wing provides its members with discounts and access to entertainment;

ee.     The Wing lists certain jobs publicly online;

ff.     To promote the opening of The Wing DC, a pink The Wing DC truck drove around DC giving out free coffee, cookies, and swag to the general public;

gg.     The opening of The Wing DC was publicized by The Wing through media, and there was a public opening—at least for women—attended by DC Mayor Muriel Bowser herself;

hh.     The Wing currently has more than 1,500 members and/or users, and 18,000 or so people have applied to The Wing since it was first established;

ii.     Upon information and belief, all of The Wing's members or potential members have singular access or could have singular access (if desired and paid for) to (all of) The Wing's

locations/spaces, platforms, products, services, amenities, and/or accommodations—including (those) of/at The Wing DC.  In other words, members or potential members do not have to obtain separate memberships for each The Wing location/space;

jj.     The Wing advertises and promotes and conducts itself and holds itself out to the general public as a centrally-operated but multi-location/space upscale co-working-space business chain, and does not particularly inform the general public of The Wing's individual limited liability companies associated with its different locations/spaces;

kk.     Upon information and belief, alternatively, the membership and/or membership capacity and/or number of users of The Wing DC by itself was more than 349 as of June 4, 2018;

ll.     The Wing's website's online membership application as of June 4, 2018 was not rigorous or (significantly) selective: it consisted of 4 simple fields or pages: page 1 asked for the applicant's name, address, email, and birthdate; page 2 asked the applicant for The Wing location(s)/space(s) the applicant desired to use; page 3 asked why the applicant wants to join The Wing, how the applicant has supported women, and what the biggest challenge facing women today is; and page 4 asked the applicant to "please" share a link to a social media account, so that The Wing can "get to know you as a person";

mm.     However, the purpose of the link request was/is to verify that the applicant is a woman or identifies as a woman;

nn.     On several occasions, one of The Wing's founders talked to media about plans for The Wing/The Wing DC to diversify/increase membership across women- or female- demographics without regard to personality traits, personal connections or associational factors, income, etc., i.e, without significant selectivity: "We always aim for a really wide cross-section of women"; "the concept: a place for women of all types to gather and support one another"; "an

ever-widening net of who one can meet at the communal tables"; "it's more important to open more spaces and accept more women";

oo.    Members of The Wing are allowed to bring one or two or more non-member women guests (regardless of selectivity) with them into the Members' respective locations/spaces of The Wing, and, upon information and belief, those guests may then obtain and/or purchase one or more products and/or services from The Wing described above and use one or more accommodations provided by The Wing described above;

pp.    Upon information and belief, every day numerous such non-member women guests do access The Wing's locations/spaces and accommodations, including (those) of/at The Wing DC, and variously do obtain and/or purchase The Wing's products and/or services and variously do use The Wing's accommodations;

qq.    The Wing offers "scholarships" to low-income women who cannot otherwise afford The Wing's memberships rates, so that they too may be members of The Wing and/or have access to one or more of The Wing's accommodations;

rr.    Upon information and belief, every day numerous such scholarship recipients do access The Wing's locations and accommodations, including (those) of/at The Wing DC, and variously do obtain and/or purchase The Wing's products and/or services and variously do use The Wing's accommodations;

ss.    Upon information and belief, The Wing DC and other of The Wing's locations/spaces regularly hold events which are open to non-member women of the general public (whether or not they are guests of a member and without regard to selectivity)—such as the above-mentioned "Friday Night Feminism," open to any "Women in their 20s and 30s";

tt.     Upon information and belief, regularly if not daily numerous such non-member women do access The Wing's locations and accommodations, including (those) of/at The Wing DC, and variously do obtain and/or purchase The Wing's products and/or services and variously do use The Wing's accommodations;

uu.     The Wing's website states that The Wing's "mission is the professional, civic, social, and economic advancement of women through community";

vv.     Upon information and belief, The Wing has no bylaws, and no annual or general meeting of all of its members;

ww.     Upon information and belief, The Wing has no significant or peculiar procedures, rituals, ceremonies, ranks, degrees, offices, or committees with regard to initiation, membership, and/or expulsion, and instead The Wing has only basic membership;

xx.     Upon information and belief, the granting or withdrawing of that basic membership, as well as the formulation of The Wing's policies and practices, is decided by select, unelected corporation/company officers and employees, and not by the entire existing-membership;

yy.     Upon information and belief, there is little to no real investigation of applicants before they are granted membership;

zz.     Upon information and belief, The Wing's only real membership criteria is being or  identifying as a woman, and the membership device is simply a subterfuge to illegally exclude men;

aaa.     Generally, all or virtually all or mostly all women who apply for membership in The Wing are either granted membership or are put on waiting lists due to building capacities and are eventually granted membership;

bbb.    Upon information and belief, The Wing regularly receives payment for dues, fees, use of space, facilities, services, meals, or beverages directly or indirectly from or on behalf of non-members for the furtherance of trade or business;

ccc.    Upon information and belief, the profits received by The Wing from membership fees, sales of other products and services, and partnerships, including as described above, inure to the sole benefit of corporation officers, employees, and/or shareholders;

ddd.    Upon information and belief, The Wing in its interactions and statements with government treats itself and is treated by government as a business or commercial enterprise. Among other things, The Wing holds a delicatessen food license from D.C., license no. 930518000134;

eee.    The Wing has a registered trademark: a stylized W;

fff.    The Wing on both its "Membership" and "Terms" pages of its website states that "The Wing is a diverse community open to all.";

ggg.    The Wing sends emails advertising products and/or services for sale, as well as programs or events for participation, to individuals who have applied for but have not yet been granted membership in The Wing;

hhh.    In all of its aspects except for its membership limitation based on sex and/or gender-identity—including but not limited to those aspects listed above—The Wing is so imbued with a public and business or commercial nature as to be a place of public accommodation(s). The Wing simply "walks, quacks, and looks like" a public co-working space because it is a public co-working space.

*The Wing Illegally Discriminates, Including Based on Sex and/or Gender-Identity*

11.     However, as defined under applicable human-rights law, including the D.C. Human Rights Act of 1977, The Wing in fact illegally discriminates, including based on sex and/or gender-identity, in its provision and places of public accommodations, *and* in its public statements of its provision and places of public accommodations.  The Wing openly treats men as second-class citizens and as loathsome and unwelcome, and openly demeans them.  For example:

a.     The Wing as a policy and practice limits its membership and locations/spaces and places of accommodations and accommodations therein to women only, and actively excludes men therefrom.  Upon information and belief, The Wing has never granted membership to a man, and has, wholly or in part on the basis of sex/gender-identity, i.e., wholly or in part for a discriminatory reason, deliberately failed/refused to grant membership to men (including Plaintiff) who have actually applied for membership and otherwise been eligible for membership;

b.     The Wing has repeatedly publicly declared, including to media, that as a policy and practice its membership and locations/spaces and places of accommodations and accommodations therein are for women only and men are excluded therefrom;

c.     As more fully explained below, on June 5, 2018, Bee Pollard, Community Associate with The Wing DC, explicitly told Plaintiff that The Wing simply does not allow men to be members, and that for that reason The Wing would permanently defer and never grant Plaintiff's June 4, 2018 application for membership in The Wing to access/use The Wing DC.  In fact, The Wing has, simply because he is a man, actually or effectively or constructively denied Plaintiff membership in The Wing and access to and use of The Wing DC and its accommodations;

d.      The Wing in general does not allow men to enter or use its facilities or premises—even at times or during events when non-member women enter or use those same facilities or premises.  As The Wing has publicly stated, generally the only time that a man may enter its facilities or premises is when The Wing has a business need and no woman is available to meet the need, and even then the man may only enter when no members are present or after being announced to present members.  The Wing has publicly declared this policy and practice, including to media;

e.      The Wing DC during its grand opening or "Opening Celebration" on April 10, 2018, even expressly and/or publicly prohibited men, including men reporters covering the story, from temporarily entering its facilities or premises—with the sole exceptions apparently being several men in Mayor Bowser's entourage, including Deputy Mayor Brian Kenner;

f.      The Wing has publicly declared, including to media, that as a policy and practice it tries to contract only with women service-providers and vendors for services and products for The Wing.   Moreover, when asked by media about whether it hired/employed men at all, The Wing publicly evasively responded that it does hire/employ men, but that it refused to say how many or in what capacity;

g.      The Wing's print magazine and podcast are called "No Man's Land", and there is a prominent neon sign of the same words in The Wing Soho's building;

h.      The Wing offers and/or sells to members a camping trip called "No Man's Camp" in upstate New York;

i.      The Wing sells different t-shirts with the phrase "Boys Beware" on them at its swag store and/or online on its website, as well as personal items which continue the theme of "No Man" such as a nail file printed with the word "NO-MAN-ICURE";

j.      On one or more of The Wing's public social media accounts, and in many if not all of The Wing's public statements including to media, women are continually portrayed as only wonderful and good and powerful, while men, if they are mentioned or portrayed at all, are generally indicated as unwelcome and referred to derogatorily or demeaningly, including one instance where a semi-naked man is treated like "beefcake," one instance where a man is stereotyped as incompetent, and several instances where men are accused or guilty of sexism or mistreatment of women;

k.      The Wing's website, locations/spaces, products and services, and accommodations generally refer or are suited only to women—such as the inner door of The Wing DC which reads "Welcome Women of Washington", the women-only-authors library, the women-only-artists artworks, the women-only-titled memorials, etc.  There isn't even a bathroom for men to use in TheWing's locations/spaces;

l.      The Wing's membership device—which includes a passcode or passkey to enter any of The Wing's locations/spaces—is simply a subterfuge to illegally exclude men from a place of public accommodation(s)—and not a function of a truly private social club.

12.      Despite stating on its "Careers" page on its website that "The Wing is an equal opportunity employer and prohibits discrimination and harassment of any kind", The Wing—which, again, is an employer as defined under the D.C. Human Rights Act of 1977—in fact, upon information and belief, also illegally discriminates based on sex and/or gender-identity in hiring, employment, and/or contracting, as touched upon above.  For example:

a.      Upon information and belief, The Wing as a policy and practice only hires women for corporate and/or front-of-the-house positions, thereby excluding men.  Of the 53 corporate and/or front-of-the-house officers/employees (including for The Wing DC) identified on The

Wing's "About" page of its website, all 53 are women—arguably a statistical impossibility if The Wing is not discriminating based on sex and/or gender-identity. Moreover, by virtue of its policy and practice of women-only membership and locations/spaces, The Wing presumably discriminates against men in hiring for corporate and/or front-of-the-house positions, because officers/ employees in such positions necessarily interact to some degree with members and/or locations/ spaces. Furthermore, in at least one interview with media, one of The Wing's founders stated that The Wing does hire or employ men, but she evasively refused to say how many or in what capacity—a tacit admission or tell-tale sign of employment discrimination of some sort against men. Upon information and belief, if The Wing does hire/employ men, The Wing keeps them quarantined from members and/or the general public and/or subjects them to other discriminatory conditions while working;

b.       Upon information and belief, The Wing as a policy and practice contracts when possible only with women service-providers and vendors for services and products for The Wing, thereby excluding men.

13.     The Wing has a policy, pattern, and practice of discrimination against men based on sex and/or gender-identity.

*The Wing's Illegal Discrimination Against Men Was/Is Egregious*

14.     The Wing's illegal discrimination against men (including Plaintiff) as described above was/is egregious: brazen, flagrant, intentional, willful, wanton, actually malicious, motivated by evil and ill-will, deliberately oppressive, outrageous, and willfully and callously disregardful of the rights of men (including Plaintiff). This egregiousness is indicated by, among other things in addition to the above-described circumstances, the following:

a.    The Wing was repeatedly put on notice that its discriminatory policies, practices, and conduct (likely) violated human-rights law, including that of the jurisdictions of New York City and D.C.:

i.    Both media and the American Civil Liberties Union (ACLU) variously publicly raised the illegality issue. See, e.g., J.K. Trotter, "The New York Human Rights Commission Is Investigating The Wing", Mar. 26, 2018, jezebel.com; Theodore Kupfer, "Progressive Groups Shouldn't Be Exempt From Anti-Discrimination Law", Mar. 28, 2018, nationalreview.com; Katherine Rosman, "Is Women-Only Club the Wing Discriminating in a Bad Way?", Mar. 31, 2018, nytimes.com; Ria Tabacco Mar, Galin Sherwin, Erin Harrist, "The Legal Questions Raised by a Women-Only Workspace", Apr. 3, 2018, aclu.org; Ally Schweitzer, "The Wing Is A Pastel Place For D.C. Women. But Is It Legal?", Apr. 10, 2018, wamu.org (quoting D.C. ACLU Legal Director Art Spitzer); Joanna L. Grossman, "Fly Away: Why the New York City Human Rights Commission is Right to Investigate *The Wing*, a Private Club and Workspace that is Just for Women", Apr. 10, 2018, verdict.justia.com; Mark Joseph Stern, "Return of the Gender Line: Why the Wing, a women-only social club in New York and D.C., is getting away with violating human rights law", Apr. 11, 2018, slate.com; Michelle Goldchain, "D.C.'s first women-only coworking space opens to mixed reactions", Apr. 13, 2018, dc.curbed.com; Katy Steinmetz, "Women-Only Spaces Are Part of a Coworking Craze. Some Might Also Be Violating the Law", Apr. 20, 2018, time.com; Maura Barrett and Jo Ling Kent, "Despite success, women work sanctuaries may break the law", May 21, 2018, nbcnews.com;

ii.    The New York City Human Rights Commission is investigating or investigated The Wing, and in the course of its investigation contacted The Wing;

b.    In response to the public concerns, The Wing publicly flaunted—not discontinued—its illegal policies, practices, and conduct:

i.    The Wing in defense of its policies, practices, and conduct stridently recited to media and the public platitudes laden with stereotypes and specious arguments but devoid of any basis in applicable human-rights law (statutory and caselaw) itself.  Indeed, as Katherine Franke, who worked for the New York City Human Rights Commission in the 1980s when it first sued discriminatory "clubs" in the City, reportedly noted to media, The Wing's arguments are "an echo today of the same [baseless] arguments . . . in the '80s [] made by men, made by white people, made by Christians" in trying to defend their various exclusionary accommodations.

ii.    The Wing downplayed the significance of, if not outrightly denied, the New York City Human Rights Commission's investigation, telling media and/or its members that it was basically only a conversation: "All that's happened is that The Wing and the Commission have agreed, mutually, to sit down and have a conversation."

iii.    The Wing even attempted to undermine the investigation, by soliciting The Wing's members to bring political pressure to bear upon the Commission.  Immediately after jezebel.com broke the story of the Commission's investigation, upon information and belief, The Wing sent a message to its members saying, among other things: "If you want to support The Wing and make your voice heard, you can tweet them at @NYCHHR and @NYCMayorsOffice and let them know you are a proud member of The Wing and believe women deserve safe spaces."  Some Twitter criticism of the Commission and/or the Mayor then ensued, including from "celebrity" members of The Wing.

c.    As mentioned above, The Wing has been opaque if not outrightly deceptive to some degree on the issue of suggestions of discrimination.  The Wing prevaricated on whether it

hires/employs men. Also, The Wing on its website states that it does not discriminate in hiring/ employment, and yet it appears to have hired/employed only women—at least for all of its corporate and/or front-of-the-house positions—indicating that it does discriminate in hiring/employment.

d.      The Wing's acts, actions, conduct, policies, and practices were/are clearly prohibited by New York City and D.C. human-rights law. There patently was/is no legitimate, non-discriminatory reason or basis (such as business necessity) for The Wing's discrimination against men, and The Wing's policies, practices, and conduct were/are intentionally devised or operated to contravene the prohibitions of said law. Upon information and belief, at all material times hereto, The Wing had/has no affirmative-action plan approved by the D.C. Office of Human Rights under § 2-1402.53 of the D.C. Human Rights Act of 1977.

e.      The Wing's brazen attitude towards the law and the civil rights of men can be summed up by one of The Wing's own favorite slogans: "Girls Doing Whatever The Fuck They Want."

*Plaintiff's Application for Membership in The Wing*

15.      Since about mid-January 2018, Plaintiff has been living in D.C., and generally has spent and continues to spend numerous hours every day working on written matters of importance to Plaintiff.

16.      Plaintiff does not have an office in D.C., and working on his written matters in his apartment or in one of the common areas of his apartment building (the lobby, lounge, or business center) has been and is far from ideal for his work, and in fact often has been and is disruptive to it. Consequently, since almost from the beginning of his tenure in D.C., Plaintiff has

wanted and continues to want to find a transactional place besides his apartment building to work that would be conducive or more conducive to his work.

17.     Eventually, in around March 2018, a D.C. acquaintance of Plaintiff suggested that Plaintiff try a co-working space in D.C., which Plaintiff realized would be well suited for his work.  Consequently, Plaintiff over the course of the next few months researched a handful of D.C. co-working spaces, including, for example, Cove in Dupont Circle, and, eventually, around early June, The Wing in Georgetown.  The Wing was the only one of the handful that was to Plaintiff's liking in terms of accommodations and amenities, by far.  Plaintiff particularly liked the upscale-nature, networking, and "community" aspects of The Wing.  The Wing had "energy."

18.     Consequently, on June 4, 2018, on The Wing's website, Plaintiff genuinely sub-mitted an online application for membership in The Wing to access/use The Wing DC for (co-) working space.

19.     At the time of his submission of his application, Plaintiff was over 18 years old, competent to contract, would have paid the applicable membership fees of The Wing as they be-came due before or in the course of the annual commitment, and would have abided by The Wing's otherwise sex/gender-identity-neutral rules and regulations.  Putting aside the fact that he is a man, Plaintiff was otherwise eligible under The Wing's policies to become a member of The Wing, and was otherwise similarly-situated to one or more or all women applicants who had been granted membership by The Wing up to that point.

20.     The Wing immediately or automatically sent Plaintiff an email indicating that his application had been received.

21.     On June 5, 2018, Plaintiff called The Wing DC's local phone number and reached a woman employee there.  He explained to her that, the day before, he had on The Wing's web-

site submitted an online application for membership in The Wing to access/use The Wing DC, and he wanted to know whether he would as a matter of policy of The Wing automatically be denied membership by The Wing simply because he is a man. The woman employee affirmatively indicated that as a matter of policy of The Wing Plaintiff would automatically be denied membership by The Wing simply because he is a man. The woman employee then got The Wing DC's Community Associate, Bee Pollard, to come on the line and speak with Plaintiff. Plaintiff reiterated what he had told the other woman employee, and Ms. Pollard likewise reiterated the woman employee's answer to Plaintiff. Ms. Pollard further explained to Plaintiff that The Wing would deny Plaintiff membership by permanently deferring and thus never granting his application for membership. Ms. Pollard was very certain and matter-of-fact about the issue.

22.    At the time of their conversations with Plaintiff and their acts and statements towards Plaintiff as just described, the woman employee and The Wing Community Associate Bee Pollard were employees, officers, and/or agents of The Wing acting within the scope of their employment/commission/agency with The Wing, and were directly implementing and acting pursuant to The Wing's discriminatory policies and practices as described herein, and under The Wing's control and authority, and with The Wing's full participation, direction, approval, consent, ratification, invitation, compulsion, aiding, and abetting. The Wing was directly and vicariously responsible and liable for The Wing's personnel's statements, actions, acts, and conduct here.

23.    Upon information and belief, The Wing notifies applicants by email if The Wing has granted them membership. To date, Plaintiff has received no email from The Wing notifying him that The Wing has either granted him membership or denied him membership. Upon information and belief, Plaintiff will never receive such an email, or will never receive such an email

granting him membership in The Wing, and will never otherwise be granted membership in The Wing, simply because he is a man and The Wing as a policy and practice excludes men. As Bee Pollard explained, The Wing denies men applicants' membership simply by permanently deferring their applications, thus actually, effectively, or constructively denying the applications.

24.     On July 1, 2018, Plaintiff went to the front-door of The Wing DC premises at 1056 Thomas Jefferson St., NW, in Georgetown, during business hours, to see if he could, without breaking and entering, lawfully and peacefully enter the premises and become a member and pay membership fees and access/use The Wing DC as a (co-) working space that way. The lights were on inside and Plaintiff could see several women inside using the premises as a (co-) working space. However, the front-door had an electronic security feature which was engaged, preventing Plaintiff from opening the door when he tried the handle. He would have needed either a passcode or a passkey—neither of which he had because he is not a member—to disengage the security feature and enter. Upon information and belief, during non-member events at The Wing DC, the front-door is kept open or unlocked or access is otherwise provided to non-members; however, there apparently was no non-member event at the time of Plaintiff's visit.

25.     As a direct and proximate result of The Wing thus intentionally discriminatorily denying Plaintiff membership in and access to/use of The Wing and its place of accommodations and accommodations simply because he is a man, Plaintiff, among other things, literally felt/feels like a second-class citizen, felt/feels demeaned in his person, and was/is denied the benefits and accommodations of The Wing.

26.     As a direct and proximate result of The Wing thus intentionally discriminatorily denying Plaintiff membership in and access to/use of The Wing and its place of accommodations and accommodations simply because he is a man, Plaintiff had/has to continue to work in his

apartment building and suffer the hardships therefrom.  Among other things, the quality of his work suffered and continues to suffer from the lack of a conducive atmosphere.

27.    Plaintiff ultimately also learned of The Wing's various public policies, statements, and portrayals—including those mentioned above relating to both accommodations and employment/contracting—of discrimination, exclusion, stereotyping, and demeaning of/against men, and as a direct and proximate result of those policies, statements, and portrayals Plaintiff also literally felt/feels like a second-class citizen, felt/feels demeaned in his person, and was/is denied the benefits and accommodations of The Wing.

28.    The Wing denied Plaintiff membership in and access to/use of The Wing and its place of accommodations and accommodations wholly or in part because Plaintiff is a man or because of his sex and/or gender-identity as a man, i.e., wholly or in part for a discriminatory reason.

29.    There was no legitimate, non-discriminatory reason or basis (such as business necessity) for The Wing's denying Plaintiff membership in and access to/use of The Wing and its place of accommodations and accommodations.  The Wing's policies, practices, and conduct towards Plaintiff were/are intentionally devised or operated to contravene the prohibitions of the D.C. Human Rights Act of 1977.

30.    As a direct and proximate result of The Wing's intentionally discriminatory policies, practices, acts, and conduct described above, Plaintiff suffered and continues to suffer damages and injuries, discrimination, denial of equal opportunity, indignity, embarrassment, humiliation, pain, suffering, mental anguish, and/or loss of enjoyment of life.

31.    The Wing's illegal discrimination against Plaintiff as described above was/is egregious: brazen, flagrant, intentional, willful, wanton, actually malicious, motivated by evil

and ill-will, deliberately oppressive, outrageous, and willfully and callously disregardful of the rights of Plaintiff.

<u>CAUSE OF ACTION: VIOLATION OF THE D.C. HUMAN RIGHTS ACT OF 1977,
D.C. CODE § 2-1401.01 ET SEQ.</u>

<u>Count I:</u>
<u>Denial of Equal Opportunity on the Basis of Sex and/or Gender-Identity,
In Violation of D.C. Code §§ 2-1402.01, 2-1402.62, 2-1402.68</u>

32.     Plaintiff incorporates by reference and re-alleges all of the preceding paragraphs and allegations of this Complaint as if fully re-stated herein.

33.     Title 2, Chapter 14 of the D.C. Code provides, among other things: "Every individual shall have an equal opportunity to participate fully in the economic, cultural and intellectual life of the District and to have an equal opportunity to participate in all aspects of life, including, but not limited to, in employment, in places of public accommodation, resort or amusement, in educational institutions, in public service, and in housing and commercial space accommodations." § 2-1402.01. "It shall be an unlawful discriminatory practice for any person to aid, abet, invite, compel, or coerce the doing of any of the acts forbidden under the provisions [herein] or to attempt to do so." § 2-1402.62. "Any practice which has the effect or consequence of violating [these provisions] shall be deemed to be an unlawful discriminatory practice." § 2-1402.68.

34.     Defendants' above-alleged (discriminatory) practices ("practices" defined herein and below to include statements, actions, acts, policies, practices, and conduct) had/have the effect or consequence of violating § 2-1402.01 with respect to Plaintiff, i.e., denying him an equal opportunity to participate fully in the economic, cultural and intellectual life of the District and to have an equal opportunity to participate in all aspects of life, including, but not limited to, in em-

ployment (i.e., with The Wing), in places of public accommodation (i.e., The Wing), resort or amusement (i.e., The Wing), in educational institutions, in public service, and in housing and commercial space accommodations (i.e., The Wing).

35.    As a direct and proximate result of Defendants' said practices and violations, Plaintiff suffered/suffers the above-alleged injuries and damages.

36.    Defendants' said practices and violations were/are intentionally devised or operated to contravene the prohibitions of the D.C. Human Rights Act of 1977, and were/are egregious: brazen, flagrant, intentional, willful, wanton, actually malicious, motivated by evil and ill-will, deliberately oppressive, outrageous, and willfully and callously disregardful of the rights of Plaintiff.

37.    Defendants' said practices and violations are continuing in nature, and continue to irreparably harm Plaintiff and the public, and there is no adequate remedy at law for these continuing irreparable harms.  An actual, present, and justiciable controversy exists between Plaintiff and Defendants.

38.    Plaintiff is entitled to a declaration that Defendants' said practices violate §§ 2-1402.01, 2-1402.62, and 2-1402.68, and are unlawful discriminatory practices.

39.    Plaintiff is entitled to statutory, compensatory, exemplary, punitive, and/or nominal damages from Defendants.

40.    Plaintiff is entitled to temporary, preliminary, and permanent injunctions enjoining and remedying Defendants' said practices and violations, including in all jurisdictions in which it does business.

<u>Count II:</u>
<u>Denial of Public Accommodations on the Basis of Sex and/or Gender-Identity,</u>
<u>In Violation of D.C. Code § 2-1402.31(a)(1) & (b), 2-1402.62, 2-1402.68</u>

41.    Plaintiff incorporates by reference and re-alleges all of the preceding paragraphs and allegations of this Complaint as if fully re-stated herein.

42.    "It shall be an unlawful discriminatory practice to do any of the following acts, wholly or partially for a discriminatory reason based on the actual or perceived: race, color, religion, national origin, *sex*, age, marital status, personal appearance, sexual orientation, *gender identity* or expression, familial status, family responsibilities, genetic information, disability, matriculation, political affiliation, source of income, or place of residence or business of any individual: To deny, directly or indirectly, any person the full and equal enjoyment of the goods, services, facilities, privileges, advantages, and accommodations of any place of public accommodations[.] *** It is further unlawful to do any of the above said acts for any reason that would not have been asserted but for, wholly or partially, a discriminatory reason based on the actual or perceived: race, color, religion, national origin, sex, age, marital status, personal appearance, sexual orientation, gender identity or expression, familial status, family responsibilities, genetic information, disability, matriculation, political affiliation, source of income, or place of residence or business of any individual." § 2-1402.31(a)(1) & (b) (emphasis added).  Further, "[i]t shall be an unlawful discriminatory practice for any person to aid, abet, invite, compel, or coerce the doing of any of the acts forbidden under the[se] provisions . . . or to attempt to do so." § 2-1402.62. "Any practice which has the effect or consequence of violating [these provisions] shall be deemed to be an unlawful discriminatory practice." § 2-1402.68.

43.     Defendants, by their above-alleged (discriminatory) practices, wholly or partially for a discriminatory reason based on the actual or perceived sex and/or gender identity of Plaintiff directly or indirectly denied/deny him the full and equal enjoyment of the goods, services, facilities, privileges, advantages, and accommodations of a place of public accommodations, i.e., The Wing.

44.     As a direct and proximate result of Defendants' said practices and violations, Plaintiff suffered/suffers the above-alleged injuries and damages.

45.     Defendants' said practices and violations were/are intentionally devised or operated to contravene the prohibitions of the D.C. Human Rights Act of 1977, and were/are egregious: brazen, flagrant, intentional, willful, wanton, actually malicious, motivated by evil and ill-will, deliberately oppressive, outrageous, and willfully and callously disregardful of the rights of Plaintiff.

46.     Defendants' said practices and violations are continuing in nature, and continue to irreparably harm Plaintiff and the public, and there is no adequate remedy at law for these continuing irreparable harms. An actual, present, and justiciable controversy exists between Plaintiff and Defendants.

47.     Plaintiff is entitled to a declaration that Defendants' said practices violate §§ 2-1402.31(a)(1) & (b), 2-1402.62, and 2-1402.68, and are unlawful discriminatory practices.

48.     Plaintiff is entitled to statutory, compensatory, exemplary, punitive, and/or nominal damages from Defendants.

49.     Plaintiff is entitled to temporary, preliminary, and permanent injunctions enjoining and remedying Defendants' said practices, including in all jurisdictions in which it does business.

<u>Count III:</u>
<u>Statements of Denial of Public Accommodations on the Basis of Sex and/or Gender-Identity,</u>
<u>In Violation of D.C. Code § 2-1402.31(a)(2) & (b), 2-1402.62, 2-1402.68</u>

50.     Plaintiff incorporates by reference and re-alleges all of the preceding paragraphs and allegations of this Complaint as if fully re-stated herein.

51.     "It shall be an unlawful discriminatory practice to do any of the following acts, wholly or partially for a discriminatory reason based on the actual or perceived: race, color, religion, national origin, *sex*, age, marital status, personal appearance, sexual orientation, *gender identity* or expression, familial status, family responsibilities, genetic information, disability, matriculation, political affiliation, source of income, or place of residence or business of any individual: To print, circulate, post, or mail, or otherwise cause, directly or indirectly, to be published a statement, advertisement, or sign which indicates that the full and equal enjoyment of the goods, services, facilities, privileges, advantages, and accommodations of a place of public accommodation will be unlawfully refused, withheld from or denied an individual; or that an individual's patronage of, or presence at, a place of public accommodation is objectionable, unwelcome, unacceptable, or undesirable. *** It is further unlawful to do any of the above said acts for any reason that would not have been asserted but for, wholly or partially, a discriminatory reason based on the actual or perceived: race, color, religion, national origin, sex, age, marital status, personal appearance, sexual orientation, gender identity or expression, familial status, family responsibilities, genetic information, disability, matriculation, political affiliation, source of income, or place of residence or business of any individual." § 2-1402.31(a)(2) & (b) (emphasis added). Further, "[i]t shall be an unlawful discriminatory practice for any person to aid, abet,

invite, compel, or coerce the doing of any of the acts forbidden under the[se] provisions . . . or to attempt to do so." § 2-1402.62. "Any practice which has the effect or consequence of violating [these provisions] shall be deemed to be an unlawful discriminatory practice." § 2-1402.68.

52.     Defendants, by their above-alleged (discriminatory) practices, wholly or partially for a discriminatory reason based on the actual or perceived sex and/or gender identity of Plaintiff printed/print, circulated/circulate, posted/post, or mailed/mail, or otherwise caused/cause, directly or indirectly, to be published a statement, advertisement, or sign which indicated/indicates that the full and equal enjoyment of the goods, services, facilities, privileges, advantages, and accommodations of a place of public accommodation, i.e., The Wing, will be unlawfully refused, withheld from or denied men including Plaintiff; or that men's including Plaintiff's patronage of, or presence at, a place of public accommodation, i.e., The Wing, is objectionable, unwelcome, unacceptable, or undesirable.

53.     As a direct and proximate result of Defendants' said practices and violations, Plaintiff suffered/suffers the above-alleged injuries and damages.

54.     Defendants' said practices and violations were/are intentionally devised or operated to contravene the prohibitions of the D.C. Human Rights Act of 1977, and were/are egregious: brazen, flagrant, intentional, willful, wanton, actually malicious, motivated by evil and ill-will, deliberately oppressive, outrageous, and willfully and callously disregardful of the rights of Plaintiff.

55.     Defendants' said practices and violations are continuing in nature, and continue to irreparably harm Plaintiff and the public, and there is no adequate remedy at law for these con-

tinuing irreparable harms. An actual, present, and justiciable controversy exists between Plaintiff and Defendants.

56.     Plaintiff is entitled to a declaration that Defendants' said practices violate §§ 2-1402.31(a)(1) & (b), 2-1402.62, and 2-1402.68, and are unlawful discriminatory practices.

57.     Plaintiff is entitled to statutory, compensatory, exemplary, punitive, and/or nominal damages from Defendants.

58.     Plaintiff is entitled to temporary, preliminary and permanent injunctions enjoining and remedying Defendants' said practices, including in all jurisdictions in which it does business.

<u>PRAYER FOR RELIEF</u>

WHEREFORE, Plaintiff requests that this Honorable Court grant him the following relief:

a.    a declaration or declarations that Defendants' above-alleged practices violated/violate D.C. Code §§ 2-1402.01, § 2-1402.31(a)(1) & (b), § 2-1402.31(a)(2) & (b), 2-1402.62, and 2-1402.68, respectively, and were/are unlawful discriminatory practices;

b.    all available damages, including statutory, compensatory, exemplary, punitive, and/or nominal damages, against/from Defendants, in an amount, exclusive of interest and costs, in excess of $75,000,— and if the rules of procedure require Plaintiff to state a specific amount herein, in the amount of $6 million in compensatory damages and $6 million in exemplary and punitive damages— to be determined at trial or by the trier of fact (note jury demand below);

c.    temporary, preliminary, and permanent injunctions enjoining Defendants' unlawful discriminatory practices in the future, and remedying Defendants' unlawful discriminatory practices in the past—including injunctions requiring Defendants to grant Plaintiff membership in The Wing;

d.    court costs (including Plaintiff's reasonable litigation expenses as allowed by law), Plaintiff's reasonable attorney's fees (if Plaintiff retains counsel), and post-judgment interest according to law;

e.      any and all other relief which the Court may grant under the above cause of action and/or which the Court considers just and equitable; and

b.      judgment to these effects in Plaintiff's favor against Defendants.

### JURY DEMAND

Plaintiff demands a jury trial on all issues and claims triable by jury.

Respectfully submitted,

JAMES E. PIETRANGELO, II
Pro Se
4455 Connecticut Ave., NW, Ste. 1110
Washington, D.C. 20008
(802) 338-0501