UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| JAMES E. PIETRANGELO, II )<br>)<br>*Plaintiff*, )<br>)<br>v. )<br>)<br>REFRESH CLUB, INC. (dba THE WING), and )<br>THE WING DC, LLC (dba THE WING aka )<br>THE WING DC) )<br>)<br>*Defendants*. )<br>) | Judge Dabney L. Friedrich<br><br>Civil Action No. 1:18-cv-01943-DLF |

### DECLARATION OF PLAINTIFF JAMES E. PIETRANGELO, II
### IN SUPPORT OF HIS MOTION TO COMPEL AGAINST DEFENDANTS

I, James E. Pietrangelo, II, hereby declare as follows:

1. I am over the age of 18, suffer no legal disabilities, and am a legal resident of the State of Ohio, although I am presently living in New Hampshire.

2. I have personal knowledge of the facts herein and am competent to testify as to all matters herein.

3. I am the Plaintiff in the above-captioned case, and I am making this Declaration as Exhibit 1 in support of my Motion to Compel Against Defendants (hereinafter "Defendant").

4. Exhibits 2-23 attached hereto are true and accurate emails/attachments of correspondence between myself and Attorney Christopher Belelieu, counsel for Defendant.

5. At the time that I sent my November 1, 2018 email to Attorney Belelieu, see Ex. 2 hereto, and in subsequent communications to him about a deposition, I had in mind a Fed.R.Civ.P. 30(b)(6) deposition of multiple Wing personnel as designated witnesses, particularly The Wing's co-founder and CEO, Audrey Gelman.

6. Approximately eight months after that email, in 2019, during the course of conferring on the parties' joint report under Fed.R.Civ.P. 26(f)(3), I orally again discussed with

Attorney Belelieu deposing Wing personnel.  However, this time—because I had recently learned that CEO Gelman was pregnant and I did not want to unnecessarily stress her with the burden of a looming deposition—I proposed immediately deposing The Wing's other co-founder and The Wing's COO, Lauren Kassan, as well as Bee Pollard, The Wing's Community Associate at its D.C. space, and then later deposing CEO Gelman once she had finished maternity leave.

7.    Ultimately, I orally clarified with Attorney Belelieu that I had in mind a Fed.R.Civ.P. 30(b)(6) deposition of The Wing—with COO Kassan and Community Associate Pollard as two suggested witnesses, among others—rather than individual depositions of the two named personnel themselves.

8.    On or about July 17, 2019, I had a telephone conference with Attorney Belelieu during which he still did not offer any available dates for a Fed.R.Civ.P. 30(b)(6) deposition of Refresh Club, Inc.  Instead, he during the call interposed the suggestion that Defendant intended to file a motion to dismiss based on lack of subject-matter jurisdiction, and thus that any discussion of deposition dates was premature. I retorted, among other things, that, pursuant to the parties' own joint report, the Court had already opened up factual discovery for either party to notice a deposition at will. I also asked Attorney Belelieu to still provide to me available dates for the deposition in the contingency, as it were, since I was going to go ahead and notice a Fed.R.Civ.P. 30(b)(6) deposition for sometime in August 2019 despite Defendant's putative motion.

9.    On or about August 5, 2019, I had a telephone conference with Attorney Belelieu during which we negotiated over my notice of Fed.R.Civ.P. 30(b)(6) deposition of Refresh Club, Inc. During the negotiations, Attorney Belelieu had several objections.  He stated that August 21, 2019 was not an available date for Refresh Club, Inc. for the deposition, including because The Wing's leadership would be traveling to attend The Wing's Camp No Man's Land summer camp during that timeframe.  Camp No Man's Land was scheduled to run from August 23-25, 2019.   Attorney Belelieu also stated that the deposition should be held in NYC where The Wing's headquarters is.

He also stated that the matters listed in the notice for examination at the deposition were too broad. He also stated that the documents requested in the notice's Fed.R.Civ.P. 34 request were also too broad. Finally, Attorney Belelieu stated that the notice improperly suggested COO Kassan and Community Associate Pollard as two of The Wing's designated witnesses. I during negotiations did not concede any of Attorney Belelieu's objections, and, among other things, objected myself to rescheduling the date and location of the deposition at that late date; however, I nonetheless did in good faith entertain the idea of holding the deposition in NYC.

10. Attorney Belelieu did not get back to me on August 13, 2019, as promised, with available dates for Refresh Club, Inc./its designated witnesses for the Fed.R.Civ.P. 30(b)(6) deposition.

11. On or about August 21, 2019, I left a voicemail for Attorney Belelieu asking him to contact me if he wanted to discuss my amended notice of Fed.R.Civ.P. 30(b)(6) deposition of Refresh Club, Inc.

12. On or about August 23, 2019, I had a telephone conference with Attorney Belelieu during which we discussed the amended notice at length, including its list of topics or matters for examination. During the call, I, among other things, emphasized to Attorney Belelieu that the complaint was a good roadmap for Refresh Club, Inc. to use in preparing its designated witnesses on the various topics or matters for examination. I also during the call went through topics or matters for examination one by one and explained to Attorney Belelieu in further detail what I would be looking for during the deposition—until Attorney Belelieu eventually stopped the process and said he would get back to me if he had any questions. I also during the call still anticipated that Refresh Club, Inc. would designate multiple Wing personnel—including but not limited to COO Kassan and Community Associate Pollard—as witnesses for the September 11, 2019 deposition—given the number of topics, and the fact that in their own initial disclosures, Defendant itself had listed six Wing personnel as factual witnesses: CEO Gelman, COO Kassan, The Wing's VP of Relations Mar-

3

ianna Martinelli, The Wing's Director of Community Frenchie Ferenczi, The Wing's Regional Manager Helen Dally, and Community Associate Pollard.  I especially expected Ms. Kassan to be a witness, since as a co-founder and the COO she was involved in the overall operations of The Wing from the start.

      13.     In the weeks leading up to the September 11, 2019 deposition, Refresh Club, Inc. did not designate—either in writing or orally—anyone as a witness for the deposition.

      14.     At considerable expense, time, and hardship to myself, I traveled to Attorney Belelieu's offices in NYC on September 11, 2019, and conducted the scheduled Fed.R.Civ.P. 30(b)(6) deposition there over the course of approximately six hours.

      15.     I stopped well short of using all seven hours for the deposition because it was obvious by about six hours that CFO Nelson did not have the requisite knowledge to answer a long list of questions that I had—including about statements made by The Wing on its social media accounts and website.

      16.     During/at the deposition, neither CFO Nelson nor Attorney Belelieu produced any of the documents requested by me in my amended notice's Fed.R.Civ.P. 34 request.

      17.     Exhibits 24 and 25 hereto are screenshots of webpages on the internet that I took as of the dates and times reflected in the titles of the screenshots files themselves.  All of the screenshots attached hereto as Exhibits are screenshots that I took of webpages and articles on the internet or of The Wing's social media account feeds as of the dates and times reflected in the titles of the screenshots files themselves.  Said dates and times were automatically accurately indicated by my computer at the time of each screenshot.  All of the screenshots fairly and accurately depict what they are of, and all of the dates and times in the screenshots' titles fairly and accurately reflect when the screenshots were taken.  Screenshots of different parts of the same webpage or article or post are grouped together by the same number and then a different letter.  Some screenshots are of the same (approximate) thing but taken on different dates.

18. In a telephone conversation in the weeks leading up to the September 11, 2019 deposition, Attorney Belelieu told me that an outcome of the NYCCHR investigation was that the NYCCHR asked The Wing to add the phrase "The Wing is a diverse community open to all" to more of its website's pages which The Wing did.

19. Following the September 11, 2019 deposition, Defendant never offered to produce additional corporate witnesses/representatives/designees for me to depose. Moreover, after I had already provided Attorney Belelieu with a copy of the transcript of the deposition, I spoke with him at least two if not three separate times on the phone and informed him of the approximate numbers of times during the deposition that CFO Nelson did not know the answer to a question, was uncertain in her answer to a question, evaded a question, gave a false answer, and refused to answer, and I even gave him several egregious examples of one or more of the categories. During at least one of these conversations, I also complained to Attorney Belelieu that Defendant at the deposition had not produced to me any of the documents requested in my Fed.R.Civ.P. 34 request or duces tecum attached to my notice of Fed.R.Civ.P. 30(b)(6) deposition. Each of the above times that I spoke with Attorney Belelieu, I asked him if Defendant was going to provide any meaningful remedy—such as a second Fed.R.Civ.P. 30(b)(6) deposition—for Defendant's said frustration of the first deposition, and he did not indicate in the affirmative or actually indicated in the negative. I also informed Attorney Belelieu that interrogatories were not a meaningful remedy for the frustration of the first deposition, including because I was limited by Fed.R.Civ.P. 33 to 25 interrogatories. Prior to taking the deposition, I had also informed Attorney Belelieu that interrogatories were no substitute for a deposition as a first discovery method in the first place because Defendant had seemingly engaged in false semantics in its answer—such that I needed an initial discovery method that would allow me if necessary to pin Defendant down to basic concepts by immediately asking follow-up questions.

After receiving Defendant's responses to my subsequent one interrogatory and 47 RFPs, I also spoke several times on the phone with Attorney Belelieu—for a total of several hours—and went through each discovery request in an attempt to obtain the discovery, but also to no avail.

Pursuant to 28 U.S.C. § 1746, I state under penalty of perjury that the foregoing is true and correct.

Executed on this 6th day of December 2019.

/s/ James E. Pietrangelo, II
_____
JAMES E. PIETRANGELO, II

Exhibits 1-135B