## UNITED STATES DISTRICT COURT
### FOR THE DISTRICT OF COLUMBIA

**JAMES E. PIETRANGELO II,**

     **Plaintiff,**

        **v.**

**REFRESH CLUB, INC. (DBA THE WING)**
***et al.*,**

     **Defendants.**

**Case No. 18-cv-1943-DLF-ZMF**

## MEMORANDUM OPINION

On August 20, 2018, Plaintiff James E. Pietrangelo, II filed this complaint against Defendants Refresh Club, Inc. and The Wing DC, LLC under the D.C. Human Rights Act of 1977 ("DCHRA"), D.C. Code § 2-1403.16 *et seq. See* ECF No. 1 (Compl.). District Judge Dabney L. Friedrich referred the case's discovery matters to a magistrate judge on January 14, 2020 under Local Rule 72.2. *See* Minute Order, Jan. 14, 2020. Both Plaintiff and Defendants have filed Motions to Compel Discovery. *See* ECF No. 44 (Renewing Pl.'s Mot. to Compel at ECF No. 28) [hereinafter Pl.'s Mot.]; ECF No. 45 (Defs.' Mot. to Compel) [hereinafter Defs.' Mot.].

Considering both motions and the responsive briefing to each, the undersigned hereby GRANTS in part and DENIES in part Plaintiff's Motion to Compel and GRANTS in part and DENIES in part Defendants' Motion to Compel.

## I.    Background

The Wing is a network of co-working and community spaces committed to the advancement of women in society. *See* ECF No. 11 (Defs.' MTD) at 1. As such, its facilities are

geared towards women members. *See id.* at 1–3. After launching three locations in New York City, the Wing opened in D.C. in April 2018. *See id.* at 3.

On June 4, 2018, Plaintiff, a man, submitted an online application for a membership to use The Wing's facilities. *See* Compl. ¶¶ 18–19, 28. The application asked for basic personal details, how the applicant has supported women, and what the applicant sees as the biggest challenge facing women today. *See id.* ¶ 11(1)(ll).[1] Plaintiff responded, "I have always supported and advocated for equality for all people" and "The same challenges facing men," respectively. Defs.' MTD, Exh. A. On the following day, Plaintiff called to inquire about the status of his application and two Wing employees informed him that it would be permanently deferred because membership was only available to "self-identifying women, and individuals who don't identify on the gender binary, so non-binary individuals." *See* ECF No. 47 (Pl.'s Opp.) at 19.

Defendants admit, "Prior to the recent adoption of a formal, written membership policy, The Wing's practice was to admit as members only women and nonbinary individuals." Defs.' MTD at 5. Yet, Defendants also answer that Plaintiff's application was not accepted because he failed to demonstrate commitment to The Wing's mission. *See* Defs.' Mot. at 3. Defendants' mission is the "professional, civil, social, and economic advancement of women through community." Defs.' MTD at 1. Plaintiff alleges that as a "place of public accommodation" under the DCHRA, Defendants cannot confine membership on the basis of sex or gender identity, or on preferences like commitment to a particular philosophy that intend discrimination on that prohibited basis. *See* Pl.'s Opp. at 6–7.

---

[1] The Court will follow Judge Friedrich's convention of referring to the duplicate paragraph 11s in the Complaint as 11(1) and 11(2). *See* ECF No. 24 (Order Denying MTD) at 1 n.2.

Early on, Plaintiff sought a corporate deposition of The Wing under Rule 30(b)(6).  *See* Pl.'s Mot. at 6–7.  After Defendants objected to Plaintiff's first Notice of Deposition including thirty-one topics, *see* Pl.'s Mot., Exhs. 10, 14, Plaintiff submitted an Amended Notice of Deposition reduced by only a single topic and arguably adding some specificity but no reduction in scope to the others, *see* Pl.'s Mot., Exh. 19.  Defendants attempted to work through this impasse, continuing to object to the scope.  *See* Defs.' Mot. at 7.  On September 11, 2019, Plaintiff deposed The Wing CFO Deidra Nelson as a corporate representative.  *See* Pl.'s Mot. at 11–12.  Deeming that deposition inadequate, Plaintiff here seeks to compel a second 30(b)(6) deposition.  *See id.* at 1–2.

Additionally, Plaintiff seeks a plethora of information about The Wing as a business through interrogatories and requests for production, to prove that it is a place of public accommodation and had discriminatory policies.  *See* Pl.'s Mot. at 47.  Defendants seek detailed personal history of Plaintiff to test Plaintiff's good faith in bringing suit and the genuineness of his application.  *See* Defs.' Mot. at 4–6.

Both parties' requests have some legitimacy but go too far.

## II.    Legal Standard

All discovery must be "relevant to any party's claim or defense and proportional to the needs of the case."  Fed. R. Civ. P. 26(b)(1).  Relevant information "need not be admissible in evidence to be discoverable."  *Id.*  Relevance "encompass[es] any matter that bears on, or that reasonably could lead to other matter that could bear on any party's claim or defense."  *United States ex. rel. Shamesh v. CA, Inc.*, 314 F.R.D. 1, 8 (D.D.C. 2016) (quoting *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351 (1978)) (internal quotation marks omitted).  The requested discovery material must have "some probable effect on the organization and presentation of the

moving party's case." *Jewish War Veterans of the U.S., Inc. v. Gates*, 506 F. Supp. 2d 30, 42 (D.D.C. 2007) (quoting *Smith v. Schlesinger*, 513 F.2d 462, 473 (D.C. Cir. 1975). When in doubt, "'relevance' for discovery purposes is broadly construed." *Food Lion, Inc. v. United Food & Com. Workers Int'l Union*, 103 F.3d 1007, 1012 (D.C. Cir. 1997). "This broad interpretation of relevance advances Rule 26's liberal and expansive purpose of permitting the parties to develop the facts, theories, and defenses of the case." *Ted Cruz for Senate v. Fed. Election Comm'n*, 451 F. Supp. 3d 92, 98 (D.D.C. 2020) (cleaned up).

"A party seeking discovery may move for an order compelling an answer, designation, production, or inspection [when] a deponent fails to answer a question . . . a party fails to answer an interrogatory . . . [or] fails to produce documents . . . ." Fed. R. Civ. P. 37(a)(3)(B). The party moving to compel "bears the initial burden of explaining how the requested information is relevant." *Jewish War Veterans*, 506 F. Supp. 2d at 42. The non-moving party then takes on the burden to "explain why discovery should not be permitted." *Id.* at 42. Judges "have considerable discretion" over discovery matters, which "is reviewable only for an abuse of discretion." *Shamesh*, 314 F.R.D. at 9 (quoting *Food Lion*, 103 F.3d at 1012). "[T]he proper scope of discovery in any case is a function of the nature of that case." *Waters v. U.S. Capitol Police Bd.*, 216 F.R.D. 153, 159 (D.D.C. 2003).

A.    Federal Rule of Civil Procedure 30(b)(6) Deposition

A Rule 30(b)(6) deposition "allows a party to depose a corporation through representatives designated by the corporation; the designee's testimony is then generally admissible as a statement of the corporation." *Banks v. Off. of the Senate Sergeant-At-Arms*, 241 F.R.D. 370, 372 (D.D.C. 2007). The party noticing a Rule 30(b)(6) deposition "must describe with reasonable particularity the matters for examination." Fed. R. Civ. P. 30(b)(6). "[T]he Rule obligates a corporate party to

prepare its designee to be able to give binding answers on its behalf," *Rainey v. Am. Forest & Paper Ass'n*, 26 F. Supp. 2d 82, 94 (D.D.C. 1998), that are complete and knowledgeable, *Reilly v. Natwest Mkts. Grp.*, 181 F. 3d 253, 268 (2d Cir. 1999). The deponent or deponents must have knowledge of information not just within their personal knowledge but reasonably within the corporation's knowledge. *See Banks*, 241 F.R.D. at 373.

A Rule 30(b)(6) deponent should "not be subjected to a 'memory contest.'" *Alexander v. FBI*, 186 F.R.D. 137, 143 (D.D.C. 1998). The duty of the corporation requires a "good faith effort" at preparing the witness for all noticed topics. *See Wilson v. Lakner*, 228 F.R.D. 524, 530 (D. Md. 2005); *see also Calzaturficio S.C.A.R.P.A. s.p.a. v. Fabiano Shoe Co.*, 201 F.R.D. 33, 36 (D. Mass. 2001). But for a Rule 30(b)(6) witness to be found inadequate, her lack of knowledge must be "significant, conscious, and material" to a party's discovery. *In re Vitamins Antitrust Litig.*, 216 F.R.D. 168, 173 (D.D.C. 2003).

B.   D.C. Human Rights Act

The elements of Plaintiff's cause of action guide the discovery analysis. The relevant provision makes it unlawful to "wholly or partially for a discriminatory reason based on the actual or perceived . . . sex . . . gender identity or expression . . . of any individual: to deny, directly or indirectly, any person the full and equal enjoyment of the goods, services, facilities, privileges, advantages, and accommodations of any place of public accommodations." D.C. Code § 2–1402.31(a)(1).

"'Place of public accommodation' means all places included in the meaning of such terms as . . . restaurants or eating houses, or any place where food is sold for consumption on the premises; . . . any store, park or enclosure where spirituous or malt liquors are sold; . . . all stores where . . . beverages of any kind are retailed for consumption on the premises; wholesale and retail

stores, and establishments dealing with goods or services of any kind." § 2-1401.02(24).  Yet this does not include "any institution, club, or place of accommodation which is in its nature distinctly private."  *Id.*  "A place of accommodation, institution, or club shall not be considered in its nature distinctly private if the place of accommodation, institution, or club: (A) Has 350 or more members; (B) Serves meals on a regular basis; and (C) Regularly receives payment for dues, fees, use of space, facilities, services, meals, or beverages directly or indirectly from or on behalf of nonmembers for the furtherance of trade or business."  *Id.*

Finally, businesses can avoid lawsuits such as this one by receiving approval from the city for an "affirmative action plan" to prioritize service to historically marginalized groups, like women and non-binary people.  *Id.* § 2-1402.53.  The Wing has not represented that such a plan exists, and Plaintiff alleges that it does not.  *See* Compl. ¶ 14(d).

**III.    Analysis**

   A.    <u>Deposition</u>

Plaintiff asserts that the previous 30(b)(6) deposition was insufficient because Ms. Nelson was unable to answer some 300 questions propounded to her across the six-hour deposition.  *See* Pl.'s Mot. at 12.  He states that additional representatives should have been deposed if she could not adequately address the noticed topics.  *Id.* at 46.  Defendants respond that Ms. Nelson was robustly informed after putting days into preparation, but that no person or set of persons could memorize the minutiae Plaintiff sought, particularly without any exhibits provided and in advance of any discovery disclosures.  *See* ECF No. 48 (Defs.' Opp.) at 4–7.

The list of topics that Plaintiff demanded The Wing address in the 30(b)(6) deposition spanned thirty cavernous topics—including "Defendant's finances" and "Defendant's marketing"—five of which reached even further with the caveat, "including but not limited to."

Pl.'s Mot., Exh. 19. Of course, "[l]isting several categories and stating that the inquiry may extend beyond the enumerated topics defeats the purpose of having any topics at all." *Tri-State Hosp. Supply Corp. v. United States*, 226 F.R.D. 118, 125 (D.D.C. 2005). There is no aspect of Defendants' business not covered by these topics.

The deposition transcript confirms Ms. Nelson was knowledgeable and sufficiently answered Plaintiff's many detailed questions on: Defendants' corporate structure, *see* Pl.'s Mot., Exh. 22 at 6:3–12:8; Defendants' valuation, investment rounds, and profits, *see id.* at 14:3–18:21, 20:19–24:12; Defendants' personnel and board, *see id.* at 27:6–30:9, 38:4–42:11, 268:15–21; amenities offered to Defendants' members, *see id.* at 57:2–81:2; Defendants' membership application process, *see id.* at 154:12–164:19, 174:2–189:9; and even menu options at Defendants' on-site cafés, *see id.* at 83:13–86:15.

Ms. Nelson was not omniscient.[2] But by choosing to conduct the corporate deposition at that early stage of discovery, after producing an overbroad notice, and without the aid of visual exhibits, Plaintiff chose to accept the limits of human memory capacity. While an additional deposition would benefit Plaintiff, it is not proportional to the needs of the case. Plaintiff's unanswered questions are immaterial. For example, it is true that the type and manner of food served in the café could go to The Wing's status as a place of public accommodation, but Defendants need not recite each day's menu over a multi-year period. "[T]hese unanswered questions [do not] warrant[] entirely new [30(b)(6)] depositions," particularly where "interrogatories and requests for production" have already or will answer the overarching question.

---

[2] This Court will not recite the unanswered questions that Plaintiff identifies at length in his pleading, in utter disregard of the page limits in this Court's Local Rules. *See, e.g.*, LCvR 7(e); *see generally* Pl.'s Mot.

*Alexander*, 186 F.R.D. at 142–43.  Because Plaintiff's request for a second deposition is denied, his request for the associated costs is moot.

      B.     <u>Document Production & Interrogatories</u>

           1.     *Plaintiff's Motion*

                a.     Interrogatory No. 5

Start small.  Defendants consent to answer Plaintiff's Interrogatory No. 5 now that a protective order is in place.  *See* Defs.' Opp. at 10.  On that basis, Defendants are ordered to answer.

                b.     Requests for Production

Plaintiff has issued 47 requests for production.  Defendants generally consent to many of those requests but seek certain limitations on their scope and oppose others based on relevance and vagueness.

                (1)     General Limitations

**Locations:**  Plaintiff requests discovery pertaining to The Wing corporation as a whole, including locations in cities other than D.C., because he allegedly applied for a multi-location membership.  *See* Pl.'s Mot. at 51–52.  Defendants respond that only information pertaining to the D.C. location is relevant because, according to them, Plaintiff applied only to that location and brings suit under D.C. law.  *See* Defs.' Opp. at 12.

The type of membership Plaintiff sought remains an open question.  Defendants rely on vague online form printouts without clearly defined fields that differ between each other to support their argument.  *Compare* Defs.' MTD, Exh. A *with* ECF No. 15-2 (Defs.' Reply in Supp. of MTD, Exh. 1).  Regardless, The Wing is a unified company with a unified mission and polices, considering itself a "network."  Defs.' MTD at 1.  Its policies are set by a single centralized Board of Directors to apply to all locations.  *See id.* at 5.  Even if Plaintiff did not apply for it, The Wing

does offer all-access membership to all locations.  *See* Compl. ¶ 11(1)(ii).  Policies and practices at the older locations likely shed light on the treatment experienced by Plaintiff.  Plaintiff's request for relevant discovery from all locations, with the below time frame limitation, is granted.

**Time Frame:**  Under each category of documents, Plaintiff asks for those spanning from January 1, 2015 to September 25, 2019, an almost five-year period.  *See* Defs.' Opp. at 11; *see, e.g.*, Pl.'s Mot. at 54 n.14.  This captures the time from The Wing's formation up through the early stages of this lawsuit.  *Id.*; *see also* Compl. (filed Aug. 2018).  Defendants instead request a time frame of two years, from June 4, 2017 to June 4, 2019—a year on either side of Plaintiff's application to The Wing.  *See* Defs.' Opp. at 11.

A discovery request "must be . . . reasonably limited in time."  *Glenn v. Williams*, 209 F.R.D. 279, 282 (D.D.C. 2002).  Despite the inherent imprecision of establishing a time frame, "[a] judge must simply draw a reasonable line between the likely and the unlikely, the discoverable and the prohibited, the wheat and the chaff."  *D'Onofrio v. SFX Sports Grp.*, 256 F.R.D. 277, 280 (D.D.C. 2009).  And courts routinely limit discovery temporally in discrimination cases to a shorter period than Plaintiff requests here.  *See, e.g., id.* ("a limitation of six months after [the plaintiff's] termination is generous."); *Glenn*, 209 F.R.D. at 282 (finding ten years "an inordinate length of time" and reducing time period to three years).  This case presents no special issues requiring especially lengthy discovery.

The relevant time period is that immediately abutting Plaintiff's application to The Wing DC on June 4, 2018 (*i.e.*, the triggering event).  The details of The Wing DC's operations in the months leading up to that date are necessary for establishing its status at the relevant time as a place of public accommodation and the content of any membership policies.  The Wing DC did not open until April 2018, so Defendants' proposed period captures that facility from its beginning

and even extends to the time period of setting up the new location, which may be relevant.  Any earlier than this is, at best, tangentially relevant to Plaintiff's claims.  What matters is whether The Wing DC was a place of public accommodation on June 4, 2018.  What The Wing in New York City was in, say, June 2016, bears little on that question.  If sufficient evidence of The Wing DC's status as a place of public accommodation in the year leading up to Plaintiff's application does not exist, any time prior to that is unlikely to yield the required proof.  Moreover, such request is not proportional to the needs of the case as it would unduly burden Defendants to draw upon such an expansive time period.  *See Glenn*, 209 F.R.D. at 281–82 (reducing discovery time period based on the defendants' objection to burdensomeness).

The months after Plaintiff's application are relevant as they may permit inferences about Defendants' prior intent and actions.  Particularly, Defendants appear to have changed or formalized their membership policy relating to sex and gender after and in response to Plaintiff's complaint.  *See* Defs.' MTD at 1.  But, as Defendants' note, a year is a sufficient period to gain such *post hoc* insights, particularly where this Court has found six months of discovery following the triggering event to be "generous."  *D'Onofrio*, 256 F.R.D. at 281.  The Court will grant Plaintiff's Motion pursuant to Defendants' proposed modification in time period.

(2)     Specific Limitations

**Uncontested Requests:**  Defendants have agreed to disclose documents, subject to the above global limitations, in response to the following requests: Applicants and Members (Reqs. Nos. 9, 10, 12, 14, 16, 20, 21, 22, 23, 24, 37); Media, Social Media, and Press Material (Reqs. Nos. 29, 30, 31, 32); Records Relating to Plaintiff (Reqs. Nos. 35, 36); Photographs of Defendants' Premises (Req. No. 38); "Co-working" References (Req. No. 39); Defendants' Bylaws (Req. No.

10

40); NYCCHR Investigation Records (Req. No. 43).  *See generally* Defs.' Opp.  They are thus ordered to do so.

**Financial Records (Reqs. Nos. 1–5):**  Plaintiff requests individual receipts for sales in The Wing's cafés, retail, services, and membership fees, and all sources of revenue.  *See* Pl.'s Mot., Exh. 18, Reqs. Nos. 1–5.  Defendants object to these as irrelevant, but request that, if granted, they be limited to high-level statements of gross revenue or sales.  *See* Defs.' Opp. at 14.

The type and quantity of business conducted by The Wing is relevant to its status as a place of public accommodation under the DCHRA.  *See* D.C. Code § 2-1401.02.  But production of "individual sales receipts" across multiple points of sale and multiple locations "is overly burdensome," while adding little value to Plaintiff's case.  *Treadway v. Otero*, No. 18-cv-259, 2019 U.S. Dist. LEXIS 138827, *2 (S.D. Tex. Aug. 16, 2019).  The Court grants Plaintiff's request for such data with Defendants' requested limitation.  Defendants must provide relevant metrics in the data they provide, such as what percentage of sales were made to members vs. non-members, total customers and purchases, categories of sales and services, and the sex or gender identity of any customers if known.  Plaintiff can establish public accommodation status from such data.

**Written Feedback (Req. No. 8):**  Plaintiff requests any written feedback The Wing has received from members, employees, and guests.  *See* Pl.'s Mot. at 56.  This request is burdensome due to its vagueness—feedback could mean exclusively comments submitted through a formal "recommendations" channel or could mean any written statements from patrons about the facilities.  It also adds little relevant information to Plaintiff's case.  Plaintiff states that he seeks complaints about the exclusion of men, *see id.*, but it is undisputed that The Wing did not admit men before Plaintiff's complaint.  How The Wing's members may feel about such policy is not relevant.  Complaints about behavior inconsistent with The Wing's mission would support

Plaintiff's theory that The Wing's admission criteria are not truly a commitment to that mission, but that policy was not in place until after Plaintiff's denial, so it bears no relevance. *See* Defs.' MTD at 1. This request is denied.

**Scholarships (Reqs. Nos. 11, 13, 15, 17):** The details of scholarship recipients are irrelevant to Plaintiff's claim. If, for example, Plaintiff was seeking to show that more women than men received scholarships, this information would be relevant. But given that no men were previously admitted as members, there can be no relevant discrimination in scholarship recipients among members relevant to Plaintiff's claim. *See* Defs.' MTD at 5. Plaintiff's request is denied.

**Guests (Reqs. Nos. 6, 18, 25, 26):** The level of access that non-members have had to The Wing is relevant to whether it is a private or public facility. *See* D.C. Code § 2-1401.02. Defendants are ordered to disclose this information subject to the above global limitations.

**Hiring, Employment, and Third-Party Vendors (Reqs. No. 7, 27, 28, 34, 41):** Plaintiff seeks information about discrimination against men in The Wing's employment and contracts. While those affected might have their own discrimination claim against The Wing, their situation has nothing to do with Plaintiff's claim. If The Wing disputed exclusion of men in membership, evidence of exclusion of men in other aspects of the business would tend to show a pattern, but it does not contest this. This request is denied.

**Social Media Links (Req. No. 44):** Plaintiff credibly alleges that The Wing has requested social media profiles of applicants. *See* Pl.'s Mot. at 68. This is relevant to Plaintiff's analysis of how The Wing processes applications and considers protected traits under the DCHRA. This request is granted subject to the above global limitations.

**Government Submissions (Req. No. 42):** How The Wing has characterized itself in government applications and filings is relevant to its status under the DCHRA. While this is not

a factor explicitly laid out in Section 2-1401.02, it does relate to what business The Wing is permitted to practice in the cities where it is located.  This request is granted subject to the above global limitations.

**Diversity (Req. No. 45):**  The Wing's internal documents related to diversity commitments are relevant to Defendants' position towards including men, the possibility of a business necessity defense, the implementation of its mission, and any affirmative action plans.  This request is granted subject to the global limitations above with the caveat that it includes any policies that were created prior to the relevant time period but still in effect.

**Witness Statements (Req. No. 48):**  Any non-privileged statements created about the facts in this case are relevant.  This request is granted subject to the above global limitations.

2.    *Defendants' Motion*

a.    Interrogatories & Requests for Production Related to Plaintiff's Commitment to The Wing's Mission

i.    Legal Framework

The Wing purportedly denied Plaintiff's application because he failed to demonstrate a commitment to its mission.  *See* Defs.' Mot. at 3.  To that end, Defendants seek discovery testing Plaintiff's commitment to such mission.  *See id.* at 4.  Defendants argue such information is relevant to their substantive defense as well as to Plaintiff's request for injunctive relief.  *See* ECF No. 51 (Defs.' Reply) at 4–5.  As this Court has stated, Plaintiff's "commitment to the defendants' mission is relevant to this case."  ECF No. 41 (Status Conf. Transcript, Dec. 5, 2019) at 5:24-6:1.

It is undisputed that membership in The Wing is based solely on a review by its staff of the online application.  *See* Pl.'s Mot., Exh. 28 at 157:8–158:9 (deposition of CFO Nelson).  Because The Wing's application specifically probed the applicant's commitment to the mission—and it was allegedly the basis for the Plaintiff's rejection—such subject is discoverable.  The Court

"cannot conclude that the information sought by Defendants would have no bearing on any merits-based defense they may raise." *Cruz*, 451 F. Supp. 3d at 98. Given the broad scope of discovery, it is irrelevant "[w]hether such a defense ultimately will be persuasive to us [as] a matter of law or fact." *Id*. at 99.

Plaintiff complains that the requested information was not available at the time the decision in question was made. *See* Pl.'s Opp. at 14. Yet, such argument is "better suited to the more narrow issue of admissibility of certain information, rather than the issue before the court, which is the broader question of whether that information is discoverable." *In re Cooper Tire & Rubber Co.*, 568 F.3d 1180, 1191 (10th Cir. 2009) (internal quotation marks omitted). Although the discovery sought likely cannot be used to show Defendant's intent in evaluating Plaintiff's application, it could show that Defendants were *correct* in their evaluation of Plaintiff's application.

Moreover, "[a]lthough disputed discovery may not be directly tied to a claim or defense in the case, that discovery may still be relevant to issues that are likely to arise in the case." *Kennicott v. Sandia Corp.*, 327 F.R.D. 454, 471 (D.N.M. 2018). Given that it is likely Plaintiff will adduce testimony about his intent to join The Wing, data about his commitment to its mission is "discoverable information that would be potentially relevant . . . for cross-examination." *Gibson v. Credit Suisse AG*, No. 10-cv-1, 2016 WL 11546364, at *3 (D. Idaho Jan. 8, 2016).

Plaintiff's request for injunctive relief to grant him membership in The Wing is an independent basis to grant such discovery request. *See* Defs.' Reply at 4–5. Plaintiff's request has "put at issue" whether he can even be a member of The Wing. *Nelson v. City of Madison Heights*, No. 13-cv-10632, 2014 WL 12659356, at *3 (E.D. Mich. June 2, 2014). The prerequisite for such membership today is a commitment to The Wing's mission. *See* Defs.' Mot. at 3. If discovery

reveals that Plaintiff is prejudiced against women and/or non-binary people (*i.e.*, does not support The Wing's mission), the Court arguably could not in equity place him there.  Thus, "the Court finds the relevance of the information requested . . . [in regards to] Plaintiff's claim for injunctive relief outweighs any potential harm," to him from answering such questions.  *Airport Sys. Int'l, Inc. v. Airsys ATM, Inc.*, No. 00-cv-2171, 2001 WL 1718274, at *8 (D. Kan. May 16, 2001).

ii.     Specific Requests

The specific requests are addressed in seriatim.

**Actions to Promote Women:**  Defendants request "Plaintiff's actions to promote women, people of color, and non-binary individuals."  Defs.' Mot. at 4 (citing "Ex. A, Rog. No. 12; Ex. B, Reqs. Nos. 10, 11, 12, 13").

- Interrogatory 12: Identify all actions you have taken to promote the professional, civic, social, and economic advancement of women [and] non-binary people, ~~and/or people of color,~~ including any events or functions you have attended that promote the professional, civic, social, and economic advancement of women [and] non-binary people~~, and/or people of color~~.

    o   For the reasons above, this request is granted, but with the above modifications excising "people of color."  Sex and gender are the subject of the instant litigation, not race.  Indeed, prior to Plaintiff's complaint, The Wing catered only to "self-identifying women, and individuals who don't identify on the gender binary, so non-binary individuals."  *See* Pl.'s Opp. at 19.

- Request 10: All documents and communications regarding statements Plaintiff has made, or positions Plaintiff has taken, regarding the professional, civic, social, and economic advancement of women or the position of women in society.

15

o   For the reasons above, this request is granted.

- Request 11: All documents and communications regarding statements Plaintiff has made, or positions Plaintiff has taken, regarding the professional, civic, social, and economic advancement of people of color or the position of people of color in society.

  o   For the reasons above, this request is denied.

- Request 12: All documents and communications regarding statements Plaintiff has made, or positions Plaintiff has taken, regarding the professional, civic, social, and economic advancement of non-binary people or the position of non-binary people in society.

  o   For the reasons above, this request is granted.

- Request 13: All documents and communications regarding statements Plaintiff has made about women, non-binary people, and/or people of color.

  o   For the reasons above, this request is denied as to information it seeks about people of color.  Additionally, this request is denied as to the information it seeks about women and/or non-binary people.  Such request is boundless, vague, and not proportional to the needs of this case, as it encompasses every statement Plaintiff has ever made about very broad topics.  This goes far beyond the question of commitment to The Wing's mission.  Moreover, Request 10 sufficiently covers the relevant information sought by this question.

**Complaints by Plaintiff:**  Defendants request "[c]omplaints Plaintiff has made against women, people of color, and non-binary individuals, including threats of violence and interactions with law enforcement."  Defs.' Mot. at 4 (citing "Ex. A, Rog. No. 13; Ex. B, Reqs. Nos. 21, 22").  For the reasons above, these requests are denied as to information they seek related to people of

16

color.  Additionally, this request is denied as to the information it seeks about women and/or non-binary people.  Such request is boundless, vague, and not proportional to the needs of this case, as it fails to define "complaints," limit the date range of such complaints, or tie such complaints to ones where the person's sex or gender identity was the motivating factor.

**Plaintiff's Memberships:**  Defendants request "Plaintiff's social media profiles and membership in other social clubs to determine whether he has demonstrated a commitment to the advancement of women."  Defs.' Mot. at 4 (citing "Ex. B, Reqs. Nos. 15, 16, 25").  This request is denied as it is boundless, vague, and not proportional to the needs of this case, as it fails to limit the date range of such request or the scope, and seeks a potentially enormous volume of data, none of which is likely to bear upon the Plaintiff's commitment to the advancement of The Wing's mission.

b.      Interrogatories & Requests Related to Plaintiff's Motives

i.      Legal Framework

Second, Defendants seek to test the veracity of Plaintiff's desire, as a man who believes women face no unique challenges in society as compared to men, to join a working space dedicated to the advancement of women.  *See* Defs.' Mot. at 5.  As this Court noted, "the plaintiff's motives for bringing this lawsuit . . . [are] relevant to this case."  Status Conf. Transcript at 5:24-6:1.  Specifically, Plaintiff's "motivation" in applying to The Wing "may be relevant . . . to defenses the [Defendants] may seek to mount."  *Cruz*, 451 F. Supp. 3d at 98.

By alleging that he "*genuinely* submitted an online application for membership in The Wing," Compl. ¶ 18 (emphasis added), Plaintiff has "opened the door" to questions about his motives, *Beale v. District of Columbia*, No. 04-cv-959, 2005 WL 8178299, at *2 n.3 (D.D.C. Sept. 30, 2005).  Plaintiff's argument that the genuineness of his motives is "not relevant at the discovery

17

stage may even be disingenuous in light of the fact that [P]laintiff [himself] raised the [allegation]" in the first place. *Meijer, Inc. v. Warner Chilcott Holdings Co., III*, 245 F.R.D. 26, 31 (D.D.C. 2007) (cleaned up). It takes only one word—*e.g.*, "genuinely"— to open a can of discovery worms.[3]

Independent of the above analysis, Defendants' defense of unclean hands permits this discovery. *See* Defs.' Mot. at 5. This "defense [is] available 'where the plaintiff's misconduct occurred in connection with the same transaction that is the subject of [Plaintiff's] claim.'" *Hughes v. Abell*, 794 F. Supp. 2d 1, 11 (D.D.C. 2010) (quoting *Zanders v. Reid*, 980 A.2d 1096, 1101 (D.C. 2009)). Yet, "[i]n applying the defense of unclean hands, [] the courts 'are not bound by formula or restrained by any limitation that tends to trammel the free and just exercise of discretion.'" *W. Union Tel. Co. v. MCI Commc'ns Corp.*, No. 85-cv-5800, 1986 WL 2769, at *2 (S.D.N.Y. Feb. 26, 1986) (quoting *Keystone Driller Co. v. Gen. Excavator Co.*, 290 U.S. 240, 245–246 (1933)). Here, Defendants allege that all of "Plaintiff's claims are frivolous and were initiated in bad faith." Defs.' Reply at 5.[4] "[A]t this discovery stage of the litigation the appropriate standard of relevancy is a very liberal one . . . therefore, it does not seem inconceivable that plaintiff's alleged 'unclean' tactics of" filing a frivolous suit in bad faith "could state a colorable defense." *W. Union Tel. Co.*, 1986 WL 2769, at *2.

---

[3] A seasoned litigator such as Plaintiff ought to know better than to include such superfluous language in a complaint if he is not prepared to litigate it.

[4] Defendants also apparently raise an unclean hands defense based on Plaintiff's move to New Hampshire since filing this suit. *See* Defs.' Mot. at 5. This hardly establishes a viable unclean hands argument. Plaintiff moved a full year after being denied admission to The Wing. *See id.*; Compl. at ¶ 18. If Defendants are suggesting that Plaintiff only moved to D.C. to file this lawsuit, they fail to explicitly do so and fail to offer any reason to think that would be the case.

Plaintiff's opposition rests on his unilateral conclusion that The Wing is a place of public accommodation.  *See* Pl.'s Opp. at 6.  But this "is a question of law [only to be decided] once the underlying facts have been determined."  *United States v. Richberg*, 398 F.2d 523, 526 (5th Cir. 1968).  Indeed, the Court has permitted discovery as to this very question in response to Plaintiff's Motion.  *See supra* Part III.B.1.  It would put the cart ahead of the horse to foreclose fact discovery regarding a defense because a later legal conclusion *may* preclude the availability of such defense. *See Cruz*, 451 F. Supp. 3d at 98–99.  Discovery is not to be denied because it relates to a "defense that is being challenged as insufficient" or unavailable.  *Alexander v. F.B.I.*, 194 F.R.D. 316, 326 (D.D.C. 2000) (quoting 8 Charles Alan Wright, et al., *Federal Practice and Procedure* § 2008 (2d ed. 1994)).  "[I]n the guise of a discovery motion, [Plaintiff is] asking for what amounts to dispositive relief from an affirmative defense by [Defendants]."  *Mon Chong Loong Trading Co. v. Travelers Excess & Surplus Lines Co.*, No. 12-cv-6509, 2014 WL 5525237, at *3 (S.D.N.Y. Oct. 27, 2014).  "As long as the defense is in the case—and plaintiffs do not purport to seek relief under Fed. R. Civ. P. 12(f), which authorizes a motion to strike affirmative defenses—the defendant is entitled to seek relevant discovery in support of that defense."  *Id.*

Further, this discovery is necessary for assessment of damages.  *See* Defs.' Mot. at 2–3, 5. The complaint seeks economic and emotional compensatory damages as well as punitive damages. *See* Compl. ¶¶ 30, 57.  Defendants are "entitled to discovery" regarding such damages.  *Nesbitt v. Holder*, 34 F. Supp. 3d 192, 196 (D.D.C. 2014).  "Information relevant to [] damages may be discoverable in advance of judgment under the broad discovery envisioned by the Federal Rules of Civil Procedure."  *In re ULLICO Inc. Litig.*, No. 03-cv-1556, 2006 WL 2398743, at *1 (D.D.C. June 20, 2006) (cleaned up).

ii.     Specific Requests

The specific requests are addressed in seriatim.

**Plaintiff's Personal Financial Data:**   Defendants request **"**Plaintiff's income and employment to determine whether Plaintiff had the ability to pay Defendants' membership fees." Defs.' Mot. at 6 (citing "Ex. A, Rog. No. 9; Ex. B, Reqs. Nos. 2, 3").  These requests are denied as irrelevant and not proportional to the needs of the case.  There is no indication that Plaintiff was unable to pay the membership fees (thus his application cannot be considered frivolous on that basis), or that this was even considered in the application process.  The Court must be cautious of granting discovery for such private information.

**Related to Application:**   Defendants request **"**[i]nformation regarding Plaintiff's application to The Wing and other co-working locations to which Plaintiff applied to assess his intentions of using Defendants' spaces."  Defs.' Mot. at 6 (citing "Ex. B, Reqs. Nos. 4, 5, 7").

- Request 4: All documents and communications regarding Plaintiff's application for membership to The Wing.

   o For the reasons above, this request is granted.  Plaintiff claims that Defendants already have this information, but Defendants only have their data about the Plaintiff's application.  It is certainly possible that the Plaintiff kept his own records, including his own thoughts, about the veracity and genuineness of his application.  *Cf. English v. Washington Metro. Area Transit Auth.*, 323 F.R.D. 1, 18 (D.D.C. 2017) (no rule defines "relevant evidence as that which constitutes the 'best evidence' of an allegation or fact").

20

- Request 5: All documents and communications regarding Plaintiff's communications with The Wing regarding his membership application or any other matters, including the June 5, 2018 phone call with employees of The Wing.

  o For the reasons above, this request is granted.  It appears that Plaintiff has already produced some, if not most, of the data responsive to this request.

- Request 7: All documents and communications regarding any other applications submitted by Plaintiff to any co-working, community or workspaces other than The Wing since January 1, 2018.

  o Plaintiff states that that he did not apply to any other such place, so there are no responsive records.

**Plaintiff's Prior Litigation:**  Defendants request **"**[p]rior litigation Plaintiff initiated and his financial motives for bringing this action to determine whether Plaintiff brought this lawsuit for a legitimate purpose."  Defs.' Mot. at 6 (citing "Ex. A, Rog. Nos. 16, 17; Ex. B, Reqs. No. 24").  These requests are denied as irrelevant and not proportional to the needs of the case.  Plaintiff is no doubt litigious, but that has no bearing on the possible frivolity of this suit.  Financial motives underpin much, if not most, of civil litigation.  Just because Plaintiff seeks financial gain from litigation does not mean he is acting in bad faith.  These requests are not relevant to the issues discussed above and are pled in a vague and overly broad manner.

**Plaintiff's Professional Misconduct:**  Defendants request **"**[a]llegations of professional misconduct to determine whether Plaintiff has a history of bringing frivolous lawsuits.  Defs.' Mot. at 6 (citing "Ex. A, Rog. No. 18; Ex. B, Reqs. No. 20").  These requests are denied as irrelevant and not proportional to the needs of the case.  Any prior professional lapses are not an indicator of the frivolity of *this* suit.  This appears more an attempt to smear Plaintiff, rather than to gain

discoverable information.  These requests are not relevant to the issues discussed above and are pled in a vague and overly broad manner.

      **Plaintiff's Good Faith:**    Defendants request **"**[i]nformation regarding Plaintiff's allegations in his Complaint to determine whether he made his allegations in good faith."  Defs.' Mot. at 6 (citing "Ex. A, Rog. No. 3; Ex. B, Reqs. Nos. 17, 19").

- Interrogatory 3: Identify all facts, Persons with knowledge, and Documents that support your allegation in Paragraph 9 of the Complaint that "The Wing, both as a matter of policy and practice, excludes men" and your allegation in Paragraph 11(zz) of the Complaint that "The Wing's only real membership criteria is being or identifying as a woman, and the membership device is simply a subterfuge to illegally exclude men."

    o For the reasons stated above, this request is granted.

- Request 17: All documents and communications supporting your allegation in Paragraph 11(yy) that "there is little to no real investigation of applicants before they are granted membership."

    o For the reasons stated above, this request is granted.  However, Plaintiff purports to have already produced all information relevant to this request.

- Request 19: All documents and communications supporting your allegation in Paragraph 11(aaa) that "all or virtually all or mostly all women who apply for membership in The Wing are either granted membership or are put on waiting lists due to building capacities and are eventually granted membership."

    o For the reasons stated above, this request is granted.

**Hardship to Plaintiff:** Defendants request **"**[t]he purported hardship Plaintiff suffered by being denied membership to The Wing to assess his alleged damages." Defs.' Mot. at 6 (citing "Ex. B, Reqs. No. 23").

- Request 23: All documents and communications regarding any alleged hardship suffered by Plaintiff as a result of not being admitted to The Wing as a member.

    o For the reasons stated above, this request is granted.

C.      Costs of Motion

Plaintiff requests that Defendants be ordered to pay for his reasonable expenses in filing this motion. *See* Pl.'s Mot. at 2. The Federal Rules provide, "If the motion [to compel] is granted—or if the disclosure or requested discovery is provided after the motion was filed—the court must, after giving an opportunity to be heard, require the party or deponent whose conduct necessitated the motion, the party or attorney advising that conduct, or both to pay the movant's reasonable expenses incurred in making the motion, including attorney's fees." Fed. R. Civ. P. 37(a)(5)(A). However, "the court must not order this payment if: (i) the movant filed the motion before attempting in good faith to obtain the disclosure or discovery without court action; (ii) the opposing party's nondisclosure, response, or objection was substantially justified; or (iii) other circumstances make an award of expenses unjust." *Id.* A position is substantially justified if "there is a genuine dispute" and there is some legal support for it. *Covad Commc'ns. Co. v. Revonet, Inc.*, 262 F.R.D. 1, 4 (D.D.C. 2009).

The more applicable provision here states, "If the motion is granted in part and denied in part, the court may issue any protective order authorized under Rule 26(c) and may, after giving an opportunity to be heard, apportion the reasonable expenses for the motion." Fed. R. Civ. P. 37(a)(5)(C). This provision incorporates the above exceptions. *See United Property & Casualty*

*Ins. v. Couture*, No. 19-cv-1856, 2020 WL 3402396, at *2 (D.S.C. June 19, 2020) (quoting

*Stephenson v. Pfizer Inc.*, No. 13-cv-147, 2014 WL 3385213, at *2 (M.D.N.C. July 9, 2014)).

Besides making this request and citing the relevant rule in the context of costs for a

duplicative deposition, *see* Pl.'s Mot. at 43, Plaintiff offers no argument on this point.  Regardless,

Plaintiff's request is denied because Defendants' conduct was substantially justified.  Defendants

requested certain parameters on the disclosures that were reasonable and some of which are granted

herein—evidence of a genuine dispute.  *See Covad Commc'ns. Co.*, 262 F.R.D. at 4.  Plaintiff

apparently refused to compromise on any of these points, forcing the Court to dictate the

parameters through these motions.  Defending against Plaintiff's overly burdensome discovery

demands was justified.


An order accompanies this opinion.


_____

ZIA M. FARUQUI

UNITED STATES MAGISTRATE JUDGE