UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| JAMES E. PIETRANGELO, II )<br>)<br>*Plaintiff*, )<br>)<br>v. )<br>)<br>REFRESH CLUB, INC. (dba THE WING), and )<br>THE WING DC, LLC (dba THE WING aka )<br>THE WING DC) )<br>)<br>*Defendants*. )<br>) | Judge Dabney L. Friedrich<br><br>(Magistrate Judge Zia M. Faruqui)<br>    (for discovery only)<br><br>Civil Action No. 1:18-cv-01943-DLF-ZMF |

### **PLAINTIFF'S OBJECTIONS TO MAGISTRATE JUDGE'S MEMORANDUM OPINION AND ACCOMPANYING ORDER DENYING PLAINTIFF'S MOTION TO COMPEL IN PART AND GRANTING DEFENDANTS' MOTION TO COMPEL IN PART**

JAMES E. PIETRANGELO, II, Pro Se
120 North-South Rd. Unit C, PMB # 167
North Conway, NH 03860
(603) 662-2224

## TABLE OF CONTENTS

**Pages**

Table of Authorities ..................................................................................................................................ii

Objections ....................................................................................................................................................1

Background and Procedural History ......................................................................................................1

Standard of Review ....................................................................................................................................2

**Plaintiff's Discovery** ................................................................................................................................3

30(b)(6) Deposition....................................................................................................................................3

RFPs 7, 41 .................................................................................................................................................11

RFPs 11, 13, 15, 17 ..................................................................................................................................12

RFPs 27, 28, 34 ........................................................................................................................................12

Motion Costs ............................................................................................................................................12

**The Wing's Discovery** ..........................................................................................................................13

Commitment to The Wing's Mission...................................................................................................13

RFP 12 .......................................................................................................................................................14

# TABLE OF AUTHORITIES

**Pages**

**Cases**

*Alexander v. F.B.I.* ..................................................................................................................... 6,7
    186 F.R.D. 137 (D.D.C. 1998)

*Am. Ctr. for Civil Justice v. Ambush* ........................................................................................... 2-3
    794 F.Supp.2d 123 (D.D.C. 2011)

*Arctic Cat, Inc. v. Injection Research Specialist, Inc.* ..................................................................... 4
    210 F.R.D. 680 (D.Minn. 2002

*Banks v. Office of Senate Sergeant-At-Arms Doorkeeper* ............................................................... 6
    241 F.R.D. 370 (D.D.C. 2007)

*Bregman v. Dist. of Columbia* ........................................................................................................ 4
    182 F.R.D. 352 (D.D.C. 1998)

*Founding Church of Scientology of Washington, D.C., Inc. v. Webster* ........................................ 4
    802 F. 2d 1448 (D.C. Cir. 1986)

*In re Vitamins Antitrust Litigation* .................................................................................................. 6
    216 F.R.D. 168 (D.D.C. 2003)

*McKesson Corp. v. Islamic Republic of Iran* .................................................................................. 6
    185 F.R.D. 70 (D.D.C. 1999)

*New England Carpenters Health Benefits Fund v. First DataBank, Inc.* ....................................... 5
    242 F.R.D. 164 (D.Mass. 2007)

*Prosonic Corp. v. Stafford* ........................................................................................................... 5,7
    Civil Action No. 2:07-cv-0803, 2008 WL 2323528 (S.D.Ohio June 2, 2008)

*Robinson v. Quicken Loans, Inc.* ................................................................................................... 4
    Civil Action No. 3:12-cv-00981, 2013 WL 1776100  (S.D.W.V. Apr. 25, 2013)

*The Bank of New York v. Meridien BIAO Bank Tanzania Ltd.* ..................................................... 8
    171 F.R.D. 135 (N.D.N.Y. 1997)

*Turner v. Hudson Transit Lines, Inc.* ............................................................................................. 7
    142 F.R.D. 68 (S.D.N.Y. 1991)

*United States v. Taylor* ............................................................................................................................8
      166 F.R.D. 356 (M.D.N.C. 1996)

**Statutes & Rules**

28 U.S.C. § 636(b)(1)(A) ........................................................................................................................2

Fed.R.Civ.P. 26(d)(3) ............................................................................................................................3

Fed.R.Civ.P 72(a) ..................................................................................................................................2

LCvR 72.2(b) .........................................................................................................................................2

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| JAMES E. PIETRANGELO, II | ) Judge Dabney L. Friedrich |
| *Plaintiff,* | ) (Magistrate Judge Zia M. Faruqui) |
| | ) (for discovery only) |
| v. | ) |
| | ) Civil Action No. 1:18-cv-01943-DLF-ZMF |
| REFRESH CLUB, INC. (dba THE WING), and THE WING DC, LLC (dba THE WING aka THE WING DC) | ) |
| *Defendants.* | ) |

**PLAINTIFF'S OBJECTIONS TO MAGISTRATE JUDGE'S MEMORANDUM OPINION AND ACCOMPANYING ORDER DENYING PLAINTIFF'S MOTION TO COMPEL IN PART AND GRANTING DEFENDANTS' MOTION TO COMPEL IN PART**

Pursuant to Fed.R.Civ.P 72(a), Plaintiff James E. Pietrangelo, II ("Plaintiff") hereby submits the following objections to the Magistrate Judge's March 31, 2021 Memorandum Opinion ("Opinion") (ECF 64) and accompanying Order (ECF 63) (collectively, "ECF 64") denying Plaintiff's motion to compel in part and granting in part the motion to compel of Defendants Refresh Club, Inc. dba The Wing and The Wing DC, LLC' (collectively "The Wing").

**BACKGROUND AND PROCEDURAL HISTORY**

In August 2018, Plaintiff sued The Wing for sex/gender discrimination and discriminatory statements under the D.C. Human Rights Act. In July 2019, the Court opened fact discovery in the case, and the parties began propounding interrogatories and requests for production upon each other. Notably, while Plaintiff thereafter ultimately produced thousands of pages of documents to The Wing, The Wing itself did not produce a single document or page to Plaintiff—even with its initial disclosures—despite admitting that there were many documents in its possession that were discoverable and responsive to Plaintiff's requests. Plaintiff also noticed and eventually took a

1

Fed.R.Civ.P 30(b)(6) deposition of The Wing on September 11, 2019, in New York City, traveling many hours there from his home in New Hampshire and back.  Notably, The Wing only provided a single witness for that deposition, and she was not among those individuals identified by The Wing in its initial disclosures as having knowledge of the relevant facts.  The witness did not know the answers to many of Plaintiff's questions during the deposition, and also demonstrably falsely answered many of them.

Subsequently, after having reached an impasse over the deposition post-facto and some of each other's interrogatories and requests for production, the parties filed cross motions to compel.[1]  The Magistrate Judge last assigned to oversee discovery in the case ruled on the parties' motions on March 31, 2021.  Plaintiff now, while not objecting to the majority of the rulings in the decision, respectfully objects as follows.

## STANDARD OF REVIEW

"Any party may file written objections to a magistrate judge's ruling [on a non-dispositive pretrial matter] within 14 days after being served with the order of the magistrate judge, unless a different time is prescribed by the magistrate judge or the district judge." LCvR 72.2(b).  "The objections shall specifically designate the order or part thereof to which objection is made, and the basis for the objection." Ibid.  "Upon consideration of objections filed in accordance with this Rule, a district judge may modify or set aside any portion of a magistrate judge's order under this Rule found to be clearly erroneous or contrary to law." Ibid.  See, also, Fed.R.Civ.P 72(a); 28 U.S.C. § 636(b)(1)(A). "Under that deferential standard, a magistrate judge's factual findings or discretionary decisions must be affirmed unless, although there is evidence to support [them], the reviewing court

---

[1] Only to clarify the record, Plaintiff notes that, while the Magistrate Judge declared his motion to compel to be "in utter disregard of the page limits in this Court's Local Rules," ECF 64 at 7 fn. 2, the Court did at one point authorize or allow the enlarged brief, although that may not be apparent from the docket.  Nonetheless, Plaintiff appreciates the amount of valuable judicial time that such a lengthy brief would have entailed to review.  He also appreciates the Court's and the Magistrate Judge's generally excellently-written, well-reasoned, and concise opinions, the latter to which he will only briefly object as discussed herein.

on the entire evidence is left with the definite and firm conviction that a mistake has been committed." *Am. Ctr. for Civil Justice v. Ambush*, 794 F.Supp.2d 123, 129 (D.D.C. 2011) (internal quotation marks and citation omitted).

## I. PLAINTIFF'S DISCOVERY

### The Fed.R.Civ.P 30(b)(6) Deposition

The Magistrate Judge's Opinion denied Plaintiff a second Fed.R.Civ.P 30(b)(6) deposition of The Wing or any sanctions or remedies against The Wing for its constructive or effective failure to appear and produce at the first 30(b)(6) deposition. See ECF 64 at 7-8. The Opinion's basis for the denial is that "by choosing to conduct the corporate deposition at that early stage of discovery, after producing an overbroad notice, and without the aid of visual exhibits, Plaintiff chose to accept the limits of human memory capacity." Ibid. Moreover, "Plaintiff's unanswered questions are immaterial" and "interrogatories and requests for production have already or will answer the overarching question [of whether The Wing is a place of public accommodation]." Ibid. The denial here is clearly erroneous and contrary to law. The Magistrate Judge clearly ignored the law and facts on the issue, and unfairly penalized Plaintiff for exercising his rights under the law, while rewarding The Wing for violating the law.

The law is clear on Fed.R.Civ.P. 30(b)(6) depositions. Fed.R.Civ.P. 26(d)(3) states that "[u]nless the parties stipulate or the court orders otherwise . . . methods of discovery may be used in any sequence and discovery by one party does not require any other party to delay its discovery." Fed.R.Civ.P. 26(d)(3)(A) & (B). The Court, in opening factual discovery in July 2019, did not place a moratorium on Plaintiff's taking a Fed.R.Civ.P. 30(b)(6) deposition of The Wing. Moreover, the fact that The Wing had chosen to not yet compile/collect information and documents within its own possession and control in preparation for response to Plaintiff's discovery or in actually responding to Plaintiff's discovery—despite the case being more than a year old already—did not preclude Plaintiff from conducting a Fed.R.Civ.P. 30(b)(6) deposition of The Wing, either. Furthermore, as

3

Plaintiff also explained in his motion to compel, he had chosen to take a corporate deposition of The Wing earlier rather than later because The Wing had deliberately falsely denied some of the allegations in his complaint, including by using unreasonable semantics to avoid admitting them, and Plaintiff did not want to waste his time on extensive written discovery first only to be stymied by The Wing's use of linguistic gymnastics in their responses thereto as well. A deposition, Plaintiff believed, would allow Plaintiff to lock The Wing down to specific, straightforward answers. See *Founding Church of Scientology of Washington, D.C., Inc. v. Webster*, 802 F. 2d 1448, 1451 (D.C. Cir. 1986) ("Fed.R.Civ.P. 26(a) broadly authorizes parties to obtain discovery by various means, the first of which is 'depositions upon oral examination.'") ("Depositions thus rank high in the hierarchy of pre-trial, truth-finding mechanisms."). He also needed certain discovery from The Wing sooner rather than later in order to support a motion for preliminary injunction that he wanted to file. Thus, contrary to the Magistrate Judge's conclusion, Plaintiff's Fed.R.Civ.P. 30(b)(6) deposition of The Wing—held no less than two months after discovery opened, and no less than a year after suit was filed—did not obligate him to accept an unknowledgeable or limited-knowledge witness, and was not otherwise premature or unreasonable.

As Plaintiff also explained in his motion to compel, a defendant waives any objections—even stated—to an allegedly overbroad notice of 30(b)(6) deposition if the defendant does not move for a protective order against the deposition, and instead actually appears for the deposition via a corporate witness. See *Bregman v. Dist. of Columbia,* 182 F.R.D. 352, 355 (D.D.C. 1998) ("Confronted with a notice of [Fed.R.Civ.P. 30(b)(6)] deposition . . . a [corporation] must either comply with the discovery demand or seek a protective order under Fed. R.Civ.P. 26(c)."); *Robinson v. Quicken Loans, Inc.*, Civil Action No. 3:12-cv-00981, 2013 WL 1776100, * 5 (S.D.W.V. Apr. 25, 2013) ("When a corporation objects to a notice of Rule 30(b)(6) deposition, the proper procedure is to file a motion for protective order."); *Arctic Cat, Inc. v. Injection Research Specialist, Inc.*, 210 F.R.D. 680, 681, 684 (D.Minn. 2002) ("As already noted, the amended Notices were served on June 5, 2002, and, to

4

our knowledge, Arctic Cat made no other mention that it felt the areas designated for inquiry were vague or ambiguous and, more importantly, Arctic Cat did not move for a Protective Order to delimit the areas of inquiry. *** Arctic Cat's assertion, that the failure [of its designated deponent to provide substantive answers to the questions IRS posed] was preordained by the vagueness of the Deposition Notice, is mere makeweight. If, as Arctic Cat portends, the Deposition Notice caused it uncertainty as to the substance of intended inquiry, Arctic Cat was prepared to ride that uncertainty to a predictable conclusion—the inability of its designated deponent to reasonably respond to relevant questioning. Arctic Cat voiced no uncertainty to IRS, after IRS amended its Deposition Notice, about the intended scope of inquiry, nor did it seek the assistance of the Court in bringing further clarity to IRS's scope of questioning."); *Prosonic Corp. v. Stafford*, Civil Action No. 2:07-cv-0803, 2008 WL 2323528, * 7 (S.D.Ohio June 2, 2008) ("With respect to the issue of relevance, the Court notes first that Boart neither made written objection to the deposition notice nor moved for any type of protection from its scope prior to producing Mr. Knolle as a witness. *** Certainly, a party may not circumvent this rule simply by producing a witness without knowledge of the subjects believed to be irrelevant.") (citations omitted); *New England Carpenters Health Benefits Fund v. First DataBank, Inc.*, 242 F.R.D. 164, 165-66 (D.Mass. 2007) ("Unlike the procedure with respect to interrogatories, requests for production of documents and requests for admissions, there is no provision in the rules which provides for a [corporation] whose deposition is noticed to [simply] serve objections so as to be able to avoid providing the requested discovery until an order compelling discovery is issued.").

The prudential rule behind such black-letter law is conspicuously obvious: judicial efficiency, and fairness to the deposing party. A motion for protective order allows the Court to rule on the corporate defendant's objections *before* the deposition takes place, thereby preventing the plaintiff from taking the deposition in good faith only to have it quashed after the fact due to objections that could have been resolved beforehand with judicial intervention.

5

It is indisputable that The Wing did not move for a protective order against Plaintiff's September 11, 2019 Rule 30(b)(6) deposition. Therefore, The Wing clearly waived its objections to any overbreadth of the topics in Plaintiff's notice of deposition. Therefore, The Wing clearly was required to respond to the notice by providing enough knowledgeable witnesses at the deposition to completely answer questions from Plaintiff on all of the topics of the notice. See *Banks v. Office of Senate Sergeant-At-Arms Doorkeeper*, 241 F.R.D. 370, 373 (D.D.C. 2007) (Once a party names a private corporation as a deponent, "a series of duties fall on the responding corporation. First, the responding party must designate a deponent knowledgeable on the topic. Second, the responding party must designate multiple deponents if more than one is necessary to respond to all designated topics. [Third], the responding corporation must prepare the deponent so that he or she can testify on matters both within his or her personal knowledge as well as those reasonably known by the responding entity.") (internal quotation marks and citation omitted); *Alexander v. F.B.I.*, 186 F.R.D. 137, 152 (D.D.C. 1998) ("Fourth, the designating party has a duty to substitute an appropriate deponent when it becomes apparent that the previous deponent is unable to respond to certain relevant areas of inquiry."); *McKesson Corp. v. Islamic Republic of Iran*, 185 F.R.D. 70, 79 (D.D.C. 1999) ("If an entity's designated witness lacks sufficient knowledge or fails to adequately respond to the deposition requirements, the responding entity must designate additional witnesses capable of providing sufficient answers."); *In re Vitamins Antitrust Litigation*, 216 F.R.D. 168, 174 (D.D.C. 2003) (A corporation's "failure to educate its Rule 30(b)(6) witness with respect to . . . every one of the . . . deposition topics . . . [is] effectively [a] fail[ure] to appear for the purposes of Rule 37(d)[.]").

The Magistrate Judge's Opinion nonetheless excused the lack of complete knowledge of Plaintiff's topics, on the part of The Wing's sole corporate witness at The Wing's 30(b)(6) deposition, Diedre Nelson, on the basis that she "was not omniscient," and that Plaintiff had not provided her with "visual exhibits." ECF 64 at 7. However, that excuse allows The Wing to evade the very requirement of providing "multiple deponents if more than one is necessary to respond to

6

all designated topics" imposed by the Rule.  Moreover, as Plaintiff explained in his motion to compel, he himself never expected or demanded Ms. Nelson to be omniscient in the first place; rather, he expected, and explicitly asked Defendants' counsel long before the deposition, that The Wing designate as corporate witnesses for the deposition multiple Wing personnel knowledgeable in their respective corporate areas—including specifically, among others, The Wing's co-founder and COO, Lauren Kassan, as well as Bee Pollard, The Wing's Community Associate at its D.C. space who spoke with Plaintiff—so that no one witness would have to try to know everything and then fail in their memory or understanding of that knowledge. See ECF 28/44-1 at ¶¶ 4-7, 12; 28/44-2; 28/44-3.  The Wing simply literally rebuffed Plaintiff's request—Defendants' counsel in essence telling him to mind his own business as to whom The Wing designated as its corporate witness(es)—and went during the deposition, at its own peril, with a single witness, Ms. Nelson, The Wing's CFO, whom, again, The Wing had not even identified as a fact witness in its initial disclosures. See id. at Ex. 1 at ¶ 12; Ex. 14 at 8/12/19 9:34 AM Belelieu Email to Pietrangelo.  In other words, The Wing deliberately offered only the least knowledgeable person to try to learn all of the noticed topics in several days' time, and, predictably, she failed to learn them.  That was bad faith, on The Wing's part, to deliberately deny Plaintiff a knowledgable witness or witnesses—not bad memory on Ms. Nelson's part. See *Prosonic Corp.*, supra ("With respect to the issue of relevance, the Court notes first that Boart neither made written objection to the deposition notice nor moved for any type of protection from its scope prior to producing Mr. Knolle as a witness. *** Certainly, a party may not circumvent this rule simply by producing a witness without knowledge of the subjects believed to be irrelevant.") (citations omitted); *Alexander*, 186 F.R.D. at 152 ("Obviously, the purpose of a Rule 30(b)(6) deposition is to get answers on the subject matter described with reasonable particularity by the noticing party, not to simply get answers limited to what the deponent happens to know."); *Turner v. Hudson Transit Lines, Inc.*, 142 F.R.D. 68, 78-79 (S.D.N.Y. 1991) ("[A] party that fails to provide witnesses knowledgeable in the areas requested in a Rule 30(b)(6) notice is likewise subject

to sanctions."); *The Bank of New York v. Meridien BIAO Bank Tanzania Ltd.*, 171 F.R.D. 135, 151 (N.D.N.Y. 1997) ("Producing an unprepared witness is tantamount to a failure to appear.") (internal quotation marks and citation omitted); *United States v. Taylor*, 166 F.R.D. 356, 363 (M.D.N.C. 1996) ("[I]nadequate preparation of a Rule 30(b)(6) designee can be sanctioned based on the lack of good faith, prejudice to the opposing side, and disruption of the proceedings.").

As for the lack of visual aids to refresh Ms. Nelson's memory, the Magistrate Judge again clearly penalized Plaintiff for The Wing's own bad faith. Plaintiff had no duty during the deposition to provide The Wing's corporate witness via exhibits with the knowledge that she should have already possessed or been instilled with by The Wing before the deposition. Moreover, The Wing prior to the deposition had produced to Plaintiff no documents at all—not even ones they admitted were discoverable—concerning The Wing's own corporate activities and conduct. In addition, as Plaintiff also pointed out in his motion to compel, The Wing failed to produce any documents *at* the deposition in response to Plaintiff's duces tecum served upon it. Thus, because of The Wing's own bad faith, Plaintiff had no organic-corporate visual aids with which to refresh Ms. Nelson's memory during the corporate deposition when asking her about corresponding topics. Furthermore, as the Magistrate Judge apparently completely ignored or missed in Plaintiff's motion to compel as well, Ms. Nelson was so unknowledgeable/unprepared for the deposition that even when she was presented during it with Plaintiff's own documents concerning The Wing's corporate activities and conduct, she was not enlightened any, as the following colloquy between Plaintiff and Ms. Nelson during the deposition regarding The Wing's own description of itself as a "network of co-working spaces" demonstrates:

Q     Well, does Refresh Club, Incorporated hold itself out as a network of co-working spaces?
A     No.
Q     Does it in part hold itself out as a network of co-working spaces?
A     No.

(ECF 28-22 at p. 30 line 24 to p. 31 line 6)

8

MR. PIETRANGELO:  \*\*\* Chris, I have a thumb drive here with nine hundred or so premarked exhibits and the court reporter, John, has marked this as, the thumb drive as Exhibit 1. \*\*\*
I just wanted to show basically to refresh Ms. Nelson's memory.
MR. BELELIEU:  I mean, I never saw, I have a standing objection.  I never saw a witness look at a computer for exhibits instead of you physically showing her something. \*\*\* Can I ask also before you ask, have you produced all these to us already or no?
MR. PIETRANGELO:  Most of them, yes.
MR. BELELIEU:  Okay.
MR. PIETRANGELO:  This one I definitely did.

Q      This is an exhibit that's been premarked as 720.  This is a screen shot of part of The Wing's website on June 6th, 2018. Does that look familiar to you at all? I know this is just for purposes of refreshment, but do you see where it says "network of co-working spaces" to that effect?
A      Yes.
                                                           \*\*\*
Q      So didn't, on June 6, 2018, didn't The Wing's website state in part that The Wing is a network of co-working spaces?
                                                           \*\*\*
A      I don't know what the website looked like on June 4th, 2018.

(p. 51 line 19 to p. 54 line 6).

Visual aids simply would not have helped Ms. Nelson answer knowledgeably.

The Magistrate Judge's Opinion was also clearly mistaken in concluding that a second Rule 30(b)(6) deposition of The Wing was not proportional to the needs of the case, because "Plaintiff's unanswered questions are immaterial" and "interrogatories and requests for production have already or will answer the overarching question [of whether The Wing is a place of public accommodation]."  In his motion to compel, Plaintiff cited approximately 246 times when Ms. Nelson did not know the answer to a question during The Wing's 30(b)(6) deposition, 100 times when she was not certain about her answer during it, 14 times when she evaded answering a question during it, 44 times when she demonstrably falsely answered a question during it, and 2 times when she refused on non-privileged grounds to answer a question during it.  However, the Magistrate Judge in his Opinion did not explain which of those 406 or so specified questions he deemed "immaterial," or related to the "overarching issue" of The Wing's status as a place of public

9

accommodation[2] such that they could be covered by written discovery; instead, the Magistrate Judge simply refused to address the "unanswered questions" because of their numerosity, see ECF 64 at 7 fn. 2—thus penalizing Plaintiff for Ms. Nelson's excessive lack of knowledge in the first place.

The Magistrate Judge thus created an impossible situation for Plaintiff in trying to ultimately obtain the discovery at issue, and if anything, actually multiplied Plaintiff's discovery burden, and in turn the Court's.  Not only will Plaintiff have to spend countless hours trying to draft new interrogatories and requests for production (or requests for admission) to address the discovery at issue (i.e., some or all of the 406 or so questions), but he will then have to litigate those new interrogatories/requests if The Wing then objects to them or engages in unreasonable semantics in responding to them.  Even if The Wing does not object to them, Plaintiff will then have to wait months to get The Wing's responses to them—assuming the discovery period currently ending May 21, 2021, will even be extended.  And that doesn't take into account two other troublesome factors: Plaintiff is limited by Rule to 25 interrogatories to begin with, and he already propounded 6 interrogatories to The Wing, leaving him only 19 interrogatories for large swaths of information; and, as previously explained, The Wing does not answer/admit things in good faith, but prevaricates using unreasonable semantics—the very reason Plaintiff chose to lead with a 30(b)(6) deposition in the first place.  In effect, then, Plaintiff will be denied critical discovery altogether, because he otherwise has no 30(b)(6) deposition[3] to fall back on once he runs out of effective interrogatories. The Magistrate Judge also completely ignored the approximate 44 times that Ms. Nelson

---

[2] In fact, contrary to the Magistrate Judge's suggestion, many of the deposition questions at issue did not merely go to the issue of The Wing's status as a place of public accommodations. See ECF 28/44 at 12-29.  For example, as Plaintiff explained in his motion to compel, there were questions that went to res gestae, such as what Bee Pollard told Plaintiff when he called The Wing DC about his application.

[3] There is a separate deposition still due Plaintiff, though—which he has not waived—of The Wing's (former) CEO, Audrey Gelman.  The Wing and Ms. Gelman agreed (with consideration) in 2019 that Plaintiff could take her deposition in March 2020, which then did not take place due to the exigency of COVID-19.

demonstrably falsely answered a question and the 2 times she refused on non-privilege grounds to answer a question during the deposition. Ms. Nelson's conduct here per se amounted to discovery misconduct, and should have resulted in sanctions. Perjury especially used to be considered highly frowned-upon in federal court at one time.

In short, the Magistrate Judge effectively nullified Plaintiff's 30(b)(6) deposition of The Wing altogether—even though that deposition cost Plaintiff out of pocket approximately $2,500 (counting travel expenses and the cost of the transcript) and more than 50 hours of preparation and travel, and was fully within his rights to take under the Rules to begin with. Indeed, there may well be an adverse ripple effect for Plaintiff going forward in the case if the Court does not provide him a remedy for The Wing's conduct during its 30(b)(6) deposition. There will be further disputes between the parties over the content of The Wing's corporate answers or non-answers during that deposition, including because The Wing will likely attempt to disavow Ms. Nelson's answers therein, on the basis that the deposition was "premature." The Magistrate Judge has unknowingly created a perfect device by which The Wing can continue at will to lie about its underlying conduct in this case.

### RFPs 7 (Partnership Agreements), 41 (Personnel files of The Wing DC Community Associate Bee Pollard and the other Wing employee who spoke with Plaintiff on June 5, 2018)

The Magistrate Judge's Opinion also clearly erred by completely failing to address and implicitly denying several of Plaintiff's requests for production, see ECF 64 passim, including his RFP 7 concerning The Wing's partnership agreements with other corporations (which agreements, for the reasons stated in Plaintiff's motion to compel, go to The Wing's being a place of public accommodations rather than a private organization), and RFP 41 concerning the personnel files of the two employees of The Wing at The Wing DC with whom Plaintiff spoke on June 5, 2018—one of whom, Bee Pollard, told him that his application would be denied (by being permanently

11

deferred) because he is a man (which personnel files, for the reasons stated in Plaintiff's motion to compel, go to The Wing's pre-approval and/or ratification of Bee Pollard's statement).

### Scholarships (RFPs 11, 13, 15, 17)

The Magistrate Judge's Opinion also denied Plaintiff's requests for production concerning The Wing's scholarships. See ECF 64 at 12.  The Opinion's basis for that denial is that "[t]he details of scholarship recipients are irrelevant to Plaintiff's claim" because "given that no men were previously admitted as members, there can be no relevant discrimination in scholarship recipients among members relevant to Plaintiff's claim." Ibid.  The denial here is clearly erroneous.  The Magistrate Judge clearly missed the relevance of the scholarship information as stated in Plaintiff's motion to compel.  "Scholarships" to The Wing are basically nothing more than free memberships to The Wing to those recipients who cannot afford the fees.  Even though the free memberships are basically the same as the paid memberships in terms of privileges, the applications for the two are different.  Plaintiff seeks the scholarships records to further show that The Wing has, through its scholarship program, admitted women and non-binary people whose applications—by virtue of being different in content than regular applications, including on the issue/question of commitment to The Wing's mission—did not demonstrate a commitment to The Wing's mission, and yet the applicants were admitted anyway.  This goes to undermine The Wing's argument in this case that Plaintiff would not be/have been admitted as a member to The Wing anyway because his application allegedly did not demonstrate such a commitment.

### Discrimination in Hiring, Employment, and Third-Party Vendor (RFPs 27, 28, 34)

The Magistrate Judge's Opinion also denied Plaintiff's requests for production concerning The Wing's discrimination against men in hiring, employmenr, and third-party vendors. See ECF 64 at 12.  The Opinion's basis for that denial is that "evidence of exclusion of men in other aspects of the business would tend to show a pattern [of discrimination against men in membership,] but [The Wing] does not contest [discrimination against men in membership]." Ibid.  The denial here is

12

clearly erroneous.  The Magistrate Judge clearly missed the relevance of the collateral discrimination as stated in Plaintiff's motion to compel.  Not only does the collateral discrimination prove the primary discrimination, but it proves the egregiousness of The Wing's overall ill will towards men in maintaining their discriminatory policies/practices, and thus goes to punitive damages.

### Motion Costs

Plaintiff also objects for the record to the Magistrate Judge's Opinion's unsupported conclusion, in denying Plaintiff's motion costs, that "Plaintiff apparently refused to compromise on any of these points, forcing the Court to dictate the parameters through these motions." ECF 64 at 24.  This conclusion is clearly erroneous.  In discovery negotiations with The Wing's counsel over the course of months in 2019, Plaintiff offered compromises on most of his interrogatories/ requests for production.  Indeed, he further emphatically entreated The Wing's counsel to at least produce that sought-after information and those sought-after documents to which The Wing did not object, in the hopes that such initial provision would moot some of Plaintiff's discovery requests or parts thereof.  Defendants' counsel simply *refused* to comply.

## II. THE WING'S DISCOVERY

### Commitment to The Wing's Mission

The Magistrate Judge's Opinion granted The Wing's interrogatories/requests for production concerning Plaintiff's commitment to The Wing's mission. See ECF 64 at 13.  The Opinion's basis for that grant includes the assertion that "[i]t is undisputed that membership in The Wing is based solely on a review by its staff of the online application." Ibid.  The grant here is clearly erroneous. It is clearly *not* undisputed that membership in The Wing is based solely on a review by its staff of the online application.  As support for the assertion being undisputed, the Opinion cites only the testimony of Ms. Nelson from the 30(b)(6) deposition.  Nowhere does Plaintiff himself admit of such an assertion.  In fact, as Plaintiff explained in his motion to compel, there is evidence showing that some memberships to The Wing have been given out to individuals without them first

13

completing any application; Plaintiff even asked Ms. Nelson about that in the deposition. See ECF 28/44 at 58; Ex. 21 at 22:5-229:4, but, unsurprisingly, she was not sure about the answer.

The Magistrate Judge also clearly erred in incidentally stating, in granting The Wing's discovery here, that "Plaintiff is prejudiced against women and/or non-binary people" if discovery reveals that he "does not support The Wing's mission." ECF 64 at 14-15. That is a complete non-sequitur. Non-binary people are not even part of The Wing's stated mission, see infra. Moreover, even if—solely for argument's sake—it is accepted that Plaintiff does not support The Wing's mission, that does not mean that he is prejudiced against women or non-binary people.

The Magistrate's Opinion also clearly erred in ruling that Plaintiff must answer The Wing's RFP 12: "All documents and communications regarding statements Plaintiff has made, or positions Plaintiff has taken, regarding the professional, civic, social, and economic advancement of non-binary people or the position of non-binary people in society." ECF 64 at 16. The Opinion's overall basis for the ruling is that, "[a]s this Court has stated, Plaintiff's 'commitment to the defendants' mission is relevant to this case,'" and "[b]ecause The Wing's application specifically probed the applicant's commitment to the mission—and it was allegedly the basis for the Plaintiff's rejection—such subject is discoverable." Id. at 13. However, indisputably, The Wing's stated mission is "the professional, civic, social and economic advancement of women." See ECF 28/44 at Ex. 21 at 28:14-18; ECF 64 at 1, 2 ("Defendants' mission is the 'professional, civic, social, and economic advancement of women'"). The mission statement does not include non-binary people. Therefore, Plaintiff's commitment to them is irrelevant.

For all of the foregoing reasons, Plaintiff asks the Court to sustain Plaintiff's objections, and to modify the Magistrate Judge's Opinion and Order accordingly; to order the Magistrate Judge to rule on Plaintiff's RFPs 7 and 41 (and in Plaintiff's favor); to order relief for Plaintiff with respect to the 30(b)(6) deposition; to order The Wing to produce in response to Plaintiff's RFPs 11, 13, 15, 17, 27, 28, and 34; and to order that Plaintiff need not respond to The Wing's RFP 12.

Dated: April 14, 2021                    Respectfully submitted,

/s/ James E. Pietrangelo, II
_____
JAMES E. PIETRANGELO, II, Pro Se
120 North-South Rd. Unit C, PMB # 167
North Conway, NH 03860
(603) 662-2224