UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

JAMES E. PIETRANGELO, II,

    *Plaintiff*,

v.

REFRESH CLUB, INC., *et al.*,

    *Defendants.*

No. 18-cv-1943 (DLF/ZMF)

## MEMORANDUM OPINION AND ORDER

Plaintiff James E. Pietrangelo, II, proceeding *pro se*, brings this action against Refresh Club, Inc. and The Wing DC, LLC (collectively, The Wing), seeking monetary, injunctive, and declaratory relief for alleged violations of the D.C. Human Rights Act of 1977 (DCHRA), D.C. Code §§ 2–1401.01, *et seq*. *See* Dkt. 1. On January 14, 2020, this Court referred all discovery-related matters in this case to a magistrate judge pursuant to Local Rule 72.2. *See* Min. Order of Jan. 14, 2020. Thereafter, both Pietrangelo and The Wing filed motions to compel discovery. *See* Dkt. 44 (renewing Pl.'s Mot. to Compel, Dkt. 28); Defs.' Mot. to Compel, Dkt. 45. On March 31, 2021, Magistrate Judge Zia M. Faruqui granted both motions in part and denied both in part in a thorough and well-reasoned 24-page opinion.[1] *See* Mem. Op. of Mar. 31, 2021 ("Mag. J.'s Mem. Op."), Dkt. 64.

On April 14, 2021, Pietrangelo filed objections to Judge Faruqui's ruling pursuant to Local Rule 72.2(b). *See* Pl.'s Objs. to Magistrate Judge's Mem. Op. and Accompanying Order

---

[1] The Court need not review the background of this case, which is set forth in detail in Judge Faruqui's Memorandum Opinion, Dkt. 64, and this Court's Memorandum Opinion of June 4, 2019, Dkt. 24.

("Pl.'s Objs."), Dkt. 65.  For the reasons that follow, the Court will affirm Judge Faruqui's ruling in its entirety.

## I. LEGAL STANDARD

Rule 72(a) of the Federal Rules of Civil Procedure and Local Rule 72.2 permit a party to seek reconsideration of a magistrate judge's rulings in a discovery dispute.  *See Neuder v. Battelle Pac. Nw. Nat'l Lab.*, 194 F.R.D. 289, 292 (D.D.C. 2000).  "When the district court reviews a Magistrate Judge's ruling on a non-dispositive matter like a discovery ruling, the Magistrate Judge's decision is entitled to great deference."  *Haughton v. District of Columbia*, 161 F. Supp. 3d 100, 102 (D.D.C. 2014) (internal quotation marks omitted).  The magistrate judge's decision "will be upheld unless found to be clearly erroneous or contrary to law." *Neuder*, 194 F.R.D. at 292 (internal quotation marks omitted); *see* LCvR 72.2(c).  "Under that deferential standard, a magistrate judge's factual findings or discretionary decisions must be affirmed unless, although there is evidence to support them, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." *Am. Ctr. for Civ. Just. v. Ambush*, 794 F. Supp. 2d 123, 129 (D.D.C. 2011) (internal quotation marks and alteration omitted).

## II. ANALYSIS

Pietrangelo contends that Judge Faruqui erred in: (1) denying Pietrangelo's request for a second Federal Rule of Civil Procedure 30(b)(6) deposition of The Wing, *see* Pl.'s Objs. at 3–11; (2) denying certain requests for production of documents, *id.* at 11–13; (3) declining to award Pietrangelo reasonable costs associated with filing his motion to compel, *see id.* at 13; and (4) granting "The Wing's interrogatories/requests for production concerning [Pietrangelo's] commitment to The Wing's mission," *id.* at 13–14.

      **A.**     **Rule 30(b)(6) Deposition**

Pietrangelo's first objection concerns Judge Faruqui's denial of a second deposition of The Wing pursuant to Rule 30(b)(6).  *See* Pl.'s Objs. at 3–11.

"Rule 30(b)(6) provides that persons designated to represent a corporation 'shall testify as to matters known or reasonably available to the organization.'"  *In re Vitamins Antitrust Litig.*, 216 F.R.D. 168, 172 (D.D.C. 2003) (quoting Fed. R. Civ. P. 30(b)(6)).  This rule "ultimately puts certain burdens on both parties."  *Alexander v. F.B.I.*, 186 F.R.D. 137, 139 (D.D.C. 1998).  The noticing party "must describe with reasonable particularity the matters for examination."  Fed. R. Civ. P. 30(b)(6).  "Once a requesting party describes with reasonable particularity the matters on which examination is requested, a series of duties fall on the responding corporation."  *Banks v. Off. of the Senate Sergeant-At-Arms*, 241 F.R.D. 370, 373 (D.D.C. 2007).  More specifically, "a corporation must: (1) designate a deponent knowledgeable on the topic; (2) designate multiple deponents if more than one is necessary to respond to all designated topics; and (3) prepare the deponent so that he or she can testify on matters both within his or her personal knowledge as well as those reasonably known by the responding entity."  *Covad Commc'ns. Co. v. Revonet, Inc.*, 267 F.R.D. 14, 25 (D.D.C. 2010) (internal quotation marks omitted).  "Deponents under Rule 30(b)(6) must be prepared and knowledgeable, but they need not be subjected to a memory contest."  *Alexander*, 186 F.R.D. at 143 (internal quotation marks omitted).  Accordingly, their lack of knowledge must be "significant, conscious, and material" to a party's discovery to be found inadequate.  *See In re Vitamins Antitrust Litig.*, 216 F.R.D. at 173; *see also Costa v. Cty. of Burlington*, 254 F.R.D. 187, 190 (D.N.J. 2008) ("Simply because defendant's witness could not answer every question posed to him does not equate to the fact that defendant did not satisfy its obligation to prepare its 30(b)(6) witness.").

While The Wing's designated deponent, Deidra Nelson, "lacked knowledge in certain areas, she was well informed in most of the areas of inquiry that [Pietrangelo] pursued with her," *see Covad Commc'ns.*, 267 F.R.D. at 25, as evidenced by her robust answers to Pietrangelo's detailed questions on a wide array of topics, *see, e.g.*, Pl.'s Mot. to Compel, Ex. 22 at 6:3–12:8 (The Wing's corporate structure), Dkt. 28-22; *id.* at 14:3–18:21, 20:19–24:12 (The Wing's valuation, investment rounds, and profits); *id.* at 27:6–30:9, 38:4–42:11, 268:15–21 (The Wing's board and personnel); *id.* at 57:2–81:2 (amenities offered to members of The Wing); *id.* at 174:2–189:9 (The Wing's application process for membership).

Pietrangelo stresses, however, that there were roughly 300 questions that Nelson was unable to answer over the course of her six-hour deposition. *See* Pl.'s Objs. at 9; Mag. J. Mem. Op. at 6. But that does not necessarily mean that The Wing "did not satisfy its obligation to prepare its 30(b)(6) witness," *Costa*, 254 F.R.D. at 190, particularly in light of the "thirty cavernous" topics Pietrangelo "demanded The Wing address" in the deposition, Mag. J. Mem. Op. at 6.

While Pietrangelo contends that The Wing "waived its objections to any overbreadth of the[se] topics" by failing to move for a protective order in advance of the deposition, *see* Pl.'s Objs. at 6, The Wing repeatedly warned Pietrangelo that the noticed topics were too broad to be covered effectively, *see, e.g.*, Dkt. 28-14 at 2; Pl.'s Mot. to Compel, Ex. 22 at 252:15–18; *see also Covad Commc'ns Co.*, 267 F.R.D. at 25 (declining to award sanctions where deposing party "pushed forward with the deposition" after being warned that the "noticed topics could [not] be covered effectively" and then "feign[ed] surprise when [the deponent] was not knowledgeable on all forty-two topics"). As such, Judge Faruqui correctly concluded that Pietrangelo "chose to accept the limits of human memory capacity." Mag. J. Mem. Op. at 7. To be sure, The Wing

4

has a duty to "designate multiple deponents if more than one is necessary," *Banks*, 241 F.R.D. at 373, and Pietrangelo is therefore entitled to receive responses to some of his unanswered questions, *see Alexander*, 186 F.R.D. at 142.  But, like Judge Faruqui, "the Court does not believe that the importance or number of these unanswered questions warrants entirely new depositions,"[2] *id.*, as "'interrogatories and requests for production' have already [answered] or will answer" the most critical questions in this case, Mag. J. Mem. Op. at 7–8 (quoting *Alexander*, 186 F.R.D. at 142–43).

In sum, Nelson's lack of knowledge was not "significant, conscious, and material" to Pietrangelo's discovery.  *In re Vitamins Antitrust Litig.*, 216 F.R.D. at 173.  Accordingly, the denial of Pietrangelo's request for a second Rule 30(b)(6) deposition was not clearly erroneous.

**B.     Requests for Production**

Next, Pietrangelo objects to the denial of various requests for production on the grounds that they were irrelevant.  *See* Pl.'s Objs. at 11–13.  These requests can be grouped into two categories.

The first set of requests relates to The Wing's scholarships.  Although Pietrangelo himself did not apply to The Wing as a scholarship applicant, *see generally* Compl., he nonetheless asserts that his requests regarding the Wing's scholarship program are relevant

---

[2] Pietrangelo contends that Judge Faruqui should have specifically addressed each of the unanswered questions that he cited in his sixty-nine page motion to compel.  *See* Pl.'s Objs. at 9–10.  He is mistaken.  "[A]n analysis of the relevance of each and every unanswered question at [the] deposition . . . [wa]s not necessitated by the motions before the Court," *Alexander*, 186 F.R.D. at 142, as a significant number of these questions were clearly immaterial, *see, e.g.*, Pl.'s Mot. to Compel, Ex. 22 at 84:20–21 (whether any of The Wing's cafes serve steak); *id.* at 119:11–12 (which shipping carrier The Wing uses to ship retail merchandise purchased online); *id.* at 82:3–4 (whether The Wing's magazine included cross-word puzzles), and other discovery has "already [answered] or will answer the overarching question," Mag. J. Mem. Op. at 7–8 (citing *Alexander*, 186 F.R.D. at 142–43).

5

because scholarship applicants did not have to demonstrate on their application form a commitment to The Wing's mission. Pl.'s Objs. at 12.

Documents relating to The Wing's scholarship application process are of marginal relevance here as that process was different than the one used for regular members. *See* Pl.'s Objs. at 12. Simply because scholarship applicants were not required to show a commitment to The Wing's mission on the scholarship application form does not, by itself, mean that The Wing did not use other methods to vet scholarship applicants and to determine their level of commitment to its mission. Moreover, The Wing has agreed to disclose, among other things, the applications for its regular memberships, lists of regular applicants, and lists of its members, which will include both regular and scholarship members. *See* Mag. J. Mem. Op. at 10; *see also* Pl.'s Reply at 6 (noting "scholarship recipients ultimately became members of the Wing"). While Pietrangelo can explore the details of the scholarship application process through interrogatories, requiring The Wing to provide *all* documentation for successful and unsuccessful scholarship applicants alike is simply not "proportional to the needs of the case." Fed. R. Civ. P. 26(b)(1). Judge Faruqui's decision to deny Pietrangelo's requests for lists of scholarship applicants and awardees as well as all scholarship applications and documents, *see* Pl.'s Mot. to Compel at 57–60, was not clearly erroneous, *see Food Lion, Inc. v. United Food & Com. Workers Int'l Union*, 103 F.3d 1007, 1012 (D.C. Cir. 1997) (noting courts retain "considerable discretion in handling discovery matters").

The second set of requests concerns The Wing's practices with respect to hiring, employment, partnerships, and third-party vendors. Focusing on discrimination against men in these areas,[3] *see* Mag. J. Mem. Op. at 12, Pietrangelo contends that these requests establish

---

[3] Separately, Pietrangelo seeks the personnel files of the employees of The Wing who spoke with him the day after he submitted an application for membership. *See* Pl.'s Objs., at 11; Pl.'s Mot.

"collateral discrimination" that is relevant to his claims in that "it prove[s] the primary discrimination" and "proves the egregiousness of The Wing's overall ill will towards men in maintaining their discriminatory policies/practices[.]"  Pl.'s Objs. at 6.  But given that The Wing does not dispute the "exclusion of men in membership," Mag. J. Mem. Op. at 12, this collateral discrimination is of tenuous relevance, and the denial of these requests also was not clearly erroneous.

### C. Motion Costs

Pietrangelo also objects to the denial of his request for the reasonable costs associated with filing his motion to compel.  *See* Pl.'s Objs. at 13.

Rule 37(a)(5)(C) of the Federal Rules of Civil Procedure provides that when a motion to compel "is granted in part and denied in part" the Court "may, after giving an opportunity to be heard, apportion the reasonable expenses for the motion."  Fed. R. Civ P. 37(a)(5)(C).  However, "the court must not order this payment if: (i) the movant filed the motion before attempting in good faith to obtain the disclosure or discovery without court action; (ii) the opposing party's nondisclosure, response, or objection was substantially justified; or (iii) other circumstances make an award of expenses unjust."  Fed. R. Civ P. 37(a)(5)(A); *see also Stephenson v. Pfizer Inc.,* No. 13-cv-147, 2014 WL 3385213, at *2 (M.D.N.C. July 9, 2014) ("Rule 37(a)(5)(C) effectively incorporates the substantive standards of Rule 37(a)(5)(A), in that expenses of a

---

to Compel at 67.  It was not clear error to deny this request.  *See* Mag. J. Mem. Op. at 12.  Pietrangelo contends that these files could "show[] whether the two employees were disciplined in any way for what they told [Pietrangelo]."  Pl.'s Mot. to Compel at 67.  But whatever relevance these files might have, their production is not "proportional to the needs of the case", Fed. R. Civ. P. 26(b)(1), given that interrogatories provide a less intrusive means of obtaining this information, *see Prasad v. George Washington Univ.*, 323 F.R.D. 88, 91 (D.D.C. 2017) (noting that Rule 26 was amended "to emphasize the need for proportionality in discovery and to 'encourage judges to be more aggressive in identifying and discouraging discovery overuse.'") (quoting Fed. R. Civ. P. 26(b)(1) advisory committee's note to 2015 amendment).

discovery motion may be imposed upon a party ordered to produce discovery where that party's conduct necessitated the motion unless the nondisclosure or objection was substantially justified or other circumstances make an award of expenses unjust." (internal citation and quotation marks omitted)).

The Court agrees with Judge Faruqui that an award of costs is not appropriate here. Pietrangelo failed to offer any substantive argument in relation to this request. *See* Mag. J.'s Mem. Op. at 24; *see also* Pl.'s Mot. to Compel at 43–44. The Wing was also "substantially justified" in its objections to Pietrangelo's requested disclosures, Fed. R. Civ P. 37(a)(5)(A), as evidenced by the fact that some of its requested parameters on the discovery Pietrangelo sought were ultimately granted, *see Cobell v. Norton*, 226 F.R.D. 67, 90–91 (D.D.C. 2005) ("[A] party meets the substantially justified standard when there is a genuine dispute or if reasonable people could differ as to the appropriateness of the motion") (internal quotation marks omitted)).

### D.   Commitment to The Wing's Mission

That leaves Pietrangelo's objections regarding the discovery that Judge Faruqui ruled The Wing could obtain. More specifically, Pietrangelo asserts that it was clear error to grant "The Wing's interrogatories/requests for production concerning [his] commitment to The Wing's mission." Pl.'s Objs. at 13. He also objects to the "ruling that [he] must answer the Wing's RFP 12" which seeks "[a]ll documents and communications regarding statements Plaintiff has made, or positions Plaintiff has taken, regarding the professional, civic, social, and economic advancement of nonbinary people or the position of non-binary people in society." Pl.'s Objs. at 14. Pietrangelo contends this information is not relevant because "there is evidence showing that *some* memberships to the Wing have been given out to individuals without them first completing any application." Pl.'s Objs. at 13–14 (emphasis added).

When it comes to discovery, "[r]elevance is construed broadly." *Breiterman v. U.S. Capitol Police*, 324 F.R.D. 24, 30 (D.D.C. 2018) (internal quotation marks omitted). Whether The Wing's asserted defense "ultimately will be persuasive . . . as a matter of law or fact is a separate issue." *Ted Cruz for Senate v. Fed. Election Comm'n*, 451 F. Supp. 3d 92, 99 (D.D.C. 2020); *see also Alexander v. F.B.I.*, 194 F.R.D. 316, 326 (D.D.C. 2000) ("Discovery is not to be denied because it relates to a claim or defense that is being challenged as insufficient.") (internal quotation marks and alteration omitted)).

It is undisputed that Pietrangelo submitted an online application to become a member at The Wing's Washington, D.C. location, *see* Compl. ¶¶ 18–19, 28, and that this application contained multiple questions regarding the applicant's commitment to The Wing's mission, *id.* ¶ 11(1)(ll). Moreover, one of The Wing's substantive defenses in this case is that Pietrangelo's application "was denied because he failed to demonstrate a commitment to The Wing's mission and values." Defs.' Mot. to Compel at 3. The materials The Wing requests regarding Pietrangelo's commitment to The Wing's mission "bear[] on . . . [or] reasonably could lead to other matter that could bear on any party's claim or defense." *United States ex rel. Shamesh v. CA, Inc.*, 314 F.R.D. 1, 8 (D.D.C. 2016) (internal quotation marks omitted). This is particularly true given that Pietrangelo seeks "injunctions requiring Defendants to grant Plaintiff membership in The Wing." Compl. at 30; *see also* Mag. J.'s Mem. Op. at 14–15 (explaining that, because commitment to The Wing's mission is now a prerequisite for membership, "[i]f discovery reveals that [Pietrangelo] is prejudiced against women and/or non-binary people . . . the Court arguably could not in equity place him there"). Judge Faruqui therefore did not err in granting these requests.

Accordingly, it is

9

**ORDERED** that Judge Faruqui's March 31, 2021 Memorandum Opinion, Dkt. 64, and Order, Dkt. 63, are **AFFIRMED** in their entirety.

May 26, 2021

_____
DABNEY L. FRIEDRICH
United States District Judge