UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

JAMES E. PIETRANGELO II,

     Plaintiff,

        v.

REFRESH CLUB, INC. (DBA THE WING) *et al.*,

     Defendants.

No. 18-cv-1943-DLF-ZMF

<u>MEMORANDUM OPINION</u>

Now before the Court is Plaintiff James E. Pietrangelo II's second motion to compel answers to interrogatories.  Upon consideration of the motion, the responsive briefing, and the entire record herein, the Court will GRANT in part and DENY in part Plaintiff's motion for the reasons set forth below.

## I.    BACKGROUND

This case arises from Plaintiff's claims against Defendants Refresh Club, Inc. and The Wing DC, LLC (collectively, "Defendants" or "The Wing") for sex-discrimination and/or gender-identity-discrimination in violation of the D.C. Human Rights Act of 1977 ("DCHRA"), D.C. Code § 2-1401.01 *et seq.  See* Compl., ECF No. 1, ¶ 1.

Defendants operated a network of co-working and community spaces committed to the advancement of women in society.[1]  *See id.* ¶ 6.  On June 4, 2018, Plaintiff applied for membership at Defendant's Washington, D.C. location.  *See id.* ¶¶ 18–19.  Defendants' standard application

---

[1] On or about August 30, 2022, The Wing announced it was closing its six locations permanently, effective immediately.  *See* Pl.'s Emergency Mot. for TRO, ECF No. 109, ¶ 10.

requested the applicant's basic personal details, how the applicant supported women, and what the applicant saw as the biggest challenge facing women at that time.  *See id.* ¶ 11(ll).  Plaintiff responded, "I have always supported and advocated for equality for all people" and, "The same challenges facing men," respectively.  Defs.' Mot. to Dismiss, Ex. A.  The day after submitting his application, Plaintiff called The Wing to review his application status.  *See* Compl. ¶ 21.  Two Wing employees explained that The Wing had permanently deferred Plaintiff's application because Plaintiff was a man.  *See id.*  Plaintiff's central claim is that, as a "place of public accommodation" under the DCHRA, The Wing cannot restrict membership on the basis of sex or gender identity, or on one's commitment to a particular philosophy that promotes discrimination on those prohibited bases.  *See id.* ¶¶ 10–13.

On January 14, 2020, Judge Friedrich referred all discovery matters in this case to the undersigned pursuant to Local Rule 72.2.  *See* Min. Order (Jan. 14, 2020).  On March 31, 2021, the undersigned ruled on Plaintiff's and Defendant's motions to compel discovery.  *See Pietrangelo v. Refresh Club, Inc.* (*Pietrangelo I*), No. 18-cv-1943, 2021 WL 1209300, at *1 (D.D.C. Mar. 31, 2021), *aff'd*, 2021 WL 2156504 (D.D.C. May 26, 2021).  Plaintiff served Defendants with a second set of interrogatories (Interrogs. 7–14) on July 7, 2021; a third set (Interrogs. 15–18) on July 25, 2021; and a fourth set (Interrogs. 19–25) on August 2, 2021.  *See* Pl.'s 2d Mot. to Compel, ECF No. 86, at 2.  Defendants served their responses on August 6, August 25, and September 3, 2021, respectively.  *See id.*  The parties twice conferred to resolve outstanding discovery disputes.  *See* Pl.'s Mot. at 1–2.  On December 20, 2021, Defendants served supplemental responses to Plaintiff's second and fourth set of interrogatories.  *See id.*, Exs. 2, 4.

On December 24, 2021, Plaintiff moved to compel answers to his second and fourth sets of interrogatories.  *See id.*, Exs. 1–2.  On January 21, 2022, Defendants filed their opposition to

Plaintiff's Motion.  *See* Defs.' Opp., ECF No. 91.  On January 22, 2022, Plaintiff filed his Reply. *See* Pl.'s Reply, ECF No. 92.

## II.    LEGAL STANDARD

### A.    Motion to Compel

All discovery must be "relevant to any party's claim or defense and proportional to the needs of the case."  Fed. R. Civ. P. 26(b)(1).  Relevant information "need not be admissible in evidence to be discoverable."  *Id.*  Relevance "encompass[es] any matter that bears on, or that reasonably could lead to other matter that could bear on any party's claim or defense."  *United States ex. rel. Shamesh v. CA, Inc.*, 314 F.R.D. 1, 8 (D.D.C. 2016) (quoting *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351 (1978)) (internal quotation marks omitted).  The requested discovery material must have "some probable effect on the organization and presentation of the moving party's case."  *Jewish War Veterans of the U.S., Inc. v. Gates*, 506 F. Supp. 2d 30, 42 (D.D.C. 2007) (quoting *Smith v. Schlesinger*, 513 F.2d 462, 473 (D.C. Cir. 1975)).  When in doubt, "'relevance' for discovery purposes is broadly construed."  *Food Lion, Inc. v. United Food & Com. Workers Int'l Union*, 103 F.3d 1007, 1012 (D.C. Cir. 1997).  "This broad interpretation of relevance advances Rule 26's liberal and expansive purpose of permitting the parties to develop the facts, theories, and defenses of the case."  *Ted Cruz for Senate v. Fed. Election Comm'n*, 451 F. Supp. 3d 92, 98 (D.D.C. 2020) (cleaned up).

A party seeking discovery may move for an order to compel if: (i) "a deponent fails to answer a question," (ii) "a party fails to answer an interrogatory, or (iii) "a party fails to produce documents."  Fed. R. Civ. P. 37(a)(3)(B).  As a threshold matter, the movant "bears the initial burden of explaining how the requested information is relevant."  *Gates*, 506 F. Supp. 2d at 42. When the "opposing party has answered the movant's requests, the movant has the burden of

showing that the opposing party's responses are incomplete." *Porter v. Sebelius*, No. 11-cv-1546, 2014 WL 12768504, at *2 (D.D.C. Apr. 8, 2014). "When the opposing party refuses to respond to a discovery request, the burden shifts to the opposing party to show that the movant's request is burdensome, overly broad, vague or outside the scope of discovery." *United States v. Kellogg Brown & Root Servs., Inc.*, 284 F.R.D. 22, 27 (D.D.C. 2012) (citing *Chubb Integrated Sys. Ltd. v. Nat'l Bank of Washington*, 103 F.R.D. 52, 59–60 (D.D.C. 1984)).

> [T]he court must restrict the extent of discovery otherwise allowed if it determines that:
>
>> (i) the discovery sought is unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive; (ii) the party seeking discovery has had ample opportunity to obtain the information by discovery in the action; or (iii) the proposed discovery is outside the scope permitted by Rule 26(b)(1).

Fed. R. Civ. P. 26(b)(2)(C). "[T]he proper scope of discovery in any case is a function of the nature of that case." *Waters v. U.S. Capitol Police Bd.*, 216 F.R.D. 153, 159 (D.D.C. 2003). Judges "have considerable discretion" over discovery matters, which "is reviewable only for an abuse of discretion." *Shamesh*, 314 F.R.D. at 9 (quoting *Food Lion*, 103 F.3d at 1012).

B.    D.C. Human Rights Act

"The elements of Plaintiff's cause of action guide the discovery analysis." *Pietrangelo I*, 2021 WL 1209300, at *3. As relevant to Plaintiff's claims, the DCHRA makes it unlawful to "wholly or partially for a discriminatory reason based on the actual or perceived . . . sex . . . gender identity or expression . . . of any individual: to deny, directly or indirectly, any person the full and equal enjoyment of the goods, services, facilities, privileges, advantages, and accommodations of any place of public accommodations." D.C. Code § 2–1402.31(a)(1).

4

1.   *Discrimination*

Whether a defendant acted "wholly or partially for a discriminatory reason" is determined by a Title VII analysis:

> [T]he plaintiff must first prove by a preponderance of the evidence a prima facie case of discrimination, which 'raises a presumption that the defendant's action, if otherwise unexplained, was more likely than not based on a consideration of impermissible factors.' The burden then shifts to the defendant to raise a genuine issue of fact as to whether he discriminated against plaintiff, by showing a 'legitimate, nondiscriminatory reason' for his actions.   Finally, plaintiff must show that the defendant's proffered reason was a pretext 'either directly by persuading the court that a discriminatory reason more likely motivated the defendant or indirectly by showing that the defendant's proffered explanation is unworthy of credence.'

*See Sumes v. Andres*, 938 F. Supp. 9, 12–13 (D.D.C. 1996) (quoting *RAP, Inc. v. D.C. Comm'n on Human Rights*, 485 A.2d 173, 176 (D.C. 1984)) (internal citations omitted).

The Effects Clause of the DCHRA adds that "[a]ny practice which has the effect or consequence of violating any of the provisions of this chapter shall be deemed to be an unlawful discriminatory practice."   D.C. Code § 2–1402.68.   Thus, "despite the absence of any intention to discriminate, practices are unlawful if they bear disproportionately on a protected class and are not independently justified for some nondiscriminatory reason."   *Gay Rights Coalition of Georgetown Univ. L. Ctr. v. Georgetown Univ.*, 536 A.2d 1, 29 (D.C. 1987).   A plaintiff can proffer evidence of both discriminatory effect and discriminatory intent to satisfy the burden of proof.   *See id.*; *see also Mitchell v. DCX, Inc.*, 274 F. Supp. 2d 33, 49 (D.D.C. 2003) (finding liability based on evidence of discriminatory impact where the taxi company was "significantly less likely to pick up a person requesting services from Anacostia than it [was] to pick up a person requesting service from another part of the city.").

2. *Place of public accommodation*

On December 3, 2021, Defendants stipulated to the finding that The Wing met each element of a place of public accommodation pursuant to D.C. Code § 2-1401.02(24) at the time of the alleged discrimination. *See* Defs.' Opp., Ex. A.

## III.   ANALYSIS

An interrogatory may relate to any material discoverable under Rule 26(b). Fed. R. Civ. P. 33(a)(2). A party to whom an interrogatory is propounded "must provide true, explicit, responsive, complete, and candid answers." *Equal Rights Center v. Post Properties, Inc.*, 246 F.R.D. 29, 32 (D.D.C. 2007).

A.   <u>Second Set of Interrogatories</u>

Plaintiff alleges that "Defendants objected to and refused to answer, or failed to fully answer" interrogatories 9 through 14. *See* Pl.'s Second Mot. to Compel at 4.

1. *Interrogatory 9*

Interrogatory 9 asked Defendants to "[p]lease explain the nature of, and process by which The Wing granted/gave, any 'corporate' memberships." Defs.' Objs. & Ans. to Pl.'s 2d Set of Interrogs., ECF No. 86-1, at 5 [hereinafter Ans. to 2d Set]. Defendants objected to Interrogatory 9 in their original response, *see id.* at 5–6, and it as follows in their supplemental response:

> The Wing requires individuals who obtained a membership to The Wing via their employer to submit an online application similar to all individuals applying for membership at The Wing. Answering further, other than offering bulk memberships to employers at a discount rate, the application process for individuals who apply for a membership at their employers' discounted rate is the same as the application process for individuals who apply for a membership via The Wing's website.

Defs.' Objs. & Suppl. Ans. to Pl.'s 2d Set of Interrogs. at 5–6, ECF No. 86-3 [hereinafter Suppl. Ans. to 2d Set].

Defendants stated that they provided a "complete and honest" response to Interrogatory 9. *See* Defs.' Opp. at 6. That the "application process" was the same for both sets of applicants answered Interrogatory 9. "Plaintiff[] offers no reason to suspect Defendants' response . . . is anything less than truthful." *Gevas v. Dunlop*, No. 18-cv-6556, 2020 WL 814875, at *2 (N.D. Ill. Feb. 19, 2020); *see also Citizens For Resp. & Ethics in Washington v. Leavitt*, No. 08-cv-0576, 2008 WL 4356935, at *6 (D.D.C. Sept. 22, 2008) (additional discovery not permitted where, plaintiff offered no reason to doubt person's veracity) (citation omitted).

Defendants need only "provide true, explicit, responsive, complete, and candid answers," *Equal Rights*, 246 F.R.D. at 32, not be robotically perfect in every word they utter. Yet Plaintiff argues that Defendants introduced ambiguity by describing the corporate and standard application processes as both "similar" and "the same." Pl.'s Mot. at 6. This ignores that that Defendants introduced their answer by stating the online application was "similar," but then "answered further"—i.e., clarified—that "similar" meant the "same." Suppl. Ans. to 2d Set. at 5. To compel Defendants to repeat that the applications are the same would be "duplicative." Fed. R. Civ. P. 26(b)(2)(C)(i).

The major dispute in this case is whether the Wing used the application for prospective members to ensure a commitment to The Wing's mission or if it was a pretext for denying admission to male applicants. Whether corporate membership applications were different "adds little relevant information to Plaintiff's case [especially given that] it is undisputed that The Wing did not admit men before Plaintiff's complaint." *Pietrangelo I*, 2021 WL 1209300, at *6.[2] Accordingly, this Court denies Plaintiff's request to compel as to Interrogatory 9.

---

[2] Plaintiff also claims that Defendants' supplemental answer failed to address the following questions: (i) "How exactly did/does a particular corporation receive an offer of bulk memberships and what was/is the offer?"; (ii) "How exactly did/does an employee of that corporation take

2.      *Interrogatory 10*

Similarly, Interrogatory 10 asked Defendants to "[p]lease identify, by corporate name and membership number if any, any and all corporate memberships granted/given by The Wing." Ans. to 2d Set at 6.  Defendants objected to Interrogatory 10 in their original response, *see id.* at 6–7, and answered it as follows in their supplemental response: "The Wing does not identify members who obtained a membership via their employer by 'corporate name' and does not assign a 'membership number' to these individuals once The Wing grants their application for membership."  Suppl. to 2d Set at 7.

Defendant's supplemental response sufficiently responds to the Interrogatory 10.  The Wing did not keep records in the way Plaintiff imagines The Wing did/should have done.  This should end the inquiry.

But again, Plaintiff rejects Defendants' supplemental response because it "is difficult to believe if not incredible" that Defendants lack "knowledge of any identifying information whatsoever on who the actual members were/are who obtained [corporate] memberships."  *Id.* Defendants respond that they answered Interrogatory 10 fully and "there is nothing [they] could add that could further their [response]."  *See* Defs.' Opp. at 6–7.  Plaintiff's difficulty in belief is not a factual predicate to support a finding that Defendants have lied in their response.  *See Gevas*, 2020 WL 814875, at *2; *Moss v. Stinnes Corp*, No. 92-cv-3788, 1996 WL 554588, at *4 (S.D.N.Y. Sept. 27, 1996).

---

advantage of the offer?"; and (iii) "What did/does the corporate-membership application consist of?"  Pl.'s Mot. to Compel at 6.  These additional questions are not in Interrogatory Nine and cannot be read into it through a motion to compel.

Plaintiff has failed to meet his burden. The information Plaintiff requests—corporate names and numbers—is irrelevant to whether The Wing's actions were "not independently justified for some nondiscriminatory reason." *Gay Rights Coalition*, 536 A.2d at 29. Plaintiff has failed to show how the information he seeks—names and membership numbers—is proportional to the needs of the case. Accordingly, this Court denies Plaintiff's request to compel as to Interrogatory 10.

3.     *Interrogatory 11*

Interrogatory 11 asks for details about the location and subject matter of a photograph that appeared in the background of a photograph of the former CEO of The Wing, Audrey Gelman. *See* Pl.'s Mot. to Compel at 7. Defendants objected to the interrogatory as "neither relevant to this action nor reasonably calculated to lead to the discovery of admissible evidence" given that such a photo displayed in the background of Ms. Gelman's photograph has no relevance to the alleged denial of equal opportunity on the basis of Plaintiff's sex and/or gender-identity. Defs.' Opp at 7.

Plaintiff now seeks to compel a response to Interrogatory 11 and argues that information about the photograph, which he attached to the instant motion, is relevant because "[t]he photo demonstrates a sexist attitude toward men at The Wing, from the leadership down." Pl.'s Mot. to Compel at 7.

Plaintiff already possesses whatever information may possibly be gleaned from the photograph. Compelling further information about this photograph would be "duplicative." Fed. R. Civ. P. 26(b)(2)(C)(i). Moreover, anything else about this photograph is irrelevant to the question of whether The Wing denied Plaintiff access to its facilities for a discriminatory reason. Accordingly, this Court denies Plaintiff's request to compel a response to Interrogatory 11.

4.      *Interrogatories 12 & 13*

Interrogatory 12 asked the Defendants to identify "any and all incidents . . . of discrimination by a woman member(s) against another woman member or against a woman employee or a woman non-member/non-employee." *See* Defs.' Opp. at 8.  Interrogatory 13 asked the Defendants if The Wing terminated any members involved in the alleged incidents.  *See id.*  The Defendants objected to both interrogatories as "neither relevant to this action nor reasonably calculated to lead to the discovery of admissible evidence." Ans. to 2d Set at 7–8.

Plaintiff seeks to compel answers to Interrogatories 12 and 13 to demonstrate whether Defendants' application question about an applicant's "support for the advancement of women was[] not a real criteria [sic] for membership at The Wing, but merely a pretext."  Pl.'s Mot. to Compel at 7.  Plaintiff's requests in both interrogatories concerns groups in which Plaintiff is not a constituent—namely, all members, employees, and corporate officers at The Wing.  Accordingly, any alleged incidents of discrimination between women members or employees—i.e., not based on sex/gender identity and not in the context of membership application—would not "reasonably . . . lead to other matter that could bear on any party's claim or defense."  *Shamesh*, 314 F.R.D. at 8 (quoting *Oppenheimer Fund*, 437 U.S. at 351) (internal quotation marks omitted).  Again, while the women who would fall under these interrogatories "might have their own discrimination claim against The Wing, their situation has nothing to do with Plaintiff's claim."  *Pietrangelo I*, 2021 WL 1209300, at *6.  Thus, these interrogatories seek information that is irrelevant to Plaintiff's claim and disproportional to the needs of his case.  *See* Fed. R. Civ. P. 26(b)(1).  Accordingly, this Court denies Plaintiff's requests to compel as to Interrogatories 12 and 13.

5.     *Interrogatory 14*

Interrogatory 14 asked the Defendants to "[p]lease thoroughly explain why former CEO of The Wing Audrey Gelman resigned as CEO."  Ans. to 2d Set at 8.  Defendants objected to the interrogatory as "neither relevant to this action nor reasonably calculated to lead to the discovery of admissible evidence" given that Ms. Gelman's employment status has no bearing on alleged denials of equal opportunity and public accommodations of the basis of Plaintiff's sex and/or gender.  Defs.' Opp. at 9.

Plaintiff has not provided sufficient reason as to why the former CEO's resignation would be relevant to a sex/gender identity discrimination claim.  *See* Pl.'s Mot. at 8.  Plaintiff argues that this information is needed because "Gelman herself actually published a lengthy apology for the alleged discrimination" as part of her resignation.  Pl.'s Mot. at 8.  But this apology referred to the alleged discrimination between women members and employees that were the subject of Interrogatories 12 and 13.  *See id.*  And, as explained above, such discrimination incidents are unrelated to Plaintiff's claim.  Plaintiff has thus failed to meet his "initial burden of explaining how [Ms. Gelman's resignation] is relevant."  *Gates*, 506 F. Supp. 2d at 42.  Accordingly, this Court denies Plaintiff's request to compel as to Interrogatory 14.

B.     Fourth Set of Interrogatories

Plaintiff moves to compel responses to Interrogatories 19, 20, 22, and 23.  *See* Pl.'s Mot. at 8–11.

1.     *Interrogatory 19*

Interrogatory 19 asked Defendants to explain how The Wing's practice of "admit[ting] as members only women and non-binary individuals" was communicated to employees and reviewers of membership applications."  *See* Defs.' Objs. & Ans. to Pl.'s 4th Set of Interrogs. at 4, ECF No.

86-2 [hereinafter Ans. to 4th Set].  After objecting to Interrogatory 19, Defendants answered that "prior to August 30, 2018, the Wing marketed itself as a women's only space and did so via marketing materials, press, and its application process where the Wing requested (optionally) the applicant's social media handle(s) to confirm their identity." *Id.* at 4–5.

Defendants' answer was "true, explicit, responsive, complete, and candid[.]" *Equal Rights*, 246 F.R.D. at 32.  Defendants have not hidden from the fact that the Wing marketed itself as a women's only space.  *See* Ans. to 4th Set at 4–5.  Apparently, this marketing was effective as it is undisputed that the Wing admitted no male applicants prior to Plaintiff's complaint.  Thus, further discovery about this topic would be "unreasonably cumulative or duplicative."  Fed. R. Civ. P. 26(b)(2)(C)(i).

Defendants maintain that their response to Interrogatory 19 is sufficient and complete. *See* Defs.' Opp. At 6–7.  Yet Plaintiff claims otherwise.  *See* Pl.'s Mot. at 8.  However, Plaintiff has failed to carry his burden here "of showing that the opposing party's responses are incomplete." *Porter*, 2014 WL 12768504, at *2.  Indeed, Plaintiff offered an insufficient explanation of why Defendants' answer was incomplete.  *See* Pl.'s Mot. at 8.  Accordingly, this Court denies Plaintiff's request to compel as to Interrogatory 19.

2.    *Interrogatory 20*

Interrogatory 20 asked Defendant to provide information about Defendants' "Golden Tickets" promotion, whereby six Golden Ticket holders were granted a free membership at The Wing in Boston.  Ans. to 4th Set at 5.  Specifically, Plaintiff requested "the names of the finders of the tickets, and what the tickets entitled each finder to."  Pl.'s Mot. to Compel at 9.  Defendants first objected to this interrogatory as neither relevant to this action nor reasonably calculated to lead to the discovery of admissible evidence because the information sought pertains to a type of

membership that is "dissimilar to the type of membership and its application process alleged in the Complaint."  Ans. to 4th Set at 5.   In their supplemental responses, Defendants answered as follows:

> The Wing awarded free memberships to six individuals who discovered a Golden Ticket in Boston, Massachusetts after they submitted an application via The Wing's online application process. The Wing did not categorize these six individuals as "Golden Ticket" recipients in its database. Upon information and belief, all six individuals who found a Golden Ticket in Boston, Massachusetts and submitted an application demonstrating their commitment to The Wing's mission were awarded free memberships.

Defs.' Objs. & Suppl. Ans. to Pl.'s 4th Set of Interrogs., at 5, ECF No. 86-4 [hereinafter Suppl. Ans to 4th Set].

Plaintiff claims that Defendants' supplemental response was incomplete because it did not state the names of the ticket finders or "what the tickets entitled each finder to."  Pl.'s Mot. to Compel at 9.  However, Plaintiff has failed to carry his burden here "of showing that the opposing party's responses are incomplete."  *Porter*, 2014 WL 12768504, at *2.  According to The Wing, it did not keep records noting who the Golden Ticket winners were.  *See* Suppl. Ans. to 4th Set at 5.  The Wing does not have the information Plaintiff seeks.  And there is no reason to disbelieve Defendants.

Plaintiff also fails to carry his burden as to relevance and proportionality.  "The details of [Golden Ticket] recipients are irrelevant to Plaintiff's claim. If, for example, Plaintiff was seeking to show that more women than men received [Golden Tickets], this information would be relevant. But given that no men were previously admitted as members, there can be no relevant discrimination in [Golden Ticket] recipients among members relevant to Plaintiff's claim." *Pietrangelo I*, 2021 WL 1209300, at *6 (denying requests about The Wing's scholarship recipients).

Plaintiff argues that information about the Golden Ticket promotion is relevant to his claim because "[i]f women were awarded memberships . . . without having had to submit an application, or only a perfunctory application, then whether an applicant supported the advancement of women was not a real criteria for The Wing."  Pl.'s Mot. to Compel at 9.  However, Defendants responded that each Golden Ticket holder "submitted an application and demonstrate[ed] their commitment to the The Wing's mission."  Suppl. Ans. to 4th Set at 5.  This answers Plaintiffs questions. Moreover, the additional information that Plaintiff requests—names of Golden Ticket holders—is irrelevant to whether The Wing's actions were "not independently justified for some nondiscriminatory reason."  *Gay Rights Coalition*, 536 A.2d at 29.  As with the names of corporate members, *see supra*, Plaintiff has failed to show how the names of Golden Ticket holders is related to whether "The Wing's purported requirement of an applicant's application demonstrating support for The Wing's mission was/is only a pretext."  *See* Pl.'s Mot. to Compel at 5.  Thus, further discovery about this topic would be "unreasonably cumulative or duplicative."  Fed. R. Civ. P. 26(b)(2)(C)(i).  Accordingly, this Court denies Plaintiff's request to compel as to Interrogatory 20.

### 3.    *Interrogatory 22*

Interrogatory 22 asked "whether The Wing has ever been or provided, or considered itself or any of its spaces to be or to provide, a place of public accommodation(s), or public accommodation(s) themselves, and, if so, for what period was it so or did it so provide a place of public accommodation(s) or public accommodations themselves."  Ans. to 4th Set at 6. Defendants objected to the interrogatory and offered the answer, "no responsive information."  *Id.* In their supplemental response, Defendants again objected and directed Plaintiff to "see Defendants' Stipulations of Fact, dated December 3, 2021."  Suppl. Ans to 4th Set at 6–7.  Said

Stipulations of Fact established that The Wing satisfied each element of a public accommodation at the time of Plaintiff's application.  *See* Defs.' Stipulations of Fact (Dec. 3, 2021).

Plaintiff bears the burden of showing that Defendants' supplemental response was incomplete.  *See Porter*, 2014 WL 12768504, at *2.  Plaintiff argues that it was incomplete as to whether The Wing was a place of public accommodation in the time since he applied for membership and will remain so prospectively.  *See* Pl.'s Mot. at 10–11.  Yet this Court has already articulated the relevant time frame.  "What matters is whether The Wing DC was a place of public accommodation on June 4, 2018. What The Wing in New York City was in, say, June 2016 [or after June 4, 2018], bears little on that question."  *Pietrangelo I*, 2021 WL 1209300, at *5.  Thus, Defendants answer was complete.

Plaintiff argues that the post-application status of The Wing is relevant to his ability to obtain injunctive relief in the form of a membership at The Wing.  *See id.*  First, the injunctive relief he seeks is not yet ripe, as Plaintiff has not obtained judgement against the Defendants.  If his claim is successful, he could seek later, albeit limited, discovery as to the facts underpinning his question.  Second, the Rules do "not authorize interrogatories calling for legal conclusions[.]" *Hemp Indus. Ass'n v. United States Drug Enf't Admin.*, No. 20-cv-2921, 2020 WL 12918344, at *1 (D.D.C. Dec. 15, 2020) (quoting 8B Charles Alan Wright & Arthur R. Miller, Fed. Prac. & Proc. § 2167 (3d ed. 2020)). Plaintiff's interrogatory seeks a legal conclusion as to The Wing's current/post-stipulation status, as opposed to asking for facts that may demonstrate it was a public accommodation during those times.  *See Pietrangelo I*, 2021 WL 1209300, at *6 (granting Plaintiff's request for financial data which would establish public accommodation status).  Third, The Wing is currently closed, so this injunctive relief is likely moot.  *See* Pl.'s Emergency Mot.

for TRO, ECF No. 109, ¶ 10.  Accordingly, this Court denies Plaintiff's request to compel as to Interrogatory 22.

        4.    *Interrogatory 23*

Interrogatory 23 asks:

> State whether The Wing ever stated or indicated to the public or to a member or members of the public or to third parties or to individuals or to the press/media that the full and equal enjoyment of the goods, services, facilities, privileges, advantages, and accommodations of The Wing or any of its spaces would be or will be refused, withheld from, or denied a person or persons because they are men or identify as men, or that said person(s)' patronage of, or presence at, The Wing or any of its spaces would be or is objectionable, unwelcome, unacceptable, or undesirable, or otherwise that said person(s) were inferior in any way, or otherwise treated said person(s) differently because of their gender. If your answer is in the affirmative, please state the content and circumstances of the statement, indication, or discrimination, for each respective occasion."

Ans. to 4th Set at 7.  Defendants objected to the interrogatory on many grounds and offered the answer, "no responsive information." *Id.* at 7–8.  In their supplemental response, Defendants again objected to the interrogatory and directed Plaintiff to "see Defendants' Stipulations of Fact, dated December 3, 2021."  Suppl. Ans to 4th Set at 7–8.

      Plaintiff argues that the Court should compel a response to Interrogatory 23 because whether The Wing stated that men were not welcome at The Wing is relevant to whether The Wing discriminated against applicants based on sex/gender identity.  *See* Pl.'s Mot. at 11.  Plaintiff is correct.  The information sought in Interrogatory 23 is relevant to Plaintiff's claim of sex/gender identity discrimination under the DCHRA.  *See* Ans. to 4th Set at 7; Pl.'s Mot. at 11.

      Further, Plaintiff has met his burden for showing how Defendants' response is incomplete. *See* Pl.'s Mot. to Compel at 11; *Porter*, 2014 WL 12768504, at *2.  Defendants' supplemental response cites to a stipulation that solely addressed The Wing's classification as a place of public

16

accommodation.  *See* Suppl. Ans. to 4th Set at 7–8.  Since the cited stipulation is irrelevant to Interrogatory 23, Defendants' answer is incomplete.  *See Nasreen v. Capitol Petroleum Grp., LLC*, 340 F.R.D. 489, 493 (D.D.C. 2022).

Yet Interrogatory 23 as it stands is overly broad and disproportionate to the needs of the case.  A discovery request "must be . . . reasonably limited in time."  *Glenn v. Williams*, 209 F.R.D. 279, 282 (D.D.C. 2002).  In doing so, "[a] judge must simply draw a reasonable line between the likely and the unlikely, the discoverable and the prohibited, the wheat and the chaff."  *D'Onofrio v. SFX Sports Grp.*, 256 F.R.D. 277, 280 (D.D.C. 2009).  An undetermined time period is not proportional to the needs of the case as it would unduly burden Defendants to comb through statements from extraneous years.  *See Pietrangelo I*, 2021 WL 1209300, at *5 (scoping period of requests); *Glenn*, 209 F.R.D. at 281–82 (reducing discovery time period based on the defendants' objection for undue burden).  The Court will cabin Plaintiffs request to the time period beginning one year prior to Plaintiff's application to The Wing on June 4, 2018 and ending one year after Plaintiff's application.  Accordingly, the Court grants Plaintiff's request as to Interrogatory 23, with the caveat that the request be limited to the time between June 4, 2017 and June 4, 2019.

## IV.   CONCLUSION

The Court will GRANT in part and DENY in part Plaintiff's Second Motion to Compel consistent with this opinion.

Date: September 15, 2022

_____
ZIA M. FARUQUI
UNITED STATES MAGISTRATE JUDGE