UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **JAMES E. PIETRANGELO, II,**<br><br>     **Plaintiff,**<br><br>       v.<br><br>**REFRESH CLUB, INC. (d/b/a THE WING),** *et al.***,**<br><br>     **Defendants.** | **No. 18-cv-1943-DLF-ZMF** |

## <u>MEMORANDUM OPINION</u>

Pending before the Court are Plaintiff James E. Pietrangelo, II's Motion for Sanctions, *see* Pl.'s Mot. for Sanctions ("Pl.'s Mot."), ECF No. 101; Plaintiff's Supplemental Motion for Sanctions, *see* Pl.'s Suppl. Mot. for Sanctions ("Pl.'s Suppl. Mot."), ECF No. 115; Plaintiff's Second Supplemental Motion for Sanctions, *see* Pl.'s 2d Suppl. Mot. for Sanctions ("Pl.'s 2d Suppl. Mot."), ECF No. 118; and Plaintiff's Third Supplemental Motion for Sanctions, *see* Pl.'s 3d Suppl. Mot. for Sanctions ("Pl.'s 3d Suppl. Mot."), ECF No. 120, all of which the Court will DENY in an accompanying order.

## I.   BACKGROUND[1]

On July 27, 2022, Plaintiff moved for sanctions under Federal Rules of Civil Procedure ("Rules") 37(b)(2) and 37(e). *See* Pl.'s Mot. On August 10, 2022, Defendants filed their opposition. *See* Defs.' Mem. in Opp'n to Pl.'s Mot. for Sanctions ("Defs.' Opp'n"), ECF No. 107.

---

[1] The Court assumes familiarity with the factual background of this case. *See Pietrangelo v. Refresh Club, Inc.*, No. 18-cv-1943, 2022 WL 4245486, at *1 (D.D.C. Sept. 15, 2022).

On August 12, 2022, Plaintiff filed his reply. *See* Pl.'s Reply in Supp. of Mot. for Sanctions ("Pl.'s Reply"), ECF No. 108.

On October 16, 2022, Plaintiff filed a supplemental motion for sanctions, which centered on Interrogatory No. 23. *See* Pl.'s Suppl. Mot. On October 31, 2022, Defendants filed their opposition, asking for additional time to provide a second supplemental answer. *See* Defs.' Mem. in Opp'n to Pl.'s Suppl. Mot. for Sanctions 2, ECF No. 116. On November 1, 2022, Plaintiff filed his reply. *See* Reply to Defs.' Opp'n to Pl.'s Suppl. Mot. for Sanctions, ECF No. 117. On November 16, 2022, Defendants produced their second supplemental answer. *See* Pl.'s 2d Suppl. Mot., Ex. 1, Defs.' Objections and 2d Suppl. Answers to Pl.'s 4th Set of Interrogs. ("Defs.' 2d Suppl. Answers"), ECF No. 118-1. On November 22, 2022, Plaintiff filed a second supplemental motion for sanctions, arguing that Defendants' second supplemental answer was inadequate because it was unverified. *See* Pl.'s 2d Suppl. Mot. at 6. On November 22, 2022, Defendants produced a verification statement to Plaintiff. *See* Pl.'s 3d Suppl. Mot., Ex. 2, Verification of Defs.' 2d Suppl. Answers to Pl.'s 4th Set of Interrogs. ("Verification"), ECF No. 120-2. On November 24, 2022, Plaintiff filed a third supplemental motion for sanctions, arguing that Defendants committed perjury in their second supplemental response to Plaintiff's Interrogatory 23. *See* Pl.'s 3d Suppl. Mot. at 1. On December 6, 2022, Defendants filed their opposition to Plaintiff's second and third supplemental motions for sanctions. *See* Defs.' Mem. in Opp'n to Pl.'s 2d & 3d Suppl. Mots. for Sanctions, ECF No. 121. On December 7, 2022, Plaintiff filed his reply. *See* Pl.'s Reply to Defs.' Mem. in Opp'n to Pl.'s 2d & 3d Mots. for Sanctions, ECF No. 122.

## II.   LEGAL STANDARD

"[J]udges enjoy wide discretion in managing the discovery process." *3E Mobile, LLC v. Global Cellular, Inc.*, 222 F. Supp. 3d 50, 53 (D.D.C. 2016) (cleaned up). "When this discovery

process is abused, courts are permitted under Federal Rule of Civil Procedure 37 to award sanctions." *Smith v. Ergo Sols., LLC*, No. 14-cv-382, 2018 WL 5810836, at *3 (D.D.C. Nov. 6, 2018). "[T]he central requirement of a Rule 37 sanction is that it be just." *Arias v. Dyncorp Aero. Operations, LLC*, 677 F. Supp. 2d 330, 332 (D.D.C. 2010) (citing *Bonds v. District of Columbia*, 93 F.3d 801, 808 (D.C. Cir. 1996)).

Rule 37(b)(2) empowers courts to sanction a party that "fails to obey an order to provide or permit discovery." Fed. R. Civ. P. 37(b)(2)(A). Courts may consider "a wide array of sanctions, including staying the proceedings pending compliance with a court order, taking certain facts as established, prohibiting a party from introducing certain matters into evidence, finding a party in contempt of court, and dismissing the action or any part thereof." *Peterson v. Hantman*, 227 F.R.D. 13, 15 (D.D.C. 2005). "'District courts enjoy substantial discretion in deciding whether and how to impose sanctions under Rule 37.'" *Gluck v. Ansett Australia Ltd.*, 204 F.R.D. 217, 220–21 (D.D.C. 2001) (quoting *Alexander v. FBI*, 186 F.R.D. 78, 88 (D.D.C. 1998)) (emphasis omitted). "However, the court's discretion is not without limits . . . [as] any sanctions awarded must be proportional to the underlying offense." *Caldwell v. Ctr. for Corr. Health & Pol'y Stud., Inc.*, 228 F.R.D. 40, 42 (D.D.C. 2005) (citing *Bonds*, 93 F.3d at 808).

## III.   ANALYSIS

### A.   Alleged Violations of this Court's Discovery Order

Parties "may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case." Fed R. Civ. P. 26(b)(1). Requests for production ("RFPs") may seek any material discoverable under Rule 26(b). Fed. R. Civ. P. 34(a). "Responses to [RFPs] must be complete, explicit[,] and responsive." *Nasreen v. Capitol Petroleum Grp, LLC*, 340 F.R.D. 489, 493 (D.D.C. 2022) (cleaned up).

3

Plaintiff's RFPs sought "a plethora of information about The Wing." *Pietrangelo v. Refresh Club, Inc.*, No. 18-cv-1943, 2021 WL 1209300, at *2 (D.D.C. Mar. 31, 2021). Plaintiff's requests sought "to prove that [the Wing was] a place of public accommodation and had discriminatory policies." *Id.*; *see* Pl.'s Mot. to Compel 54–75, ECF No 28. This Court reduced the timeframe of Plaintiff's discovery by almost half, limiting Plaintiff's requests to June 4, 2017 through June 4, 2019. *See Pietrangelo*, 2021 WL 1209300, at *5. Defendants have produced over 18,000 pages in response to Plaintiff's requests. *See* Defs.' Opp'n. at 4. Nonetheless, Plaintiff moves for sanctions under Rule 37(b)(2), alleging that Defendants violated this Court's discovery order. *See* Pl.'s Mot. at 18–19.

       1.      *Plaintiff's RFPs 1–5 (Financial Records)*

RFPs 1–4 asked Defendants to produce all receipts and invoices for café, retail, service, and membership fees. *See* Defs.' Opp'n, Ex. B., Defs.' Suppl. Resps. and Objs. to Pl.'s Reqs. for Produc. of Docs. ("Defs.' RFP Resps.") 6–9, ECF No. 107-2. RFP 5 asked Defendant to produce all documents and electronically stored information ("ESI") reflecting revenue or income. *See id.* at 10. This Court previously limited the scope of RFPs 1–5 to "high-level statements of gross revenue or sales," including "what percentage of sales were made to members vs. non-members, total customers and purchases, categories of sales and services, and the sex or gender identity of any customers if known." *Pietrangelo*, 2021 WL 1209300, at *6.

Defendants "twice produce[d] to Plaintiff high-level statements of gross revenue." Pl.'s Mot. at 20. Defendants' attorneys have stated that Defendants have produced "the information in [their] possession." Defs.' Opp'n at 5. The Court relies on such statements given that attorneys "are officers of the court who cannot lie to the Court as part of their duty of candor." *Menashe v. Covington & Burling LLP*, 552 F. Supp. 3d 35, 44 n.4 (D.D.C. 2021). Conversely, Plaintiff lacks

any factual support for his theory that these productions were insufficient. *See* Pl.'s Mot. at 20. Because Defendants' "productions accurately represent the universe of [requested] documents . . . no further supplementation is necessary." *Garner v. Amazon, Inc.*, No. C21-0750, 2022 WL 16744319, at *2 (W.D. Wash. Nov. 7, 2022).

Moreover, the information Plaintiff still requests—about certain categories of sales and services, and the sex/gender identity of the purchasers—is not proportional to the needs of the case. *See* Fed. R. Civ. P. 26(b)(1). This Court previously determined that these materials were relevant to The Wing's "status as a place of public accommodation under the [D.C. Human Rights Act ('DCHRA')]" at the time of Plaintiff's application. *Pietrangelo*, 2021 WL 1209300, at *6. But Defendants rendered that issue moot via stipulation. *See* Defs.' Opp'n, Ex. A., Stipulations of Fact "Stipulations" 2, ECF No. 107-1. Thus, Plaintiff has failed "to justify why the substantial time and expense required to adequately respond to [this] RFP [would be] worth it[.]" *Wall v. Reliance Standard Life Ins. Co.*, 341 F.R.D. 1, 9 (D.D.C. 2022).

## 2.   *Plaintiff's RFP No. 14 (Application Information)*

RFP 14 sought all applications for membership to The Wing. *See* Defs.' RFP Resps. at 14–15. On June 15, 2021, Defendants produced spreadsheets summarizing applicants' information from June 4, 2017 to June 4, 2019. *See* Defs.' RFP Resps. at 16; Pl.'s Mot. at 21. Plaintiff argues that the "Excel spread-sheets [containing the information are] insufficient" due in part to "imperfect or irregular" line formatting. Pl.'s Mot. at 21. However, Rule 34 "does not require a party to produce [ESI] in the form it [sic] which it is ordinarily maintained, [so] long as it is produced in a reasonably usable form." Fed. R. Civ. P. 34(b) advisory committee's notes to 2006 amendment. Again, Defendants have represented that they made a fulsome disclosure to Plaintiff. *See* Defs.' Opp'n at 6; Defs.' RFP Resps. at 16. Thus, Defendants have sufficiently responded to

5

RFP 14. *See Porter v. Gore*, No. 18-cv-1221, 2020 WL 1493615, at *4 (S.D. Cal. Mar. 27, 2020) (agreeing with a defendant that it has sufficiently responded to an RFP where the documents identified and produced [were] straightforward and sufficiently specific").

Additionally, given that Plaintiff did not append Defendants' response to RFP 14 as an exhibit and did not cite any supporting legal authority, the Court cannot readily assess the validity of Plaintiff's assertions. *See* Pl.'s Mot. at 21. As such, "the imposition of . . . sanctions is not warranted[.]" *Hedgeye Risk Mgmt., LLC v. Heldman*, 412 F. Supp. 3d 15, 35 (D.D.C. 2019).

3.    *Plaintiff's RFP Nos. 20–23 (Policies)*

RFPs 20–23 asked Defendants to produce The Wing's membership policies and procedures. *See* Defs.' RFP Resps. at 18–22. Plaintiff concedes that Defendants "produce[d] a significant number of responsive documents[.]" Pl.'s Mot. at 22. Yet, Plaintiff now contends—without evidence—that Defendants did not produce "an equally-significant number of responsive documents." *Id.*

"A court cannot order a party to produce documents that do not exist." *Porter*, 2020 WL 1493615, at *5 (citing *Unilin Beheer B.V. v. NSL Trading Corp.*, No. 14-cv-2210, 2015 WL 12698382, at *5 (C.D. Cal. Feb. 26, 2017)). Allowing discovery after a party has denied a document's existence "would amount to nothing more than a fishing expedition." *Bastin v. Fed. Nat'l. Mortg. Ass'n*, 104 F.3d 1392, 1396 (D.C. Cir. 1997). Again, Defendants represent that they produced all documents in response to RFPs 20–23. *See* Defs.' Opp'n at 6–7. Thus, this Court "does not abuse its discretion when it denies [Plaintiff's sanctions] request[.]" *Bastin*, 104 F.3d at 1396. Nor does a court abuse its discretion in denying a sanctions request when the defendant "make[s] a good-faith effort to obtain the requested [materials]" and the plaintiff "put forth insufficient evidence to the contrary." *Battle v. Mineta*, 387 F. Supp. 2d 4, 10 (D.D.C. 2005). Thus,

Plaintiff's unsubstantiated and speculative claims, *see* Pl.'s Mot. at 22, do not warrant sanctions here. *See Battle*, 387 F. Supp. 2d at 10.

4.   *Plaintiff's RFP No. 29 and 31–32 (Press, Social Media, and Website)*

RFP 29 asked Defendants to produce all material related to the press and The Wing's publicity. *See* Defs.' RFP Resps. at 26–28. RFPs 31–32 seek all pages and postings from The Wing's social media accounts and website. *See id.* at 29–30. Again, Plaintiff concedes that Defendants produced "some press/publicity material," "a smattering of postings by The Wing on one or more of its social-media accounts," and the "website as it existed at various times[.]" Pl.'s Mot. at 24–25. Nonetheless, Plaintiff asserts that Defendants did not produce press or publicity materials from before January 2019 or a full history/archive of The Wing's social media accounts and website. *See id.* In response, Defendants claim that they "produced all responsive documents in [their] custody and control[.]" Defs.' Opp'n at 7.

"The duty to preserve begins 'when a party *should have known* that the evidence may be relevant to future litigation.'" *Mannina v. District of Columbia*, 437 F. Supp. 3d 1, 10 (D.D.C. 2020) (quoting *Gerlich v. U.S. Dep't of Just.*, 711 F.3d 161, 170–71 (D.C. Cir. 2013)). Is it surprising that Defendants had no potentially relevant materials to preserve between receiving notice of the litigation on August 20, 2018 and January 2019? Yes. But Defendants have represented that they complied with their duty to preserve. *See* Defs.' Opp'n at 7. And there is no reason to doubt that. *See Menashe*, 552 F. Supp. 3d at 44 n.4. Moreover, "Plaintiff['s] motion . . . consists of conclusory and general statements regarding [D]efendants' purported noncompliance with their discovery obligations. Such generalities are an insufficient basis on which the Court can impose sanctions[.]" *Biosafe-One, Inc. v. Hawks*, 639 F. Supp. 2d 358, 370 (S.D.N.Y. 2009). Concurrently, the Court reminds Defendants that a party who has responded to a "request for

production . . . must supplement or correct its disclosure or response [] in a timely manner if the party learns that in some material respect the disclosure or response [was] incomplete or incorrect[.]" Fed. R. Civ. P. 26(e)(1)(A).

5.   *Plaintiff's RFP No. 42 (Government Submissions)*

RFP 42 asked Defendants to produce all written submissions to the government and communications between The Wing and the government. *See* Defs.' RFP Resps. at 36. Plaintiff asserts that Defendants "produced only two such documents, both U.S. Trademark Office service-mark-grant certificates." Pl.'s Mot. at 25. Defendants responded that they "have produced responsive documents in their possession" and that no other documents are necessary because they stipulated to being "a place of public accommodation under D.C. law." Defs.' Opp'n at 8. Again, Defendants' representation satisfied their discovery obligation. *See Porter*, 2020 WL 1493615, at *4; *Garner*, 2022 WL 16744319, at *2. Like other RFPs, this request was largely related to The Wing's "status under the DCHRA." *Pietrangelo*, 2021 WL 1209300, at *7. As stated above, the Stipulations mooted this issue. *See* Stipulations at 2. Hence, the information Plaintiff seeks is not proportional to the needs of the case. *See* Fed. R. Civ. P. 26(b)(1).

6.   *Plaintiff's RFP No. 43 (NYCCHR Investigation) and RFP No. 45 (Diversity Policies)*

RFP 43 sought any documents and ESI relating to the New York City Commission on Human Rights' investigation of The Wing. *See* Defs.' RFP Resps. at 37. RFP 45 asked Defendants to produce documents and ESI related to The Wing's diversity policies and procedures, *see id.* at 39, which the Court previously clarified should include all diversity policies created "prior to the relevant time period but still in effect," *Pietrangelo*, 2021 WL 1209300, at *7. Plaintiff notes that Defendants "did produce some responsive documents[,]" but not others that he sought. Pl.'s Mot. at 27. Defendants assert that they "have nothing further to produce." Defs.' Opp'n at 8. And

8

Plaintiff has failed to substantiate why or how Defendants' responses are anything other than "complete, explicit[,] and responsive." *Nasreen*, 340 F.R.D. at 493 (cleaned up). Thus, Defendants have met their discovery obligations. *See id.*

### 7.    *Plaintiff's Interrogatory 23 (Accommodating Men at The Wing)*

Interrogatory 23 asked "whether The Wing ever stated or indicated . . . that . . . The Wing or any of its spaces would be . . . denied [to] a person because they are men[.]" *Pietrangelo*, 2022 WL 4245486, at *8. Originally, "Defendants objected to the interrogatory . . . and offered the answer, 'no responsive information.'" *Id.* "In their supplemental response, Defendants again objected to the interrogatory and directed Plaintiff to 'see Defendants' Stipulations of Fact, dated December 3, 2021.'" *Id.* On September 15, 2022, this Court ruled that "Defendants' answer[s] [were] incomplete," and ordered Defendants to supplement their response. *Id.* at *9.

On November 16, 2022, Defendants provided a second supplemental response, stating in part that "[p]rior to August 30, 2018, The Wing had an informal membership policy to admit as members only women and non-binary individuals." Defs.' 2d Suppl. Answers at 5. Defendants also referred Plaintiff to two previously produced documents. *See id.* at 6. Defendants further stated that "to the best of [their] knowledge, [The Wing] did not make any statements to third parties 'that the full and equal enjoyment of the goods, services, facilities, privileges, advantages, and accommodations of The Wing or any of its spaces would be . . . denied a person because they are men[.]'" Defs.' 2d Suppl. Answers at 5.

Defendants' second supplemental answer sufficiently responds to Interrogatory 23. *See id.* Plaintiff alleges that Defendants' response "is woefully inadequate" because Plaintiff is in disbelief that no statements exist. Pl.'s 2d Suppl. Mot. at 4. However, "Plaintiff[] offers no reason to suspect Defendants' response . . . is anything less than truthful." *Gevas v. Dunlop*, No. 18-cv-6556, 2020

WL 814875, at *2 (N.D. Ill. Feb. 19, 2020). Thus, Plaintiff has failed to carry his "burden of showing that [Defendants'] responses are incomplete." *Porter v. Sebelius*, No. 11-cv-1546, 2014 WL 12768504, at *2 (D.D.C. Apr. 8, 2014).

To be properly verified, interrogatory answers must be answered "fully in writing under oath" and signed by "[t]he person who [] answers [] them[.]" Fed. R. Civ. P. 33(b). Defendants' second supplemental answer—served on November 16, 2022—lacked a verification that the statements were made under oath. *See* Defs.' 2d Suppl. Answers; *see also* L. Civ. R. 11.2 (verification requires a statement that the writing "is subscribed as true under penalty of perjury"). In such cases, courts typically order the offending party to supplement with a proper signature. *See, e.g.*, *Escamilla v. Nuyen*, No. 14-cv-00852, 2015 WL 4245868, at *9 (D.D.C. July 14, 2015); *Ormeno v. 3624 Georgia Ave., Inc.*, 309 F.R.D. 29, 33 (D.D.C. 2015); *see also Antoine v. J.P. Morgan Chase Bank*, No. 08-cv-615, 2009 WL 10694779, at *2 (D.D.C. June 26, 2009) (ordering party to redo signature because electronic signature was invalid). However, that is unnecessary here. On November 22, 2022, Defendants served their signature page on Plaintiff. *See* Verification. This "moot[ed]" the prior signature problem. *Tequila Centinela, S.A. de C.V. v. Bacardi & Co.*, 242 F.R.D. 1, 7 (D.D.C. 2007). Thus, Defendants' verification satisfied Rule 33.

Plaintiff offers no authority in support of his outlandish contention that Defendants' November 22nd verification constitutes "outright perjury." Pl.'s 3d Suppl. Mot. at 3. Plaintiff's "allegations do not warrant imposing sanctions" where Plaintiff "has shown no violation . . . of any discovery order . . . nor has he shown any basis for disregarding" the signed verification. *U.S. ex rel. Westrick v. Second Chance Body Armor, Inc.*, 893 F. Supp. 2d 258, 268 (D.D.C. 2012); *see infra* III.E.

B.    Defendants' Privilege Logs

The Rules require the party who is claiming privilege to expressly make the claim and "describe the nature of the documents . . . not produced . . . and do so in a manner that, without revealing information itself privileged or protected, will enable other parties to assess the claim." Fed. R. Civ. P. 26(b)(5)(A)(ii). "Privilege logs are the most common vehicle by which parties attempt to comply with these rules in claiming privilege." *Lurensky v. Wellinghoff*, 271 F.R.D. 345, 355 (D.D.C. 2010).

Defendants provided privilege logs to Plaintiff on July 15, 2021; October 11, 2021; December 3, 2021; and December 27, 2021. *See* Defs.' Opp'n at 11. Plaintiff argues that Defendants waived privilege for failure to submit the privilege logs in a "timely manner." Pl.'s Mot. at 28. Plaintiff also asserts that the privilege logs were too vague. *See id.* at 29.

First, Plaintiff's "waiver" argument comes rather late. It was not made in Plaintiff's December 24, 2021 motion for sanctions. *See* Pl.'s Mot. to Compel Answers to Interrogs. and for Sanctions, ECF No. 86. Nor did Plaintiff raise it in a meet and confer or status conference over the past year-and-a-half. *See generally* Docket. "Surely, a central principle of American jurisprudence is that a court will not consider a belated argument that could and should have been made sooner." *Banks v. Off. of the Senate Sergeant-at-Arms & Doorkeeper*, 226 F.R.D. 113, 115 (D.D.C. 2005).

Second, "privilege logs [are] on the whole useless[,]" and "dispute[s] over the sufficiency of descriptions in a privilege log" waste "judicial resources[.]" *Lurensky*, 271 F.R.D. at 355–56. As such, "[a] court should use common sense when examining a privilege log, and in so doing, may draw inferences from a less-than specific entry [to] rescue[] the entry from its possible inadequacy[.]" *Id.* at 356. Here, Defendants' privilege logs are "adequate considering the circumstances of the case[.]" *Nat'l Labor Relations Bd. v. Jackson Hosp. Corp.*, 257 F.R.D. 302,

308 (D.D.C. 2009). They "contain[] all the information needed to adequately describe the documents at issue," including the "date, name of [the] sender, name of [the] recipient, and description of [the] document, including . . . [the] basis upon which a particular privilege is claimed[.]" *Slaughter v. McDonough*, 18-cv-1318, 2022 WL 2817836, at *3 (D.D.C. July 19, 2022). Specifically, the document descriptions consist of the documents' names, which are sufficiently detailed to shed light on their contents. *See* Pl.'s Mot., Ex. 2, Privilege Log 7/13/2021, ECF No. 101-3; Pl.'s Mot., Ex. 4, Privilege Log 12/3/2021, ECF No. 101-5. For example, one of the documents is labeled, "PRIVILEGED AND CONFIDENTIAL  Wing Q&As." Privilege Log 7/13/2021 at 4. Another is entitled, "FOR MANAGERS_MEMBERSHIP POLICIES FAQS_TALKING POINTS KF Comments." Privilege Log 12/3/2021 at 2. Thus, "[t]he Court finds that the privilege log[s are] reasonably detailed[.]" *Slaughter*, 2022 WL 2817836, at *3.

C.    <u>Spoliation of Evidence</u>

"'Spoliation' is 'defined as the destruction or material alteration of evidence or the failure to preserve property for another's use as evidence in pending or reasonably foreseeable litigation.'" *Clemmons v. Acad. For Educ. Dev.*, 70 F. Supp. 3d 282, 309 (D.D.C. 2014). A sanction "is warranted only when (1) the party having control over the evidence had an obligation to preserve it when it was destroyed or altered; (2) the destruction or loss was accompanied by a 'culpable state of mind;' and (3) the evidence that was destroyed or altered was 'relevant' to the claims or defenses of the party that sought the discovery of the spoliated evidence, to the extent that a reasonable factfinder could conclude that the lost evidence would have supported the claims or defense of the party that sought it." *Id.* (citing *Mazloum v. D.C. Metro. Police Dep't*, 530 F. Supp. 2d 282, 291 (D.D.C. 2008). The party alleging spoliation bears the burden of proof. *See, e.g.*, *Ball v. George Wash. Univ.*, No. 17-cv-0507, 2018 WL 4637008, at *1 (D.D.C. Sept. 27, 2018).

Rule 37(e) governs a court's inquiry in deciding whether to impose sanctions for the spoliation of ESI. *See* Fed. R. Civ. P. 37(e). When "[ESI] that should have been preserved in the anticipation of litigation is lost because a party failed to take reasonable steps to preserve it, and it cannot be restored or replaced through additional discovery," a court may (1) "order measures no greater than necessary to cure the prejudice," or, only upon finding "that the party acted with the intent to deprive another party of the information's use in the litigation," (2) "presume that the lost information was unfavorable to the party; instruct the jury that it may or must presume the information was unfavorable to the party; or dismiss the action or enter a default judgment." *Id.*

Plaintiff moves for sanctions for the spoliation of evidence under Rule 37(e), arguing that Defendants failed to preserve ESI. *See* Pl.'s Mot. 32–34; Fed. R. Civ. P. 37(e).

      1.    *Laptop*

First, Plaintiff argues that Defendants failed to preserve "the corporate laptop on which Plaintiff's application [to the Wing] had allegedly been reviewed." *Id.* at 32. Without evidence, Plaintiff alleges that a review of the laptop would have "shown that Plaintiff's application was not really reviewed at all beyond Plaintiff's name and sex/gender as a man." *Id.* However, Plaintiff concedes that Defendants produced copies of his application—the only relevant evidence he claims to seek on the laptop's hard drive. *See id.* Thus, "[t]he Court is not persuaded that . . . [Defendants] should have reasonably known that [the laptop] needed to be preserved." *Mahaffey v. Marriott Int'l, Inc.*, 898 F. Supp. 2d 54, 60 (D.D.C. 2012). Moreover, "destruction . . . has no effect except when the circumstances of destruction provide a basis for attributing bad faith to the [party] involved." *More v. Snow*, 480 F. Supp. 2d 257, 274 (D.D.C. 2007) (citation omitted). Because Plaintiff fails to establish that any relevant evidence was "destroyed or altered" or that Defendants acted in bad faith, sanctions are not warranted. *Clemmons*, 70 F. Supp. 3d at 309.

2.    *Historical/Archived Social Media Accounts and Website*

Second, Plaintiff contends that Defendants failed to preserve "[t]he historical/archived versions of Defendants' social-media accounts and website[.]" Pl.'s Mot. 33. As discussed above, Defendants assert that they have produced all the archived social media and website material in their possession. *See infra* III.A.4. Defendants further argue that they had no obligation to preserve evidence before August 20, 2018—the date they received notice of the instant litigation. *See* Def.'s Opp'n at 7 n.9. Given that Plaintiff has failed to "put forth any evidence that any such [historical or archived materials] ever existed," he cannot prove that such evidence "was destroyed[.]" *Mahaffey*, 898 F. Supp 2d at 61. And even if such "[materials] existed . . . [P]laintiff has not demonstrated that [Defendants] allowed such destruction with the requisite culpable state of mind." *Id.* Thus, no sanctions are merited. *See id.*

D.    <u>Vexatious Discovery</u>

A vexatious lawsuit arises when a plaintiff initiates legal proceedings without "an objective good faith expectation of prevailing" and with an intent to "harass[]" the defendant. *1250 24th St. Assocs. Ltd. P'ship v. Brown*, 684 F. Supp. 326, 331 (D.D.C. 1988) (quoting *Safir v. U.S. Lines, Inc.*, 792 F.2d 19, 24 (2d Cir. 1986)). Plaintiff claims that Defendants engaged in "vexatious discovery" by deliberately subjecting Plaintiff to "years of discovery all the while knowing that his complaint had merit." *See* Pl.'s Mot. at 34. In turn, Defendants assert that Plaintiff has "over-litigate[d] this case—including the filing of the instant motion." Defs.' Opp'n at 2.

Plaintiff's claim that Defendants have engaged in vexatious discovery is meritless. There is no indication that Defendants have acted in bad faith. Indeed, Defendants largely complied with Plaintiff's discovery requests. *See* Defs.' Suppl. Resps. Moreover, this Court had to limit many of *Plaintiff's* (arguably vexatious) discovery requests. *See generally Pietrangelo*, 2021 WL 1209300,

at *1. Thus, Defendants' "conduct does not meet the high standard required to warrant sanctions." *Doe #1 v. Am. Fed'n of Gov't Emps.*, No. 20-cv-1558, 2022 WL 4182223, at *16 (D.D.C. Sept. 13, 2022); *see also Huthnance v. District of Columbia*, 793 F. Supp. 2d 177, 182 (D.D.C. 2011) (finding that evidence did not support sanctions against counsel for unreasonably and vexatiously multiplying proceedings).

     E.    <u>Perjury</u>

     Perjury is false testimony concerning a *material* matter with the willful intent to provide false testimony. *See United States v. Singer*, 963 F.3d 1144, 1164 (11th Cir. 2020); *see also Chavez v. City of Albuquerque*, 402 F.3d 1039, 1046 (10th Cir. 2005) (upholding dismissal of a civil lawsuit as a sanction for perjury). Plaintiff asserts that Defendants have repeatedly committed perjury in deposition testimony. *See* Pl.'s Mot. at 41. Specifically, Plaintiff alleges that The Wing's former CFO Diedre Nelson, former CEO Audrey Gelman, and former COO Lauren Kassan perjured themselves during their depositions, making statements contradictory to information on The Wing's website and shared with the press. *See id.* at 41–45. Defendants deem this assertion "outlandish" and disagree with "Plaintiff's estimation [that] perceived minor inconsistencies in testimony are the functional equivalent of perjury." Defs.' Opp'n. at 2 n.5.

     Defendants are correct. Plaintiffs' obscure examples from slices of Defendants' testimony fail to establish the requisite inconsistency in a material matter. *See* Pl.'s Mot. at 41; *Singer*, 963 F.3d at 1164. Indeed, "even if the testimony is inconsistent, an inconsistency . . . does not by itself support an inference [of perjury.]" *United States v. Harrison*, 103 F.3d 986, 989 (D.C. Cir. 1997). Rather, it is a "long-standing practice" to defer determinations of "minor inconsistencies and credibility challenges" to "the trier of fact." *Angstadt v. Fed. Aviation Admin.*, 348 Fed. App'x

589, 590 (D.C. Cir. 2009). Accordingly, Plaintiff's proper remedy is to address the allegedly perjurious testimony through examination at trial.

## IV.    CONCLUSION

For the reasons stated above, Plaintiff's Motion for Sanctions, Supplemental Motion for Sanctions, Second Supplemental Motion for Sanctions, and Third Supplemental Motions for Sanctions will be DENIED in an accompanying order.


Date: December 13, 2022                 _____
                                        ZIA M. FARUQUI
                                        UNITED STATES MAGISTRATE JUDGE